1  LIEFF CABRASER HEIMANN
   & BERNSTEIN, LLP
2  Jonathan D. Selbin (State Bar No. 170222)
   250 Hudson Street, 8th Floor
3  New York, NY 10013
   Telephone: (212) 355-9500
4  Facsimile: (212) 355-9592

5  LIEFF CABRASER HEIMANN
   & BERNSTEIN, LLP
6  Daniel M. Hutchinson (State Bar No. 239458)
   Nicole D. Reynolds (State Bar No. 246255)
7  275 Battery Street, 29th Floor
   San Francisco, CA 94111-3339
8  Telephone: (415) 956-1000
   Facsimile: (415) 956-1008
9
   MEYER WILSON CO., LPA
10 Matthew R. Wilson (State Bar No. 290473)
   1320 Dublin Road, Ste. 100
11 Columbus, OH 43215
   Telephone: (614) 224-6000
12 Facsimile: (614) 224-6066

CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD
LLP
Mark Ankcorn (State Bar No. 166871)
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (614) 224-6066

TERRELL MARSHALL DAUDT
& WILLIE PLLC
Beth E. Terrell (State Bar No. 178181)
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

13
14 *Attorneys for Plaintiffs and the Proposed Class*

15       UNITED STATES DISTRICT COURT
16      NORTHERN DISTRICT OF CALIFORNIA
17

18 ANDREW STEINFELD and WALTER
   BRADLEY, on behalf of themselves and
19 all others similarly situated,
20              Plaintiff,
21       v.
22 DISCOVER FINANCIAL SERVICES,
   DFS SERVICES, LLC, and DISCOVER
23 BANK,
24              Defendants.
25
26
27
28

Case No. 3:12-cv-01118-JSW

**PLAINTIFFS' MOTION AND
MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES AND
COSTS AND FOR SERVICE AWARDS TO
THE CLASS REPRESENTATIVES**

Date: February 14, 2014
Time: 9:00 a.m.
Courtroom: 11, 19th Floor
Judge: Jeffrey S. White

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ............................................................................. 1

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND .................................................................................................. 3

    A. The Settlement Represents an Outstanding Result for the Class. .......................... 3

        1. The Prospective Changes Benefitting the Class. .......................................... 3

        2. The Common Settlement Fund Achieved for the Class. ................................ 4

    B. Class Counsel Undertook Considerable Risk in Prosecuting this Action. .............. 4

    C. Class Counsel Minimized Duplicative Work. ......................................................... 6

III. ARGUMENT AND AUTHORITY ...................................................................... 6

    A. The Requested Fee Award is Fair, Reasonable, and Justified. .............................. 6

        1. The Requested Fee is Presumptively Reasonable because it Resulted from Arm's Length Negotiations. ................................................................. 8

        2. The Court Should Apply the Percentage-of-the-Fund Method. .................... 8

        3. The Percentage-of-the-Fund Method Confirms that Class Counsel's Fee Request is Reasonable. ......................................................................... 10

            a. Class Counsel have Obtained an Excellent Result. ............................ 11

            b. The Risks of Litigation Supports the Requested Fee. ........................ 13

            c. The Skill Required and Quality of Work Performed Supports the Requested Fee. ............................................................................. 14

            d. Class Counsel's Undertaking of the Actions on a Contingency-Fee Basis Supports the Requested Fee. ................................................ 14

            e. The Requested Fee Comports with Fees Awarded in Similar Actions. ............................................................................................... 15

        4. A Lodestar Plus Multiplier Cross-Check Supports the Requested Fee. ...... 16

            a. Class Counsel's Lodestar is Reasonable. ........................................... 17

            b. A Multiplier is Warranted. ................................................................. 18

    B. Class Counsel Are Not Seeking Reimbursement of their Costs on Top of the Fee Award, Although Such Reimbursement Would be Justified. ................... 20

    C. The Class Representatives' Service Awards Are Reasonable. ............................. 20

IV. CONCLUSION ................................................................................................... 22

1145548.2

1

# TABLE OF AUTHORITIES

2

Page

3

## CASES

4

*Adams v. AllianceOne Receivables Mgmt., Inc.,*
No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) .......................................... 15, 19, 22

5

6

*American Express Co. v. Italian Colors Rest.,*
133 S. Ct. 2304 (2013) ...................................................................................................... 2

*Antonopulos v. N. Am. Thoroughbreds, Inc.,*
No. 87-0979G (CM), 1991 U.S. Dist. LEXIS 12579 (S.D. Cal. May 6, 1991) ........................ 16

7

*AT&T Mobility LLC v. Concepcion,*
131 S. Ct. 1740 (2011) ................................................................................................... 2, 5

8

9

*Bellows v. NCO Financial Systems, Inc.,*
No. 07-CV-1413 W (AJB), 2009 U.S. Dist. LEXIS 273 (S.D. Cal. Jan 5, 2009) .................... 15

10

*Blum v. Stenson,*
465 U.S. 886 (1994) ....................................................................................................... 18

11

12

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ......................................................................................................... 7

13

*Bradley v. Discover Financial Services,*
Case No. 4:11-cv-5746-YGR .............................................................................................. 5

14

*Brazil v. Dell Inc.,*
No. C-07-01700 RMW, 2012 U.S. Dist. LEXIS 47986 (N.D. Cal. Apr. 4, 2012) .................... 8

15

16

*Brown v. DIRECTV, LLC,*
No. CV 12-08382 DMG (Ex), 2013 U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) .......... 5

*Cayanan v. Citi Holdings, Inc.,*
928 F. Supp. 2d 1182 (S.D. Cal. 2013) .............................................................................. 5

17

*Coppock v. Citigroup, Inc.,*
No. C11-1984-JCC, 2013 U.S. Dist. LEXIS 40632 (W.D. Wash. Mar. 22, 2013) .................... 5

18

19

*Craft v. County of San Bernardino,*
624 F. Supp. 2d 1113 (C.D. Cal. 2008) .............................................................................. 19

20

*Discover Bank v. Superior Court,*
36 Cal. 4th 148, 30 Cal. Rptr. 3d 76, 113 P. 3d 1100 (2005) .................................................. 5

21

*Fitzgerald v. City of Los Angeles,*
No. CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382 (C.D. Cal. Dec. 8, 2003) .................... 22

22

*Garner v. State Farm,*
No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482 (N.D. Cal. Apr. 22, 2010) .................... 10

23

*Gene And Gene LLC v. BioPay LLC,*
541 F.3d 318 (5th Cir. 2008) ............................................................................................. 13

24

25

*Glass v. UBS Fin. Servs.,*
No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .................... 16

26

*Grannan v. Alliant Law Group, P.C.,*
No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101 (N.D. Cal. Jan. 24, 2012) ...................... 15

27

*Hanlon v. Chrysler Corp,*
150 F.3d 1011 (9th Cir. 1998).............................................................................. 8, 9, 17

28

1145548.2

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *Hensley v. Eckerhart*,
       461 U.S. 424 (1983) ............................................................................................ 8, 11

4    *Hopson v. Hanesbrands Inc.*,
       No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 200) ...................... 22

5

6    *In re Activision Sec. Litig.*,
       723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................................... 9

7    *In re Bluetooth Headset Prods. Liab. Litig.*,
       654 F.3d 935 (9th Cir. 2011) ................................................................................ 7

8    *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
       No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) .......... 16

9    *In re M.D.C. Holdings Sec. Litig.*,
       No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990) ................ 16

10

11   *In re Media Vision Tech. Sec. Litig.*,
       913 F. Supp. 1362 (N.D. Cal. 1995) ...................................................................... 20

12   *In re Mego Fin. Corp. Sec. Litig.*,
       213 F.3d 454 (9th Cir. 2000) ................................................................................ 12

13   *In re Mercury Interactive Corp.*,
       618 F.3d 988 (9th Cir. 2010) ............................................................................... 1, 7

14   *In re Public Service Co.*,
       No. 91-0536M, 1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992) .......................... 16

15

16   *In re Washington Pub. Power Supply Sys. Sec. Litig.*,
       19 F.3d at 1299 ................................................................................................. 14

17   *In re Washington Public Power Supply System Sec. Litig.*,
       19 F.3d 1291 (9th Cir. 1994) ............................................................................. 7, 20

18   *Kerr v. Screen Extras Guild, Inc.*,
       526 F.2d 67 (9th Cir. 1975) ............................................................................. 17, 20

19

20   *Knight v. Red Door Salons, Inc.*,
       No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ................... 10, 16

21   *Linney v. Cellular Alaska P'ship*,
       No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997) ............... 11, 12

22   *Lo v. Oxnard European Motors, LLC*,
       No. 11CV1009 JLS, 2012 U.S. Dist. LEXIS 73983 (S.D. Cal. May 29, 2012) ..................... 16

23   *Lopez v. Youngblood*,
       No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289 (E.D. Cal. Sept. 1, 2011) ............... 9

24   *Martin v. Wells Fargo Bank, N.A.*,
       3:12-cv-06030-SI (N.D. Cal. Dec. 2, 2013) ............................................................... 5

25

26   *McNamara v. Royal Bank of Scot. Group, PLC*,
       No. 11-cv-2137, 2012 U.S. Dist. LEXIS 158580 (S.D. Cal. Nov. 5, 2012) ......................... 5

27   *Meyer v. Portfolio Recovery Associates*,
       696 F.3d 943 (9th Cir. 2012) ............................................................................... 13

28   *Mills v. Electric Auto-Lite Co.*,
       396 U.S. 375 (1970) .......................................................................................... 20

1145548.2

# TABLE OF AUTHORITIES
## (continued)

Page

*Odrick v. UnionBanCal Corp.*,
   No. C 10-5565 SBA, 2012 U.S. Dist. LEXIS 171413 (N.D. Cal. Dec. 3, 2012) ..................... 22

*Ozga v. U.S. Remodelers, Inc.*,
   No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196 (N.D. Cal. Aug. 9, 2010) ..................... 10

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009)......................................................................................... 21

*Satterfield v. Simon & Schuster, Inc. et al.*,
   No. 06-cv-2893 (N.D. Cal. Aug. 6, 2010) ................................................................ 15, 22

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir 2003)................................................................................. 7, 11, 21

*Steiner v. Am. Broad. Co.*,
   248 Fed. Appx. 780 (9th Cir. Cal. 2007) ................................................................... 19

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) ............................................................................ 8, 9, 19

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ................................................................... 19, 21

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)........................................................................... passim

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96, 123 (2d Cir. 2005)........................................................................... 19

*Walsh v. Kindred Healthcare*,
   No. C 11-00050 JSW, 2013 U.S. Dist. LEXIS 176319 (N.D. Cal. 2013) ........................ 10, 11

*Zeisel v. Diamond Foods*, *Inc.*,
   No. C 10-01192 JSW, 2012 U.S. Dist. LEXIS 148893 (N.D. Cal. Oct. 16, 2012) .................. 10

## OTHER AUTHORITIES

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004)
   § 27.71............................................................................................................ 10

Theodore Eisenberg & Geoffrey P. Miller,
   *Attorneys' Fees and Expenses in Class Action Settlements*: 1993-2008, 19 (2009).................. 9

## RULES

Fed. R. Civ. P. 23(e) ...................................................................................... 6

Fed. R. Civ. P. 23(h) ...................................................................................... 10

1  **NOTICE OF MOTION AND MOTION**

2  **TO ALL PARTIES AND COUNSEL OF RECORD**:

3      Please take notice that on February 14, 2014, at 9:00 a.m., in Courtroom 11, 19th floor of

4  the United States District Court for the Northern District of California, San Francisco Division,

5  located at 450 Golden Gate Avenue, San Francisco, California 94102, Class Counsel will, and

6  hereby does, move for an Order awarding the following from the common Settlement Fund: (1)

7  attorneys' fees and costs in the amount of $2,175,000, which is 25% of the common fund created

8  from the Class (with no additional payment of Class Counsel's costs, which total $42,568.89);

9  and (2) Service Awards to the Class Representatives of $2,000 each.

10      As discussed in the accompanying memorandum, this motion is made on the grounds that

11  the requested awards are fair, reasonable, and justified under applicable law.  This motion is

12  based upon this notice, the attached memorandum of points and authorities, the accompanying

13  declarations of Jonathan D. Selbin, Matthew R. Wilson, Beth E. Terrell, Mark Ankcorn, Andrew

14  Steinfeld, and Walter Bradley, and other papers filed in support of preliminary and final approval

15  of the Settlement, any oral argument that is held regarding this motion, the complete record in this

16  litigation and such other matters as the Court may consider.[1]

17  **MEMORANDUM OF POINTS AND AUTHORITIES**

18  **I.**    **INTRODUCTION**

19      Counsel for Plaintiffs Walter Bradley and Andrew Steinfeld ("Class Counsel")

20  respectfully move the Court for (1) an award of attorneys' fees and costs from the Settlement

21  Fund[2] in the total amount of $2,175,000, which is 25% of the common fund created for the Class

22  (Class Counsel seeks payment of their costs—which amount to $42,568.89—out of the total

23  award and not in addition to it) and (2) modest Service Awards to each of the Named Plaintiffs in

24  the amount of $2,000.

25      Class Counsel seek their fees under the percentage-of-the-fund method.  The Ninth

26  
27  [1] Consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), and best practices, a copy of this brief will be uploaded to the settlement website, http://www.steinfeldtcpasettlement.com/.

28  [2] Capitalized terms in this memorandum shall have the same meaning as specified in the Settlement Agreement.

1145548.2

1    Circuit's benchmark in common fund cases is 25 percent of the Settlement Fund, *plus* recovery of

2    costs.  *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002).  Here, Class

3    Counsel seek fees below that benchmark because they request 25% of the Fund inclusive of, and

4    not in addition to, payment of their costs.

5             There is no reason to deviate from the benchmark and award less than what Class Counsel

6    reasonably requests.  Class Counsel's fee request is well-within the range commonly awarded in

7    comparable cases and is well-justified here, particularly taking into account the value of the

8    prospective practice changes undertaken by Discover.  The Ninth Circuit enhances the value of

9    settlements for purposes of fee analyses where, as here, there are significant "nonmonetary

10   benefits conferred by the litigation."  *See id.*  Class Counsel's request is also supported by a

11   lodestar plus multiplier cross-check, if the Court chooses to perform such an optional cross-check.

12   That cross-check reveals that the fee amount requested by Class Counsel would result in a

13   multiplier of 3.5, which is within the range for such multipliers established by the Ninth Circuit

14   when costs are *not* subsumed within the attorneys' fee award.  *Id.* at 1051 & n.6.  When Class

15   Counsel's costs are deducted from the fee they request, the resulting multiplier is 3.4.

16            Class Counsel respectfully submit that their fee request is appropriate in light of the

17   extraordinary result achieved for the Class, which includes the ability to stop the automated calls

18   to cell phones that are the entire basis for this litigation.  The Settlement also requires Discover to

19   pay $8,700,000 into a non-reversionary Settlement Fund, out of which eligible Class Members

20   who file qualified claims will have the choice to receive either a cash award or a credit against the

21   balance of their Discover credit card.  This represents an outstanding result, particularly in view

22   of the risks involved in continued litigation, including the substantial risk that the Court would

23   find that Class Members' claims were subject to mandatory, individual arbitration after the

24   Supreme Court abrogated the *Discover Bank* Rule in *AT&T Mobility LLC v. Concepcion*, 131 S.

25   Ct. 1740 (2011) and further limited the ability to overcome such clauses in *American Express*

26   *Company v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013).  The Settlement accordingly

27   reflects the expertise, skill, and efficient and effective case management of Class Counsel.

28

1  In light of this strong result, and for the reasons discussed below, Class Counsel

2  respectfully submit that the fee request and service awards are well-supported and should be

3  granted.

4  **II.    BACKGROUND**

5  **A.    The Settlement Represents an Outstanding Result for the Class.**

6  The Settlement achieved by Class Counsel provides both core prospective practice

7  changes and significant monetary relief for the Class.

8  **1.    The Prospective Changes Benefitting the Class.**

9  The conduct driving this (and most) TCPA litigation is the allegation that the defendant

10  (here Discover) made harassing, repeated, and intrusive autodialed and/or prerecorded calls to

11  consumers' cell phones without prior express consent to do so.  Time and again Class Counsel

12  hear from class members in this and similar cases that the single most important thing to them is

13  the ability to put a stop to such calls.  Thus, the primary focus of the Settlement is providing Class

14  Members with the ability to do just that by way of filling out a simple form.  The Settlement

15  provides that, for Class Members who execute a valid and timely request ("Revocation Request"),

16  Discover must not make use of, nor knowingly authorize anyone acting on its behalf to make use

17  of, an automatic telephone dialing system and/or an artificial or prerecorded voice, to call Class

18  Members' cell phones or to send text messages to their cell phones.  Agreement § III.D.1.a.

19  Through the Settlement Website, Class Members will be able submit the Revocation Request

20  simply by checking a box and providing their current cell phone number.  Agreement § III.D.1.b.

21  As an alternative, Class Members may sign and return a one-page "hard copy" Revocation

22  Request to the Claims Administrator.  *Id.*  While Class Counsel have not attempted to monetize

23  the dollar value of this prospective relief to Class Members, based on Class Counsel's

24  investigation and discussions with Class Members, Class Counsel know that this relief was a key

25  goal of Class Members as it will prevent them from being subjected to the unwanted autodialed

26  and/or prerecorded calls that are the entire basis for this litigation.

27

28

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
3:12-CV-01118-JSW

1145548.2

1

### 2.      The Common Settlement Fund Achieved for the Class.

2          In addition to the core prospective relief for the Class, the Settlement also provides that

3   Discover will pay $8,700,000 into a non-reversionary Settlement Fund.  From this Fund, Class

4   Members will receive, at their election,[3] either a Cash Award in the form of a check or a Credit

5   Award in the form of a one-time credit against the Class Member's Discover credit card account.

6   Agreement §§ III.D.2.a, III.H.1, III.H.2.  The amount of each Class Member's Award will be

7   based on a *pro rata* distribution, depending on the number of valid and timely claims, but Class

8   Counsel estimate awards in the range of $20 to $40 after deductions for Court-approved attorneys'

9   fees and costs, Court-approved service awards to the Plaintiffs, and the costs of notice and claims

10  administration. *Id*. § III.G.5.[4]  To receive a Cash or Credit Award, Class Members need only

11  complete a simple, one-page claim form and provide it to the Claims Administrator via the

12  Internet site or by mail within 180 days following the Preliminary Approval Order. *Id.* § III.G.4.

13  Because the Settlement Fund will be distributed *pro rata*, with the amounts from any uncashed

14  checks either being used for a second distribution or being donated *cy pres* (Agreement §§ III.H

15  & III.I)*,* not one penny of the Fund will revert to Discover.  The Settlement achieved by Class

16  Counsel therefore provides significant monetary relief.

17          ### B.      Class Counsel Undertook Considerable Risk in Prosecuting this Action.

18          This matter has required Class Counsel to spend time on this litigation that could have

19  been spent on other matters.  Moreover, because Class Counsel undertook representation of this

20  matter on a contingency-fee basis, they shouldered the risk of expending substantial costs and

21  time in litigating the action without any monetary gain in the event of an adverse judgment.[5]

22  _____

23  [3] However, if a Class Member has credit with Discover that has been revoked or charged off, Discover at its option may apply a one-time reduction from the balance of that Class Member's

24  outstanding extension of credit in lieu of a Cash Award or Credit Award.  Agreement § III.G.2.

    [4] Administrative costs have totaled just over $1 million to date, and are not expected to exceed

25  $1,190,000.  In the event that they do exceed that amount, Discover will contribute, separate from and in addition to the Settlement Fund, up to $90,000.  Also, if Discover approves, Class Counsel

26  will direct the Settlement Administrator to conduct a second email notice to reach more Class Members, and Class Counsel will pay for this second notice out of their own pockets.

27  Declaration of Jonathan D. Selbin in support of Motion for Attorneys' Fees ("Selbin Decl.") ¶ 44. *See also* Dkt. No. 61 (Order Granting Notice Plan).

28  [5] Selbin Decl. ¶¶ 17-20; Declaration of Matthew R. Wilson in support of Motion for Attorneys' Fees ("Wilson Decl.") ¶¶ 8-10; Declaration of Mark Ankcorn in support of Motion for Attorneys'

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
3:12-CV-01118-JSW

1145548.2

1   This action was especially risky because, for the entire class period, Discover's customer

2   agreement contained a clause purporting to require arbitration and forbid class actions.[6]  The

3   California Supreme Court considered a prior iteration of this same arbitration clause in *Discover*

4   *Bank v. Superior Court*, 36 Cal. 4th 148, 30 Cal. Rptr. 3d 76, 113 P. 3d 1100 (2005), and held it

5   to be unenforceable under California law.  The United States Supreme Court, however, abrogated

6   what became known as the *Discover Bank* Rule in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct.

7   1740 (2011), and further limited the ability to overcome such clauses in *American Express*

8   *Company v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013).

9   At the time the parties reached this Settlement, Discover's Motion to Compel Arbitration

10  was fully briefed in the related case *Bradley v. Discover Financial Services*, Case No. 4:11-cv-

11  5746-YGR (Dkt. Nos. 13, 14, 26, 27, 28, 33) and pending Judge Gonzalez Rogers' ruling.

12  Discover filed an identical Motion to Compel Arbitration in the *Steinfeld* lawsuit.  Dkt. No. 21.

13  The parties agreed to withdraw those motions solely to engage in settlement negotiations.

14  Plaintiffs recognized the risk that the Court would rule in Discover's favor, particularly given

15  recent court decisions broadly interpreting agreements to arbitrate and the lack of complete clarity

16  as to whether TCPA claims are arbitrable.  *See, e.g.*, Defendants' Motion to Compel Arbitration

17  and Stay Action (Dkt. No. 21) at 8 (arguing that "the Ninth Circuit and California federal courts

18  have routinely enforced arbitration agreements post-*AT&T Mobility*"; citing cases).  Since the

19  parties entered into this settlement, that risk has only increased as a series of decisions in United

20  Stated District Courts in California found that TCPA claims are subject to arbitration.  *McNamara*

21  *v. Royal Bank of Scot. Group, PLC*, No. 11-cv-2137, 2012 U.S. Dist. LEXIS 158580 (S.D. Cal.

22  Nov. 5, 2012) (compelling arbitration of TCPA claim); *Cayanan v. Citi Holdings, Inc.*, 928 F.

23  Supp. 2d 1182, 1208 (S.D. Cal. 2013) (same); *Coppock v. Citigroup, Inc.*, No. C11-1984-JCC,

24  2013 U.S. Dist. LEXIS 40632 (W.D. Wash. Mar. 22, 2013) (same); *Brown v. DIRECTV, LLC*, No.

25  CV 12-08382 DMG (Ex), 2013 U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) (same); *but*

26  *see Martin v. Wells Fargo Bank, N.A.*, 3:12-cv-06030-SI (N.D. Cal. Dec. 2, 2013) (Dkt. No. 73)

27

28  Fees ("Ankcorn Decl.") ¶ 8; Declaration of Beth E. Terrell in support of Motion for Attorneys'
Fees ("Terrell Decl.") ¶ 23.
[6] Selbin Decl. ¶ 19.

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
3:12-CV-01118-JSW

1145548.2

1  (denying motion to compel arbitration of TCPA claim).  Had the Court ruled in Discover's favor,

2  the action would have been dismissed or stayed pending arbitration, and Class Members would

3  not have recovered either the valuable prospective practice changes or the significant monetary

4  relief that this Settlement provides.[7]

5          **C.**    **Class Counsel Minimized Duplicative Work.**

6        Although Class Counsel seek fees based on a percentage-of-the-fund and not a lodestar

7  analysis, they nonetheless worked closely and in cooperation with one another to divide tasks,

8  ensure efficient case management, and prevent duplication of efforts.  By assigning specific tasks

9  among firms, they were able to avoid duplicating or replicating work.  For example, while one

10  firm took the lead on drafting confirmatory settlement-related discovery, such as interrogatories

11  and a notice of a 30(b)(6) deposition, another firm took the confirmatory 30(b)(6) depositions.

12  And, Class Counsel split responsibility for drafting Plaintiffs' Opposition to Discover's Motion to

13  Compel Arbitration equally among all firms by assigning responsibility for discrete sections to

14  specific firms based on their areas of expertise.[8]

15        For the purposes of the lodestar cross-check, Class Counsel has also carefully reviewed

16  their firm's internal time records and deleted entries for duplicate work.  For example, Class

17  Counsel deleted time spent simply reviewing work done by other attorneys, duplicative time

18  where two or more attorneys participated in a matter, and billable time spent on routine, case-

19  related housekeeping matters.  In addition, Class Counsel deleted all time billed by attorneys and

20  staff who contributed only minimal time to prosecuting the Actions.[9]

21  **III.**    **ARGUMENT AND AUTHORITY**

22          **A.**    **The Requested Fee Award is Fair, Reasonable, and Justified.**

23        Class Counsel seek a total award of attorneys' fees and costs of $2,175,000, or 25% of the

24  Settlement Fund of $8.7 million (without accounting for the value of Settlement's prospective

25  practice changes).  Class Counsel are not seeking an award of their expenses on top of this

26

27  [7] *Id.*

28  [8] Selbin Decl., ¶ 43; Wilson Decl., ¶ 28; Ankcorn Decl., ¶ 21; Terrell Decl., ¶ 17.
  [9] Selbin Decl., ¶ 42; Wilson Decl., ¶ 27; Terrell Decl., ¶ 15.

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
3:12-CV-01118-JSW

1   requested fee award, but rather are seeking reimbursement of expenses as inclusive in this total

2   award request.  After subtracting class counsel's expenses of $42,568.89,[10] Class Counsel are, in

3   actuality, seeking attorneys' fees amounting to $2,132,431.11—less than 25% of the Settlement

4   Fund.

5           "Attorneys' fees provisions included in proposed class action settlement agreements are,

6   like every other aspect of such agreements, subject to the determination whether the settlement is

7   'fundamentally fair, adequate, and reasonable.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir

8   2003) (quoting Fed. R. Civ. P. 23(e)).  The "common fund" doctrine applies where, as here, a

9   litigation results in the recovery of a certain and calculable fund on behalf of a group of

10  beneficiaries.  The Ninth Circuit and other federal courts have long recognized that when

11  counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed

12  class members, counsel have an equitable right to be compensated from that fund for their

13  successful efforts in creating it.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)

14  ("lawyer who recovers a common fund…is entitled to a reasonable attorney's fee from the fund

15  as a whole"); *Staton*, 327 F.3d at 967 (quoting *Boeing*); *In re Washington Pub. Power Supply*

16  *System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit in the creation of a

17  fund should share the wealth with the lawyers whose skill and effort helped create it").

18          In common fund cases, as opposed to cases analyzing fees under a fee-shifting provision,

19  courts within the Ninth Circuit have discretion to use one of two methods to determine whether

20  the request is reasonable: (1) percentage-of-the-fund; or (2) lodestar plus a risk multiplier.  *Staton,*

21  327 F.3d at 967-68; *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010).

22  "Though courts have discretion to choose which calculation method they use, their discretion

23  must be exercised so as to achieve a reasonable result."  *In re Bluetooth Headset Prods. Liab.*

24  *Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Class Counsel's request for fees is reasonable under—

25  and warrants application of—the percentage-of-the-fund analysis.  The reasonableness of Class

26  Counsel's fee award request is confirmed by a lodestar plus multiplier cross-check, which courts

27  in the Ninth Circuit may employ in their discretion.

28
_____

[10] *See* Selbin Decl., ¶¶ 25-26; Wilson Decl., ¶¶ 13-14; Ankcorn Decl. ¶¶ 12-13; Terrell Decl., ¶ 22.

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
3:12-CV-01118-JSW

1145548.2

1

**1.     The Requested Fee is Presumptively Reasonable because it Resulted from Arm's Length Negotiations.**

2

3

As the United States Supreme Court has explained: "A request for attorney's fees should

4

not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."

5

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  While the Court must perform its own

6

evaluation to verify that the requested fees are reasonable and not the product of collusion, it

7

should give weight to the judgment of the parties and their counsel where, as here, the fees were

8

agreed to through arm's length negotiations after the parties agreed on the other key deal terms.

9

*See, e.g., Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2012 U.S. Dist. LEXIS 47986, at *4 (N.D.

Cal. Apr. 4, 2012).

10

Here, Class Counsel negotiated with Discover to reach an agreed-upon fee amount that

11

they regarded as reasonable based on, *inter alia*, the benefits achieved for the class and applicable

12

legal principles.  The parties did not negotiate a fee award until *after* they reached agreement on

13

the other key deal terms.[11]  Further, the fee amount, like the Settlement itself, was agreed upon

14

under the auspices and with the assistance of an experienced, well-respected former judge and

15

mediator, Judge Carl West.  That fact serves as "independent confirmation that the fee was not

16

the result of collusion or a sacrifice of the interests of the class."  *Hanlon v. Chrysler Corp*, 150

17

F.3d 1011, 1029 (9th Cir. 1998).  Under these circumstances, the Court should give weight to the

18

judgment of the parties and their counsel regarding reasonable fees.

19

**2.     The Court Should Apply the Percentage-of-the-Fund Method.**

20

The fairest and most efficient way to calculate a reasonable fee where, as here,

21

contingency fee litigation has produced a common fund is by awarding class counsel a percentage

22

of the total fund.

23

The percentage-of-the-fund method comports with the legal marketplace, where counsel's

24

success is frequently measured in terms of the results counsel has achieved.  *See Swedish Hosp.*

25

*Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary

26

amount of the victory is often the true measure of [counsel's] success").  By assessing the amount

27

28

---

[11] Selbin Decl., ¶ 36.

- 8 -

1    of the fee in terms of the amount of the benefit conferred on the class, the percentage method

2    "more accurately reflects the economics of litigation practice" which, "given the uncertainties and

3    hazards of litigation, must necessarily be result-oriented." *Id.* Moreover, it most effectively

4    aligns the incentives of the class members and their counsel and thus encourages counsel to spend

5    their time efficiently, and to focus on maximizing the relief available to the class, rather than their

6    own lodestar hours. *Vizcaino*, 290 F.3d at 1050 n.5; *In re Activision Sec. Litig.*, 723 F. Supp.

7    1373, 1375 (N.D. Cal. 1989).

8          For these reasons, the percentage-of-the-fund method is applied more frequently than the

9    lodestar plus multiplier method in common fund cases in the Ninth Circuit. *See, e.g., In re*

10   *Omnivision*, 559 F. Supp. 2d at 1046 ("[U]se of the percentage method in common fund cases

11   appears to be dominant."); *Vizcaino*, 290 F.3d at 1050 ("[T]he primary basis of the fee award

12   remains the percentage method."); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S.

13   Dist. LEXIS 99289, at *31 (E.D. Cal. Sept. 1, 2011) ("[W]hile the Court has discretion to use

14   either a percentage of the fund or a lodestar approach in compensating class counsel . . . the

15   percentage of the fund is the typical method of calculating class fund fees."); *In re Activision Sec.*

16   *Litig.*, 723 F. Supp. 1373, 1374-78 (N.D. Cal. 1989) (discussing advantages of percentage of

17   recovery method in common fund cases).

18         Further confirming courts' preference for awarding attorneys' fees in class cases on a

19   percentage-of-the-fund-basis, an empirical study based on eighteen years of published opinions

20   on settlements in 689 common fund class action and shareholder derivative settlements in both

21   state and federal courts found the following: (1) 80% of cases employed the percentage-of-the-

22   recovery method and (2) the number of courts employing the lodestar method has declined over

23   time, from 13.6 percent from 1993-2002 to 9.6% from 2003 to 2008. *See* Theodore Eisenberg &

24   Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements*: 1993-2008, 19

25   (2009).[12] By contrast, courts rely on the lodestar method under circumstances not applicable here;

26   *i.e.*, where "there is no way to gauge the net value of the settlement or of any percentage thereof."

27

28   [12] *available at*
     http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Duke%20Materials/Library/Theodore
     %20Eisenberg,%20Geoffrey%20Miller,%20Attorneys'%20Fees%20in%20Class%20Actions.pdf.

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
3:12-CV-01118-JSW

1    *Hanlon*, 150 F.3d at 1029.

2         For these reasons, Class Counsel submit that the Court should use the standard

3    percentage-of-the-fund approach to determining the award of attorneys' fees in this action.

4         **3.    The Percentage-of-the-Fund Method Confirms that Class Counsel's
             Fee Request is Reasonable.**

5

6         Class Counsel's request for attorneys' fees and costs in a total amount of $2,175,000—

7    less than 25% of the $8.7 million common fund—is fair and reasonable under the circumstances

8    of this case.  In the Ninth Circuit, the "benchmark" percentage fee award is 25% of the common

9    fund, with costs and expenses awarded *on top of* this fee amount.  Moreover, courts in this Circuit

10   often award a percentage of the fund that is higher than the 25% benchmark.  *Omnivision*, 559 F.

11   Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds th[e] benchmark."); *see also*

12   *Vizcaino*, 290 F.3d at 1048-1050 (awarding 28%); *Walsh v. Kindred Healthcare,* No. C 11-00050

13   JSW, 2013 U.S. Dist. LEXIS 176319, *12 (N.D. Cal. 2013) (White, J.) (awarding approximately

14   30%); *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2012 U.S. Dist. LEXIS 148893, *13-

15   14 (N.D. Cal. Oct. 16, 2012) (White, J.) (awarding just over 30%); *Ozga v. U.S. Remodelers, Inc.*,

16   No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196, at *9 (N.D. Cal. Aug. 9, 2010) (White, J.)

17   (awarding just under 30%); *Garner v. State Farm*, No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS

18   49482, at *5-6 (N.D. Cal. Apr. 22, 2010) (awarding 30%); *Knight v. Red Door Salons, Inc.*, No.

19   08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *17 (N.D. Cal. Feb. 2, 2009) (same).  Based on

20   this authority, and particularly given the existence of prospective relief in the settlement, Class

21   Counsel's request for the benchmark award, with no additional request for reimbursement of their

22   costs and expenses, is conservative.

23        Courts consider a number of factors to determine the appropriate percentage to apply,

24   including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality

25   of work; (4) the contingent nature of the fee; and (5) awards made in similar cases.  *Vizcaino*, 290

26   F.3d at 1048-1050; *In re Omnivision*, 559 F. Supp. 2d at 1046.  All of these factors favor approval

27   of the 25% fee award requested here.

28

1145548.2

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
3:12-CV-01118-JSW

a.    **Class Counsel have Obtained an Excellent Result.**

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, p.336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note). Standing alone, this factor supports Class Counsel's fee request.

**Prospective Relief**: Ninth Circuit courts repeatedly have held that where, as here, class counsel achieves significant benefits that are not accounted for in the dollar value of the common settlement fund, the court "should consider the value of [such] relief as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees." *Staton*, 327 F.3d at 974; *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund"); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, *20 (N.D. Cal. July 18, 1997) (granting fee award of one-third of common fund where settlement provided additional non-monetary relief).

Class Counsel's interviews with Plaintiffs and Class Members revealed that putting a stop to the autodialed and/or prerecorded calls to their cell phones was the primary goal of this litigation.[13]  The Settlement achieves this result.  Class Members need only submit a simple one-page Revocation Request to end all unwanted calls from Discover to their cell phones. Agreement § III.D.1.  Class Counsel, however, have not attempted to monetize the value of this benefit to Class Members, and it was therefore not factored into Class Counsel's fee request.  If the value of this benefit were to be taken into consideration, it would effectively "reduce() the overall percentage of the fees that counsel" seeks. *See Walsh*, 2013 U.S. Dist. LEXIS 176319 at *12 (approving fee request of 30% of the common fund, finding that this request was effectively reduced by the "substantial injunctive relief" obtained through the settlement).   Thus, the Settlement's prospective relief supports Class Counsel's fee request.

---

[13] Selbin Decl. ¶ 34.

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
3:12-CV-01118-JSW

**Monetary Relief**:  The Settlement requires Discover to pay $8.7 million into a non-reversionary common Settlement Fund, out of which Class Member claimants will receive their *pro rata* share of payments in either the form of (1) a cash payment or (2) a credit on their Discover account, at Class Members' election.  Agreement §§ III.D.2.a.  In the event that a Class Member has an outstanding credit balance with Discover that has been revoked or charged off, Discover may elect to apply a one-time reduction of that outstanding debt instead of a cash or credit payment.  Agreement § III.G.2.  No amount of this fund will revert back to Discover.  While the precise amount of individual payments cannot yet be determined, Class Counsel estimates that claimants will receive an average recovery of between $20 to $40.  Agreement § III.G.5.  The Settlement achieved by Class Counsel therefore provides significant monetary relief to the Class Members, particularly here, where the damages are purely statutory damages, rather than "actual" damages.

The fact that the $8.7 million fund does not constitute the full measure of statutory damages potentially available to the Class does not merit any deviation from the 25% benchmark.  "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators" because "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *Linney*, 151 F.3d at 1242 (citations omitted); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (settlement of only a fraction of potential recovery fair given nature of claims and facts of case).  This is particularly true where, as here, the Settlement was reached at arm's length through protracted negotiations by experienced counsel and after three full-day mediations in front of an experienced mediator and former judge.  It was also reached after extensive factual investigation of the claims and issue, and after taking into consideration the risks involved in the Actions, including the substantial risk that the case could not proceed on a class basis at all because of the arbitration provision that banned class actions.  Thus, the requested 25% award (subsuming Class Counsel's costs) is reasonable.

**Resolution on a Class-Wide Basis in Court, not Individual Arbitration**:  Finally, while Plaintiffs argued that, if this case did not settle, it should have proceeded in federal court, there

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
3:12-CV-01118-JSW

was a significant risk that Discover would have prevailed on its motion to compel arbitration.  If that occurred, Plaintiffs and all Class Members only could have proceeded with individual claims in arbitration.  Each individual Class Member—to the extent they knew of their claims and could obtain attorney representation or navigate the arbitration procedures themselves—would have been required to pay arbitration-related fees and forego all class claims, including claims for classwide practice changes relief.  The Settlement has eliminated that risk completely.

### b.      The Risks of Litigation Supports the Requested Fee.

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."  *In re Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee).  Here, there was a considerable risk that the Court would rule in favor of Discover on its fully-briefed and then-pending arbitration motion.  Had the Court done so, Class Counsel would not have been able to recover *any* fees incurred from their efforts in this litigation.  More importantly, Class Members would have been forced to file their own individual arbitrations, most of whom are doubtless unaware of their TCPA claims and who likely have little understanding of the availability of arbitration or the arbitration process.  Thus, the vast majority—if not all—of Class Members would likely have received *nothing* had they been compelled to arbitrate their claims.

In addition, there was a risk that the Court would deny a motion to certify a class.  Discover consistently argued that class certification would be inappropriate in these Actions due to the question of whether Class Members consented to the calls at issue.  And, courts are divided as to whether such consent issues predominant over common questions in TCPA cases, depending on the circumstances of the case.  *Compare Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036, 1042 (9th Cir. 2012) (upholding class certification) *with Gene And Gene LLC v. BioPay LLC,* 541 F.3d 318, 328 (5th Cir. 2008) (reversing class certification).

Further, there existed the risk that the Court would decline to adopt Class Counsel's view that the FCC has clarified that "prior express consent" can only being given during "the transaction that resulted in the debt owed"; *i.e.* during the opening of Class Members' Discover

1    accounts.  The Court could instead have adopted Discover's view that consent may be given at

2    any time and in any manner before the call was placed.

3          Finally, there was the ever-present risk of losing a jury trial.  And, even if Plaintiffs did

4    prevail, any recovery could be delayed for years by an appeal.  Given all of the above risks, all of

5    which were present when Class Counsel undertook the case on a contingency fee basis, Class

6    Counsel's fee award request is reasonable.

7                      c.    **The Skill Required and Quality of Work Performed Supports**
                             **the Requested Fee.**
8

9          The "prosecution and management of a complex national class action requires unique

10   legal skills and abilities" that are to be considered when evaluating fees.  *In re Omnivision*, 559 F.

11   Supp. 2d at 1047 (citation omitted).  Class Counsel are experienced class action litigators who

12   have successfully prosecuted complex consumer cases, and who have become particularly skilled

13   and experienced in litigating TCPA class actions.[14]  Class Counsel performed significant factual

14   investigation prior to bringing these Actions, briefed an opposition to compel arbitration, engaged

15   in protracted and hard-fought negotiations with Discover, and efficiently and vigorously

16   negotiated a $8.7 million Settlement with a prospective practice changes that are important to

17   Plaintiffs and Class Members.[15]  And, Class Counsel did so in the face of Discover's pending

18   arbitration motion.  Class Counsel's skill and expertise, reflected in the prompt and significant

19   Settlement, support the fee request.

20                     d.    **Class Counsel's Undertaking of the Actions on a Contingency-**
                             **Fee Basis Supports the Requested Fee.**

21          The Ninth Circuit has long recognized that the public interest is served by rewarding

22   attorneys who assume representation on a contingent basis to compensate them for the risk that

23   they might be paid nothing at all for their work.  *In re Washington Pub. Power Supply Sys. Sec.*

24   *Litig.*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if

25   rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of

26   assuring competent representation for plaintiffs who could not afford to pay on an hourly basis

27   _____

28   [14] Selbin Decl., ¶¶ 2-16; Wilson Decl., ¶¶ 1-7; Ankcorn Decl., ¶¶ 2-7; Terrell Decl., ¶¶ 2-11.
     [15] Selbin Decl., ¶¶ 34-39; Wilson Decl., ¶¶ 19-24; Ankcorn Decl., ¶¶ 17-20; Terrell Decl., ¶ 20.

1   regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class

2   counsel in contingency cases "for taking the risk of nonpayment by paying them a premium over

3   their normal hourly rates").

4          Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all

5   necessary expenses and that they would only receive a fee if there was a recovery.  Class Counsel

6   have spent considerable outlays of time and money by, among other things, (1) investigating

7   these actions; (2) briefing arbitration; (3) negotiating a settlement over many months, including

8   by participating in three full-day mediations; (4) reviewing confirmatory discovery and taking

9   confirmatory depositions, and (5) responding to Class Member inquiries.[16]  Class Counsel

10  expended these resources despite the real risk that they would never be compensated at all.  Class

11  Counsel's "substantial outlay, when there is a risk that that none of it will be recovered, further

12  supports the award of the requested fees" here.  *Omnivision*, 559 F. Supp. 2d at 1047.

13         Further, Class Counsel devoted the appropriate amount of time, resources, and energy

14  necessary to handle this matter.  Such devotion to this matter in lieu of other opportunities further

15  supports the requested fee award.

16              **e.      The Requested Fee Comports with Fees Awarded in Similar**
                          **Actions.**
17
           The fee requested is well within the range commonly awarded in TCPA class actions.  *See,*
18
    *e.g.*, *Bellows v. NCO Financial Systems, Inc.*, No. 07-CV-1413 W (AJB), 2009 U.S. Dist. LEXIS
19
    273, at *4-5 (S.D. Cal. Jan 5, 2009) (awarding 31.6% of TCPA settlement fund); *Adams v.*
20
    *AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012)
21
    (awarding 30% of the TCPA settlement fund) (Ex. B to Selbin Decl.); *Grannan v. Alliant Law*
22
    *Group, P.C.*, No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101, at *28-30 (N.D. Cal. Jan. 24,
23
    2012) (awarding 25% of TCPA settlement fund); *Satterfield v. Simon & Schuster, Inc. et al.*, No.
24
    06-cv-2893 (N.D. Cal. Aug. 6, 2010) (Ex. C to Selbin Decl.) (same).  Courts have done so even in
25
    TCPA actions that involved significantly less litigation than that involved in these Actions.  *Lo v.*
26
    *Oxnard European Motors, LLC,* No. 11CV1009 JLS, 2012 U.S. Dist. LEXIS 73983, at *9-10
27

28
    ────────────
    [16] Selbin Decl., ¶¶ 34-39; Wilson Decl., ¶¶ 19-24; Ankcorn Decl., ¶¶ 17-20; Terrell Decl., ¶ 20.

1   (S.D. Cal. May 29, 2012) (awarding 25% fee request where TCPA class action settled two

2   months after commencement of the lawsuit).

3          In fact, Class Counsel's requested fee award is less than the typical fee often awarded in

4   class actions.   *See, e.g., In re Omnivision*, 559 F. Supp. 2d at 1047 ("in most common fund cases,

5   the award exceeds that [25%] benchmark."); *In re Mego*, 213 F.3d at 457, 463 (9th Cir. 2000)

6   (affirming fee award of one third of common fund); *Knight*, 2009 U.S. Dist. LEXIS 11149 at *18-

7   *19 (awarding 30% fee); *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-

8   1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *29 (C.D. Cal. June 10, 2005) (awarding one-

9   third of fund); *In re Public Service Co.*, No. 91-0536M, 1992 U.S. Dist. LEXIS 16326, at *32-33

10  (S.D. Cal. July 28, 1992) (awarding 33% fee); *Antonopulos v. N. Am. Thoroughbreds, Inc*., No.

11  87-0979G (CM), 1991 U.S. Dist. LEXIS 12579, at *9 (S.D. Cal. May 6, 1991) (awarding one-

12  third of fund); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS

13  15488, at *21, 32 (S.D. Cal. Aug. 30, 1990) (awarding 30% fee where settlement obtained "in a

14  very short amount of time" and finding that class counsel should be rewarded, not penalized, for

15  achieving early success on behalf of the class).

16         In short, Class Counsel's fee request is reasonable and fair under the "percentage of the

17  fund" method.

18                **4.      A Lodestar Plus Multiplier Cross-Check Supports the Requested Fee.**

19         A court applying the percentage-of-the-fund method may use the lodestar method as a

20  "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050 & n.5.

21  The cross-check is optional, and Class Counsel submit that its use is unnecessary here. *See Glass*

22  *v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan. 26,

23  2007) (finding that "where the early settlement resulted in a significant benefit to the class," there

24  is no need "to conduct a lodestar cross-check").  If the Court chooses to perform such a cross-

25  check here, however, it confirms that a 25% fee award is reasonable.

26         The first step in the lodestar-multiplier approach is to multiply the number of hours

27  counsel reasonably expended by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029.  Once this

28  raw lodestar figure is determined, the court may then adjust that figure based upon its

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
3:12-CV-01118-JSW

1145548.2

consideration of many of the same "enhancement" factors considered in the percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether the fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of other employment due to acceptance of the case; and (5) the experience, reputation, and ability of the attorneys. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

### a.     Class Counsel's Lodestar is Reasonable.

The accompanying declarations of Class Counsel set forth the hours of work and billing rates used to calculate their lodestar. As described in those declarations, Class Counsel and their staffs have devoted a total of approximately 1,156.8 hours to this litigation, and have a total lodestar to date of approximately $620,660.25. These amounts do not include the additional time that Class Counsel will spend going forward in seeking approval of, and implementing, the Settlement, including assisting Class Members with claims and overseeing claims administration generally, tasks that can require substantial additional hours not reflected in a multiplier calculated on current lodestar. Class Counsels' lodestar will grow slightly as they continue to finalize the settlement process and close the litigation. The claims period will last for several months, and Class Counsel's commitment of time and labor to this case will continue until (and likely beyond) that date. Class Counsel will continue to assist Class Members with individual inquiries, will oversee the claims resolution process, and will help resolve Class member challenges to the result of their claims submissions. Judging by previous experiences, these responsibilities will require substantial numbers of hours of work by Class Counsel over the coming months.[17]

Class Counsel's time was spent primarily on the following tasks: (1) investigating the claims of the Plaintiffs and Class Members; (2) opposing Discover's arbitration motion; (3) engaging in particularly difficult settlement negotiations for approximately one-year, including by participating in three full-day mediations; (4) reviewing Discover's confirmatory discovery and taking confirmatory 30(b)(6) depositions; (5) drafting the preliminary approval motion and

---

[17] Selbin Decl. ¶ 24.

1   overseeing settlement administration; and (6) responding to Class Member inquiries.[18]

2   Class Counsel's lodestar is reasonable. Class Counsel prosecuted the claims at issue

3   efficiently and effectively, making every effort to prevent the duplication of work that might have

4   resulted from having multiple firms working on this case. Tasks were reasonably divided among

5   law firms to ensure avoid replicating work.[19] Further, tasks were delegated appropriately among

6   partners, associate attorneys, paralegals, and other staff according to their complexity such that

7   the attorneys with higher billing rates billed time only where necessary.[20] In addition, Class

8   Counsel's contemporaneous time records were carefully reviewed and duplicative work, as well

9   as *de minimis* time billed by attorneys and staff who had little participation in the Actions, was

10  deleted.[21]

11  Class Counsel's hourly rates are also reasonable. In assessing the reasonableness of an

12  attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in

13  the community for similar services by lawyers of reasonably comparable skill, experience and

14  reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1994). Class Counsel here are

15  experienced, highly regarded members of the bar with extensive expertise in the area of class

16  actions and complex litigation involving consumer claims like those at issue here.[22] Class

17  Counsel's customary rates used in calculating the lodestar here have been approved by courts in

18  this District and other courts.[23]

19  ## b.   A Multiplier is Warranted.

20  The benchmark 25% fee requested by Class Counsel reflects a multiplier of 3.5 of Class

21  Counsel's combined lodestar. When Class Counsel's costs and expenses of $42,568.89 are

22  subtracted from the fee award request of $2.175 million, the resulting multiplier is 3.4. Courts

23  regularly approve fee awards resulting in multipliers which are near or higher than that requested

24  here. *See, e.g., AllianceOne,* No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) (Ex. B to

---

[18] Selbin Decl., ¶¶ 34-39; Wilson Decl., ¶¶ 19-24; Ankcorn Decl., ¶¶ 17-20; Terrell Decl., ¶ 20.

[19] Selbin Decl., ¶ 43; Wilson Decl., ¶ 28; Ankcorn Decl., ¶ 21; Terrell Decl., ¶ 17.

[20] Selbin Decl., ¶¶ 40-41; Wilson Decl., ¶¶ 25-26; Terrell Decl., ¶ 15.

[21] Selbin Decl., ¶ 42; Wilson Decl. ¶ 27; Terrell Decl., ¶ 15.

[22] Selbin Decl., ¶¶ 2-16; Wilson Decl., ¶¶ 1-7; Ankcorn Decl., ¶¶ 2-7; Terrell Decl., ¶¶ 2-11.

[23] Selbin Decl., ¶¶ 29-32; Terrell Decl., ¶ 21.

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
3:12-CV-01118-JSW

Selbin Decl.) (awarding 30% of the TCPA settlement fund, which amounted to a 3.81 multiplier of class counsel's lodestar, and awarding costs on top of the fee award); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. Cal. 2007) (upholding 25% fee award yielding multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have allowed"); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award yielding a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers in this range or higher"); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995) (multiplier of 3.6 was "well within the acceptable range for fee awards in complicated class action litigation" and stating that "[m]ultipliers in the 3-4 range are common"); *see also Vizcaino*, 290 F.3d at 1051 and Appendix (affirming 28% fee award where multiplier equaled 3.65; and citing cases approving multipliers in common fund cases averaging 3.32 and going as high as 19.6); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 123 (2d Cir. 2005) (approving multiplier of 3.5); 3 Newberg on Class Actions § 14.03 (multipliers "ranging from one to four are frequently awarded in common fund cases where the lodestar method is applied").  Such multipliers, particularly where the percentage of the fee requested is reasonable, reflect the principle that attorneys should not be discouraged from obtaining early victories that benefit the class.  *See, e.g., Craft,* F. Supp. 2d at 1123-1127 (awarding 25% of fund, which amounted to 5.2 multiplier, in part because of the numerous drawbacks and disincentives associated with a pure lodestar approach); *see also Lopez*, 2011 U.S. Dist. LEXIS 99289, at *10, 39-43 (citing *Swedish Hosp.*, 1 F.3d at 1266-67) (awarding 28.5% of fund, and finding that a lodestar cross-check is "not a useful reference point").

Moreover, under the circumstances of this case—including, *inter alia*, the exceptional monetary and prospective relief obtained for the Class; the risk involved with continued litigation, including the risk that Class Members would likely obtain no relief if the Court were to grant Discover's arbitration motion; the contingent nature of the fee; the arm's length nature of difficult and protected negotiations; and the experience of Class Counsel in litigating TCPA class actions—a significant multiplier is well justified here under applicable law when performing a cross-check.  *See Kerr*, 526 F.2d at 70; *see also Washington Pub. Power*, 19 F.3d at 1299-1300

("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" in accord with the "established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases.").  A lodestar plus multiplier cross-check therefore further supports the reasonableness of the requested 25% fee.

### B.   Class Counsel Are Not Seeking Reimbursement of their Costs on Top of the Fee Award, Although Such Reimbursement Would be Justified.

Class Counsel are not seeking payment of costs in addition to their recovery of 25% of the Fund, and will instead be reimbursed costs out of that 25%.  As such, there is no need for detailed analysis.  Nonetheless, recovery of those costs would be appropriate in its own right. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement."  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)).  To date, Class Counsel have incurred out-of-pocket costs totaling $42,568.89.  This amount includes costs for (1) mediation fees; (2) travel to the mediations, meetings with counsel, and court hearings; (3) hard costs such as legal research through LEXIS and Westlaw and Federal Express, postage, and messengering fees; and (4) other costs such as printing, copying, and telephone charges.[24]  These relatively modest out-of-pocket costs were necessary to secure the resolution of this litigation.  *See In re Media Vision*, 913 F. Supp. at 1367-72 (costs related to retention of experts, photocopy costs, travel expenses, postage, telephone costs, computerized legal research fees, and filing fees may be reimbursed).

In addition, although it was not called for by the Settlement Administrator's original Court-approved Notice Plan, Class Counsel have negotiated with the Settlement Administrator to send an additional email blast of the Class Notice to remind Class Members to submit claims, subject to Discover's approval.  Class Counsel will pay this additional cost at their sole expense.[25]

### C.   The Class Representatives' Service Awards Are Reasonable.

As the Ninth Circuit has recognized, "named plaintiffs, as opposed to designated class

---

[24] Selbin Decl., ¶¶ 25-26; Wilson Decl., ¶¶ 13-14; Ankcorn Decl., ¶¶ 12-13; Terrell Decl., ¶ 22.
[25] Selbin Decl. ¶ 44.

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
3:12-CV-01118-JSW

1145548.2

members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases"). Such awards are "intended to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action." *Id.* Small incentive awards, such as those requested here, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. The requested modest service awards of $2,000 for each of the two Class Representatives are well justified.

In addition to lending their names to this matter, and thus subjecting themselves to public attention, the Class Representatives were actively engaged in these Actions. Among other things, they (1) provided information to Class Counsel for the complaints and other pleadings; (2) reviewed pleadings and other documents including the complaints; (3) communicated on a regular basis with counsel and kept themselves informed of progress in the litigation and settlement negotiations; and (4) reviewed and approved the proposed settlements.[26] Their dedication to these Actions was notable, particularly given the relatively modest size of their personal financial stakes in this case. *See Van Vranken*, 901 F. Supp. at 299 (awarding $100,000 incentive award in part on the ground that, "[i]n exchange for his participation, Van Vranken will not receive great personal benefit").

Moreover, the amount requested here, $2,000 for each of the two Class Representatives (or 0.02% of the Settlement Fund), is reasonable and less than amounts frequently awarded in TCPA actions. *See, e.g., Satterfield*, No. 06-cv-2893 (N.D. Cal. Aug. 6, 2010) (Ex. C to Selbin Decl.) (awarding $20,000 to one named plaintiff, and $5,000 each to the other two named plaintiffs, in a TCPA action); *AllianceOne,* No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) (Ex. B to Selbin Decl.) (awarding $5,000 to one named plaintiff, and $2,500 each to the other two named plaintiffs, in a TCPA action). It is also less than the service awards frequently awarded in other class actions, including those that have settled at similar procedural postures.

---

[26] Declaration of Andrew Steinfeld in support of Motion for Attorneys' Fees, ¶ 4; Declaration of Walter Bradley in support of Motion for Attorneys' Fees, ¶ 4.

- 21 -

1    *Hopson v. Hanesbrands Inc.,* No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *27-28

2    (N.D. Cal. Apr. 3, 2009) (awarding $5,000 incentive payment, constituting 1.25% of the

3    settlement fund, and finding that, "in general, courts have found that $5,000 incentive payments

4    are reasonable") (citations omitted); *Odrick v. UnionBanCal Corp.,* No. C 10-5565 SBA*,* 2012

5    U.S. Dist. LEXIS 171413, at *11, 18 (N.D. Cal. Dec. 3, 2012) (awarding $5,000 to class

6    representative where "the settlement was reached at the early stages of litigation"); *Fitzgerald v.*

7    *City of Los Angeles,* No. CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382, at *9 (C.D. Cal. Dec.

8    8, 2003) (awarding $3,500 each to class representatives in early settlement case).

9        Accordingly, Class Counsel respectfully request the Court to award service awards of

10    $2,000 each to the Class Representatives.

11    **IV.**    **CONCLUSION**

12        For the foregoing reasons, Class Counsel respectfully request that the Court award, from

13    the common Settlement Fund, the following: (1) attorneys' fees and costs in the total amount of

14    $2,175,000; and (2) service awards in the amount of $2,000 each to the two Class Representatives.

15    Class Counsel will submit a proposed order for attorneys' fees and service awards as part of their

16    upcoming Motion for Final Approval.

17

18    Dated: December 23, 2013       Respectfully submitted,

19                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

20                        By: */s/ Jonathan D. Selbin*
                            Jonathan D. Selbin

21                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                       Jonathan D. Selbin (State Bar No. 170222)

22                        250 Hudson Street, 8th Floor
                       New York, NY  10013

23                        Telephone:  (212) 355-9500
                       Facsimile:   (212) 355-9592

24

25                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                       Daniel M. Hutchinson (State Bar No. 239458)

26                        Nicole D. Reynolds (State Bar No. 246255)
                       275 Battery Street, 29th Floor

27                        San Francisco, CA  94111-3339
                       Telephone:  (415) 956-1000

28                        Facsimile:   (415) 956-1008

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice* to be filed)
mwilson@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:   (614) 224-6066

CASEY GERRY SCHENK FRANCAVILLA BLATT &
PENFIELD LLP
Mark Ankcorn (State Bar No. 166871)
mark@cglaw.com
110 Laurel Street
San Diego, CA  92101
Telephone:  (619) 238-1811

TERRELL MARSHALL DAUDT & WILLIE PLLC
Beth E. Terrell (State Bar No. 178181)
bterrell@tmdwlaw.com
936 North 34th Street, Suite 400
Seattle, WA  98103-8869
Telephone:  (206) 816-6603
Facsimile:   (206) 350-3528

*Attorneys for Plaintiffs and the Proposed Class*

1145548.2