1   LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
2   Jonathan D. Selbin (State Bar No. 170222)
    250 Hudson Street, 8th Floor
3   New York, NY 10013
    Telephone: (212) 355-9500
4   Facsimile: (212) 355-9592

5   LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
6   Daniel M. Hutchinson (State Bar No. 239458)
    Nicole D. Reynolds (State Bar No. 246255)
7   275 Battery Street, 29th Floor
    San Francisco, California 94111-3339
8   Telephone: (415) 956-1000
    Facsimile: (415) 956-1008

9
    MEYER WILSON CO., LPA
10  Matthew R. Wilson (State Bar No. 290473)
    1320 Dublin Road, Ste. 100
11  Columbus, Ohio 43215
    Telephone: (614) 224-6000
12  Facsimile: (614) 224-6066

CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD
LLP
Mark Ankcorn (State Bar No. 166871)
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (614) 224-6066

TERRELL MARSHALL DAUDT
& WILLIE PLLC
Beth E. Terrell (State Bar No. 178181)
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

13
14  *Attorneys for Plaintiffs and the Proposed Class*

15          UNITED STATES DISTRICT COURT

16          NORTHERN DISTRICT OF CALIFORNIA

17

18  ANDREW STEINFELD and WALTER
    BRADLEY, on behalf of themselves and
19  all others similarly situated,

20              Plaintiff,

21          v.

22  DISCOVER FINANCIAL SERVICES,
    DFS SERVICES, LLC, and DISCOVER
23  BANK,

24              Defendants.

25

26

27

28

Case No. 3:12-cv-01118-JSW

**PLAINTIFFS' UNOPPOSED MOTION
AND MEMORANDUM IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Date: February 14, 2014
Time: 9:00 a.m.
Courtroom: 11, 19th Floor
Judge: Jeffrey S. White

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

I. INTRODUCTION ...................................................................................... 1

II. STATEMENT OF FACTS ......................................................................... 3

    A. Factual Background .......................................................................... 3

    B. Plaintiffs Thoroughly Investigated the Claims of the Proposed Class ........ 4

    C. The Proposed Settlement .................................................................... 6

        1. The Class ................................................................................. 6

        2. Prospective Relief for Class Members ............................................ 6

        3. Monetary Relief for Class Members .............................................. 7

        4. *Cy Pres* Distribution ................................................................ 8

        5. Class Release ........................................................................... 8

        6. Class Representative Service Awards .............................................. 9

        7. Attorneys' Fees and Costs ........................................................... 9

III. CLASS NOTICE HAS BEEN DISSEMINATED ......................................... 9

    A. Direct Mail and Email Notice ............................................................ 10

    B. Published Notice ............................................................................. 10

    C. CAFA Notice ................................................................................. 10

    D. Settlement Website and Toll-Free Number ............................................ 11

    E. Settlement Administration Costs ......................................................... 11

IV. CLASS MEMBERS HAVE RESPONDED POSITIVELY TO THE SETTLEMENT ......................................................................................... 12

V. THE COURT SHOULD GRANT FINAL APPROVAL ............................... 12

    A. The Class Action Settlement Approval Process ...................................... 12

    B. The Settlement is Fair, Reasonable, and Adequate, and Should be Approved ...................................................................................... 13

        1. The Strength of the Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation. ............. 14

            a. The Risk of Mandatory Individual Arbitration. ............... 14

            b. Challenges to the Claims on Their Merits. ...................... 15

        2. The Risk of Maintaining Class Action Status throughout Trial. ....................................................................................... 16

        3. The Amount Offered in Settlement. ............................................. 17

            a. The Prospective Relief. .............................................. 17

            b. The Monetary Relief. ................................................ 17

        4. The Extent of Discovery Completed and the Stage of the Proceedings. ........................................................................... 17

5. The Experience and Views of Counsel. ........................................ 19

6. The Presence of a Governmental Participant. .............................. 19

7. The Reaction of Class Members. ................................................. 19

8. The Settlement is the Product of Arm's Length Negotiations. ........................................................................................ 20

VI. CONCLUSION ................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Express Co. v. Italian Colors Rest.*,
133 S. Ct. 2304 (2013) ........................................................................................... 3, 14

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011) ...................................................................................... 2, 14, 15

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ............................................................................ 19

*Bradley v. Discover Financial Services*,
Case No. 4:11-cv-5746-YGR.......................................................................................... 14

*Brown v. DIRECTV, LLC*,
No. CV 12-08382 DMG, 2013 U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) ................ 15

*Cayanan v. Citi Holdings, Inc.*,
928 F. Supp. 2d 1182 (S.D. Cal. 2013) ...................................................................... 15

*Churchill Village, LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ............................................................................... 13, 14

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)..................................................................................... 12

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)..................................................................................... 13

*Coppock v. Citigroup, Inc.*,
No. C11-1984-JCC, 2013 U.S. Dist. LEXIS 40632 (W.D. Wash. Mar. 22, 2013) ................ 15

*Discover Bank v. Superior Court*,
36 Cal. 4th 148, 30 Cal. Rptr. 3d 76, 113 P. 3d 1100 (2005) ..................................... 14

*Gene And Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008) ...................................................................................... 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)....................................................................................... 20

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..................................................................... 19

*Martin v. Wells Fargo Bank, N.A.*,
3:12-cv-06030-SI (Dec. 2, 2013) ............................................................................... 15

*McNamara v. Royal Bank of Scot. Group, PLC*,
No. 11-cv-2137, 2012 U.S. Dist. LEXIS 158580 (S.D. Cal. Nov. 5, 2012).......................... 15

*Meyer v. Portfolio Recovery Associates*,
696 F.3d 943 (9th Cir. 2012)....................................................................................... 16

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ...................................................................................... 13

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)....................................................................................... 13

**TABLE OF AUTHORITIES**
(continued)

Page

## <u>STATUTES</u>

28 U.S.C. § 1715 ............................................................................................................... 21

47 U.S.C. § 227(b)(1)(A) ............................................................................................... 2, 3

## <u>OTHER AUTHORITIES</u>

4 *Newberg on Class Actions* (4th Ed. 2002)
  § 11.25 ........................................................................................................................ 13

4 *Newberg on Class Actions* (4th Ed. 2002)
  § 11.41 ........................................................................................................................ 12

*Manual for Complex Litigation* (Fourth) (2004)
  § 21.63 ........................................................................................................................ 12

## <u>RULES</u>

Fed. R. Civ. P. 23(e)(2) .................................................................................................... 13

## <u>TREATISES</u>

*In the Matter of Rules and Regulations Implementing the
Telephone Consumer Protection Act of 1991,*
  23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877,
  2008 WL 65485 (F.C.C.) ............................................................................................ 15

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND COUNSEL OF RECORD**:

Please take notice that on February 14, 2014, at 9:00 a.m., in Courtroom 11, 19th floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Walter Bradley and Andrew Steinfeld ("Plaintiffs") will, and hereby do, move for an order granting final approval of the settlement ("Settlement") between Plaintiffs, on behalf of a class of all others similarly situated, on the one hand, and Defendants Discover Financial Services, DFS Services, LLC, and Discover Bank ("Discover"), on the other hand, and dismissing all claims with prejudice.

As discussed in the accompanying memorandum, this motion is made on the grounds that the Settlement is fair, reasonable, and adequate under applicable law.  This motion is based upon this notice, the attached memorandum of points and authorities, the Declaration of Jonathan D. Carameros re: Notice Procedures, the Declaration of Julia B. Strickland Regarding Notice Pursuant to the Class Action Fairness Act of 2005, the memoranda and declarations filed in support of preliminary approval and for attorneys' fees and service awards, any oral argument that is held regarding this motion, the complete record in this litigation, and such other matters as the Court may consider.

## I.    INTRODUCTION

On September 10, 2013, the Court granted preliminary approval of the Settlement.  *See* Dkt No. 59.  Per the Court's October 31, 2013 Order approving the parties' amended notice plan (*see* Dkt. No. 61), direct individual notice of the Settlement was disseminated to approximately 95% of Class Members via email and mail.[1]  A second "reminder" email notice will be distributed to the 6,016,032 Class Members who have valid email addresses (*i.e.*, addresses for which the first notice was not returned as undeliverable) beginning on January 10, 2014 through January 12, 2014.[2]  Additional notice was given to Class Members through an advertisement published on

---

[1] Declaration of Jonathan D. Carameros re: Notice Procedures ("Carameros Decl."), ¶¶ 3-6, 8.
[2] *Id.,* ¶ 7.

November 27, 2013 in USA Today, and through the Settlement Website.[3]  Class Members have

until January 13, 2014 to opt out or object, and have until February 25, 2014 to submit claims.

Dkt. No. 59.  The Fairness Hearing is scheduled for February 14, 2014 at 9:00 a.m.  *Id.*  By this

motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement and

approve the Settlement as fair, reasonable, and adequate.

The Settlement is the product of extensive arm's-length negotiations between the parties

and their counsel, after three full-day mediation sessions with a well-respected mediator and

former judge, the Honorable Carl J. West (Ret.).  Class Counsel have extensive experience

litigating TCPA class actions and other consumer class actions, and were well-informed about the

legal and factual issues involved in this matter.

The Settlement represents a very good result for the Class.  Plaintiffs alleged that Discover

called Plaintiffs and Class Members on their cell phones through the use of automatic telephone

dialing systems and/or using an artificial or prerecorded voice without their prior express consent,

in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A).

Class Counsel's investigation and conversations with Plaintiffs and Class Members revealed that

for many, the primary goal was to put an end to these phone calls.  The Settlement provides

Plaintiffs and Class Members with this exact relief.  Simply by filling out a one-page form (a

"Revocation Request"), Class Members can put an end to all unwanted autodialed and/or

prerecorded calls from Discover to their cell phones.  In addition, the Settlement also requires

Discover to pay $8,700,000 into a non-reversionary settlement fund ("Fund"), out of which Class

Members who file qualified claims will receive a *pro rata* share of payments in the form of either

a cash award or a credit against the balance of a Discover credit card, at the Class Member's

election.  As to those Class Members with a charged-off debt previously owed to Discover,

Discover may elect to apply a payment in the form of a reduction from the balance of that debt in

lieu of a cash or credit award.

The relief the Settlement provides is a very good result, particularly in view of the risks

and delays involved in continued litigation, including the very substantial risk that the Court

---

[3] *Id.*, ¶¶ 9, 11.

PLFS' MOTION AND MEMORANDUM ISO MOTION
FOR FINAL APPROVAL
3:12-CV-01118-JSW

1   would find that Class Members' claims were subject to mandatory, individual arbitration after the

2   Supreme Court abrogated the *Discover Bank* Rule in *AT&T Mobility LLC v. Concepcion*, 131 S.

3   Ct. 1740 (2011), and further limited the ability to overcome such clauses in *American Express*

4   *Company v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013).  If such a motion were granted,

5   Class Members would be forced to pursue their claims individually in arbitration, with none of

6   the benefits and efficiencies of collective action.  Any Class Members who believe that option to

7   be viable are, of course, free to opt out and pursue their claims in that manner.

8           While the deadlines have not yet passed, the reaction from the Class thus far has been very

9   positive.  As of the date of this motion, approximately 61,489 claims for the cash or credit awards

10  and approximately 798 revocation requests have been submitted, while just 133 persons have

11  asked to be excluded, and no valid objections have been received.[4]  Class Counsel expect, based

12  on their experience in similar cases, that many more Class Members will submit claims and

13  revocation requests as the deadlines approach.

14          For the foregoing reasons and the others detailed below, the settlement readily meets the

15  standards for final settlement approval, and it should therefore be approved.

16  **II.     STATEMENT OF FACTS**

17          **A.     Factual Background**

18          Plaintiffs brought these actions alleging that Discover engaged in a systematic practice of

19  calling consumers' cell phones through the use of automatic telephone dialing systems and/or an

20  artificial or prerecorded voice without their prior express consent, in violation of the TCPA,

21  47 U.S.C. § 227(b)(1)(A).  *See generally Bradley v. Discover Financial Services*, U.S.D.C.,

22  Northern District of California Case No. 4:11-cv-5746-YGR ("Bradley Action"), Dkt. No. 1;

23  *Steinfeld v. Discover Financial Services, et al.*, U.S.D.C., Northern District of California Case No.

24  3:12-cv-01118-JSW ("Steinfeld Action"), Dkt. No. 1.

25          Plaintiff Andrew Steinfeld applied for and received a Discover credit card in January 2011.

26  *Steinfeld* Action, Dkt. No. 1 at ¶ 16.  Steinfeld alleges that in December 2011, Discover began

27  making prerecorded calls to his cell phone.  *Id.* at ¶ 18.  Plaintiff Walter Bradley applied for and

28

---

[4] Carameros Decl., ¶¶ 12-15.

- 3 -                    PLFS' MOTION AND MEMORANDUM ISO MOTION
                                                                              FOR FINAL APPROVAL
                                                                              3:12-CV-01118-JSW

received a Discover credit card in the summer of 2005.  *Bradley* Action, Dkt. No. 27 ¶ 2.  Bradley

alleges that in January 2010, Discover began making prerecorded calls to his cell phone.  *Id.* ¶¶ 6-

7.  Plaintiffs further allege that neither of them provided Discover with "express consent" to make

prerecorded calls to their cell phones, nor did either of them list any cell phone number on their

credit card applications or on any other documents at any time during the transaction that resulted

in the debt owed to Discover.  *Steinfeld* Action, Dkt. No. 1 ¶ 23; *Bradley* Action, Dkt. No. 27 ¶ 2.

Discover denies all of Plaintiffs' allegations and argues that it had express consent to

make automated, prerecorded calls to Plaintiffs and Class Members on their cell phones.

Discover further maintains that the parties agreed to individually arbitrate these claims.  Discover,

however, withdrew without prejudice its Motion to Compel Arbitration—expressly reserving the

right to re-file the motion at a later date—solely to permit the parties to explore settlement and

devote their time to matters that would advance their ability to engage in meaningful settlement

negotiations.

### B.  Plaintiffs Thoroughly Investigated the Claims of the Proposed Class

Class Counsel thoroughly researched Discover's practices and their legal claims prior to

filing suit.[5]  Class Counsel interviewed and collected relevant information and documents from

affected Class Members.[6]  This information was essential to Class Counsel's ability to understand

the nature of the alleged problem, the language of the credit card agreements at issue, and

potential remedies.[7]

Before engaging in any settlement negotiations, the parties had fully briefed Discover's

Motion to Compel Arbitration in the *Bradley* Action, which Discover filed on February 28, 2012.

Discover filed a substantively identical motion in the *Steinfeld* Action on August 16, 2012.  On

March 30, 2012, Plaintiff Bradley filed an opposition to the motion, and on April 20, 2012,

Discover filed its reply.  On May 9, 2012, the Court in the *Bradley* Action granted the parties'

joint stipulation to postpone the May 22, 2012 hearing on Discover's motion to compel arbitration

---

[5] Declaration of Daniel M. Hutchinson in Support of Motion for Preliminary Approval of Settlement (filed on May 17, 2013, Dkt. No. 49) ("Hutchinson Decl.") ¶ 14.
[6] *Id.*
[7] *Id.*

- 4 -

so that the parties could engage in mediation and Discover could voluntarily provide Plaintiffs with data and information prior to the mediation.  Thereafter, the parties entered into multiple stipulations to continue the arbitration hearing in the *Bradley* Action and to postpone the deadline for Discover to respond to the Complaint in the *Steinfeld* Action, so that they could engage in settlement negotiations and attend multiple mediations.[8]  Once the parties agreed to conduct these settlement negotiations, they informally exchanged pertinent information and documents including client credit records and applications, form credit applications in use during the class period, and case law and relevant rulemaking by the FCC.[9]  The parties also exchanged and reviewed formal discovery, including interrogatories on Discover's call record data and confirmatory depositions of Discover 30(b)(6) witnesses to ensure that the information exchanged during negotiations regarding call record data and the scope and size of the class was complete and accurate.[10]

The parties participated in three full-day mediation sessions before the Honorable Carl West (Ret.) of JAMS, on May 31, 2012, July 10, 2012 and on September 27, 2012.[11]  The parties submitted detailed mediation briefs to Judge West, setting forth their respective views on the strengths of their cases.[12]  During these mediation sessions, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class.  Counsel exchanged a series of counterproposals on key aspects of the Settlement, including the parameters of the practice changes and monetary relief for the Class, and the meaning and interpretation of the

---

[8] *Id.*, ¶ 15.

[9] *Id.*, ¶ 16.

[10] Declaration of Jonathan Selbin in Support of Motion for Attorney's Fees (filed on Dec. 23, 2013, Dkt. No. 64-1) ("Selbin Decl."), ¶ 37; Declaration of Matthew R. Wilson in Support of Motion for Attorneys' Fees (filed on Dec. 23, 2013, Dkt. No. 64-4) ("Wilson Decl."), ¶ 22.

[11] Hutchinson Decl., ¶ 17.  *See also* Selbin Decl., ¶ 36; Wilson Decl., ¶ 21; Declaration of Mark Ankcorn in Support of Motion for Attorneys' Fees (filed on Dec. 23, 2013, Dkt. No. 64-2) ("Ankcorn Decl."), ¶ 19; Declaration of Beth E. Terrell in Support of Motion for Attorneys' Fees (filed on Dec. 23, 2013, Dkt. No. 64-3) ("Terrell Decl."), ¶ 20.

[12] Hutchinson Decl., ¶ 17; Selbin Decl., ¶ 36; Wilson Decl., ¶ 21; Ankcorn Decl., ¶ 19; Terrell Decl., ¶ 20.

1  eligibility requirements.[13]  At all times, the parties' settlement negotiations were highly

2  adversarial, non-collusive, and at arm's length.[14]

3      Through the mediated settlement negotiations and the investigation efforts, the parties

4  reached an agreement in principle pursuant to a mediator's proposal.[15]  After extensive, additional

5  negotiations lasting more than six months, the parties executed a Memorandum of Understanding

6  ("MOU") on April 5, 2013.[16]  With the MOU in place, the parties turned to the settlement

7  agreement, claim forms, and notice documents and executed a Settlement Agreement

8  ("Agreement") on May 17, 2013.[17]

9      **C.**    **The Proposed Settlement.**

10      The Settlement's terms were summarized in Plaintiffs' preliminary approval papers, are

11  contained in the Settlement Agreement attached as Exhibit B to the Hutchinson Declaration, and

12  are again summarized below for the Court's convenience.

13      **1.**    **The Class**

14      The "Class" includes:

15          All persons to whom, on or after November 30, 2007 through
        September 10, 2013, Discover Financial Services or any of its

16          affiliates or subsidiaries placed a non-emergency telephone call to a
        cellular telephone through the use of an automatic telephone dialing

17          system and/or an artificial or prerecorded voice.  Excluded from the
        Settlement Class are the Judges to whom the Actions were/are

18          assigned and any member of the Judges' staff and immediate
        families, as well as all persons who validly request exclusion from

19          the Settlement Class.

20  Agreement § II.A.36.

21      **2.**    **Prospective Relief for Class Members**

22      Class Counsel's interviews with Plaintiffs and Class Members revealed that for many,

23  putting a stop to the autodialed and/or prerecorded calls to their cell phones was the primary goal

24

25

26  [13] *Id.*
[14] Hutchinson Decl., ¶ 17.

27  [15] *Id.*, ¶ 18.
[16] *Id.*

28  [17] *Id.*, ¶ 19.

of this litigation.[18]  The Settlement achieves this result.  Specifically, for Class Members who execute a valid and timely request ("Revocation Request"), Discover shall not make use of, or knowingly authorize anyone acting on its behalf to make use of, an automatic telephone dialing system and/or an artificial or prerecorded voice, to call Class Members' cell phones or to send text messages to their cell phones.  Agreement § III.D.1.a.  Through the Settlement Website, Class Members are able submit the Revocation Request simply by checking a box and providing their current cell phone number.  *Id.* § III.D.1.b.  As an alternative, Class Members may sign and return a one-page "hard copy" Revocation Request to the Claims Administrator.  *Id.*  Class Members have until thirty (30) days after the Final Approval Order to submit their Revocation Requests.  Dkr. No. 59 [Revised Order Granting Preliminary Approval], ¶ 19.  Discover agrees to implement the Revocation Requests by no later than 100 days after the Effective Date. Agreement § III.D.1.

### 3.        Monetary Relief for Class Members

In addition to the core prospective relief for the Class, the Settlement also requires Discover to create a non-reversionary Settlement Fund of $8.7 million, out of which eligible Class Members who file a qualified claim will receive their *pro rata* share of payments in either the form of (1) a cash payment or (2) a credit on their Discover credit card account, at Class Members' election.  Agreement §§ III.D.2.a.  In the event that a Class Member has one or more extensions of credit with Discover that has been revoked or charged off, Discover may elect to apply a reduction to that outstanding debt instead of a cash or credit payment.  *Id.* § III.G.2. While it is not possible to predict the precise amount of the Settlement payments until all claims have been submitted, based on their experience in similar TCPA class actions, Class Counsel estimate payments in the range of $20 to $40 after deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the Plaintiffs, and costs of notice and claims administration.  *Id.* § III.G.5.  Checks for cash payments will be valid for 180 days from the date of the check.  *Id.* § III.H.1.  In order to exercise the right to obtain a cash or credit payment, Class Members need only complete a simple, one-page claim form and provide it to the Claims

---

[18] Selbin Decl., ¶ 34.

1   Administrator via the Settlement Website or by mail.  *Id.* § III.G.4, Ex. B.  Class Members have

2   until February 25, 2014 to submit their Claim Forms.  *Id.* § II.A.5.

3        In the event that the combined amounts of all checks that remain uncashed more than 180

4   days after the date on the checks exceed $50,000, a second *pro rata* distribution will be made to

5   all Class Members who made valid and timely claims in the form of either a credit or a reduction

6   on an outstanding debt.  *Id.* § III.H.1.  To the extent that a Class Member previously received a

7   cash payment, the second distribution to that person shall be made as a credit (because sending a

8   second check for the likely small per person residual amounts would be economically unfeasible);

9   if a credit cannot be paid, the amount shall be distributed as *cy pres*.  *Id.* § III.I.

10              **4.    *Cy Pres* Distribution**

11        In the event that the combined amounts of any checks that remain uncashed for more than

12  180 days after the date on the checks is equal to or less than $50,000, the money will be

13  distributed *cy pres* to Equal Justice Works to fund two-year fellowships designed to protect

14  consumers against unfair debt collection practices.  Agreement § III.I; Dkt. No. 52 at 2-3.  This *cy*

15  *pres* distribution shall be made 240 days after the last day to complete the processing of

16  Reduction Awards.  Agreement § III.I.  If, for any reason, the Court later determines that the

17  proposed recipient is no longer an appropriate recipient, the parties shall agree on a replacement

18  recipient subject to Court approval.

19              **5.    Class Release**

20        In exchange for the benefits allowed under the Settlement, Class Members who do not opt

21  out will provide a release tailored to the practices at issue in this case.  Specifically, they will

22  release any and all rights, duties, obligations, claims, actions, causes of action or liabilities as of

23  the date of the Final Approval Order:  "that arise out of or are related in any way to the use of an

24  'automatic telephone dialing system' and an 'artificial or prerecorded voice' to make 'calls' to a

25  cellular telephone . . . to contact or attempt to contact Settlement Class Members" during the

26  Class Period.  First Amendment to Settlement Agreement and Release (Dkt. No. 55-1) (amending

27  Section III.P of the Settlement Agreement).

28

PLFS' MOTION AND MEMORANDUM ISO MOTION
FOR FINAL APPROVAL
3:12-CV-01118-JSW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6.     **Class Representative Service Awards**

Conditioned upon Court approval, the Agreement provides a $2,000 Service Award to each Plaintiff in recognition of and to compensate Plaintiffs for their service to and efforts in prosecuting the Actions on behalf of the Class.  Agreement § III.J.  These Service Awards are in addition to the relief the Plaintiffs will be entitled to under the terms of the Settlement.  Plaintiffs were actively engaged in these Actions.  Among other things, they: (1) provided information to Class Counsel for the complaints and other pleadings; (2) reviewed pleadings and other documents including the complaints; (3) communicated on a regular basis with counsel and kept themselves informed of progress in the litigation and settlement negotiations; and (4) reviewed and approved the proposed settlements.[19]  Further, they committed to participating in the litigation in whatever capacity needed should settlement not be reached.  The enforceability of the Settlement is not contingent on the grant of any service awards to the Plaintiffs.  Agreement § III.J.

7.     **Attorneys' Fees and Costs**

Per the Agreement, Class Counsel applied to this Court for payment of attorneys' fees and costs in the total amount of $2,175,000, which is 25 percent of the Settlement Fund (costs included).  Agreement § III.K; Dkt. No. 64.  As addressed in Class Counsel's motion, because Class Counsel are not seeking reimbursement of costs on top of this fee award, the amount requested falls below the Ninth Circuit's 25 percent benchmark for compensating Class Counsel in common fund class action settlements for the work they have performed in procuring a settlement for the Class.  The enforceability of the Settlement is not contingent on the amount of attorneys' fees and costs awarded.  Agreement § III.K

III.   **CLASS NOTICE HAS BEEN DISSEMINATED**

The notice program approved by the Court (see Dkt. Nos. 59 and 61) has been, and is continuing to be, implemented by the parties and the Court-approved Settlement Administrator in accordance with the Court's direction.[20]

---

[19] Declaration of Andrew Steinfeld in support of Motion for Attorneys' Fees, ¶ 4; Declaration of Walter Bradley in support of Motion for Attorneys' Fees, ¶ 4.

[20] *See generally* Carameros Decl.

### A.     **Direct Mail and Email Notice**

On November 4, 2013, Discover provided the Settlement Administrator, KCC Class Action Services, LLC ("KCC"), with a list of 9,321,114 Class Members for whom it purportedly had either an email or mailing address.[21]  KCC ran this list through the National Change of Address Database and updated 662,670 mailing addresses.[22]  KCC also identified duplicates on the list, as well as records for which neither an email nor a mailing address was provided.[23]  In total, individual direct notice was disseminated to 9,179,578 Class Members.[24]  For all returned emails, KCC subsequently sent notices via direct mail.[25]  As of January 10, 2014, KCC has received 162,465 notices returned without forwarding address information.[26]  KCC conducted address searches using public databases to locate new addresses, which resulted in 97,862 updated addresses.[27]  KCC re-mailed notices to these new addresses.[28]  Beginning on January 10, 2014 through January 12, 2014, KCC will disseminate a second email notice to approximately 6 million Class Members, which was not required under the Notice Plan approved by the Court and which is being done at Class Counsel's direction and expense.[29]  Thus, individual notice was delivered directly by email or mail to approximately 95% of the Class, and many Class Members will receive such individual notice twice.

### B.     **Published Notice**

Notice of the Settlement was timely published in USA Today on November 27, 2013.[30]

### C.     **CAFA Notice**

Discover provided notice of the Settlement to the officials designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.[31]

---

[21] *Id.*, ¶ 3.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*, ¶ 6.

[26] *Id.*, ¶ 8.

[27] *Id.*

[28] *Id.*

[29] *Id.*, ¶ 7; Selbin Decl. ¶ 44.

[30] *Id.*, ¶ 9.

- 10 -

### D.   Settlement Website and Toll-Free Number

The Settlement Administrator established, on or before September 18, 2013, a Settlement Website (www.SteinfeldTCPASettlement.com) where claims and revocation requests may be submitted electronically.[32]  The Settlement Website also contains the following: downloadable claim forms; downloadable revocation request forms; the Settlement Agreement; the First Amendment to the Settlement Agreement; the Preliminary Approval Order, and the Revised Preliminary Approval Order; Class Counsel's Motion for Attorneys' Fees; Frequently-Asked Questions; and the toll-free number.[33]  As of January 10, 2014, the website has received 662,745 visits.[34]

In addition, the Settlement Administrator timely established, on or before November 15, 2013, a toll-free telephone number dedicated to answering telephone inquiries from class members and permitting class members to request copies of the long-form notice and claim forms.[35]  As of January 10, 2014, KCC has received 24,200 calls.[36]  Class Counsel have also responded to several inquiries from Class Members regarding the Settlement.[37]

### E.   Settlement Administration Costs

The costs of settlement administration as of January 1, 2014 total $1,192,731.[38]  Costs are not expected to exceed $1,487,100.[39]  Discover has agreed to pay, separate from and in addition to the Settlement Fund, up to $90,000 of all costs in excess of $1.19 million.  Dkt. No. 61.  In addition, Class Counsel agreed to separately pay for the second round of direct email notice out of their own pockets.[40]

---

[31] Declaration of Julia B. Strickland Regarding Notice Pursuant to the Class Action Fairness Act of 2005 ("Strickland Decl.") ¶ 2.
[32] Carameros Decl., ¶ 11.
[33] *Id.*
[34] *Id.*
[35] *Id.*, ¶ 10.
[36] *Id.*
[37] Selbin Decl., ¶ 39.
[38] Carameros Decl., ¶ 16.
[39] *Id.*
[40] Selbin Decl., ¶ 44.

- 11 -

IV.   **CLASS MEMBERS HAVE RESPONDED POSITIVELY TO THE SETTLEMENT**

       The response from the Class thus far has been very positive.  The deadline for Class

Members to submit claims is not until February 25, 2014.  Dkt. No. 59, ¶ 19.  And, Class

Members may submit revocation requests up until thirty days after the Final Approval Order.  *Id.*

Yet, Class Members have already filed 61,489 claims and 798 revocation requests.[41]  Class

Counsel expect that many more Class Members will make claims and revocation requests nearer

to the deadlines.  Moreover, as of the date of this motion—one court day before the deadline to do

so—KCC has received only 133 requests for exclusion, and *zero* valid objections to the

Settlement.[42]

V.    **THE COURT SHOULD GRANT FINAL APPROVAL**

       A.    **The Class Action Settlement Approval Process.**

       Federal courts strongly favor and encourage settlements, particularly in class actions and

other complex matters, where the inherent costs, delays, and risks of continued litigation might

otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs v.

City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors

settlements, particularly where complex class action litigation is concerned"); *see also* 4 *Newberg

on Class Actions* § 11.41 (4th Ed. 2002) (citing cases).  The traditional means for handling claims

like those at issue here—individual litigation—would require a massive expenditure of public and

private resources and, given the relatively small value of the claims of the individual Class

Members, would be impracticable.  Thus, the proposed Settlement is the best vehicle for Class

Members to receive the relief to which they are entitled in a prompt and efficient manner.

       The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 ("*Manual for Compl. Lit.*")

describes a three-step procedure for approval of class action settlements:

              (1)  Preliminary approval of the proposed settlement at an informal
              hearing;

---

[41] Carameros Decl., ¶¶ 14-15.

[42] *Id.*, ¶¶ 12-13.  On or about November 22, 2013, Timothy A. Rioux purported to file an objection to the Settlement; however, Mr. Rioux failed to set forth any specific objections or grounds for such objections.  (Dkt. No. 62.).

(2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)  A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests.  4 Newberg § 11.25.

The first two steps in this process have occurred.  With this motion, Plaintiffs respectfully request that the Court take the third and final step in the process by granting final approval of the settlement.

### B.        The Settlement is Fair, Reasonable, and Adequate, and Should be Approved.

It is well settled that the law favors the compromise and settlement of class action suits. *See Churchill Village, LLC v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation….").

A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  When assessing a proposed settlement, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.

Courts in the Ninth Circuit consider a number of factors in evaluating class settlements, recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir.

2003).  The Ninth Circuit has set forth the following list of factors to be considered:  (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Churchill Village*, 361 F.3d at 575.

Application of these factors here confirms that the settlement is fair, reasonable, and adequate, and should be finally approved.

## 1. The Strength of the Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation.

Plaintiffs continue to believe that their claims against Discover have merit and that they could make a compelling case if their claims were tried.  If Plaintiffs were to prevail, Discover could face hefty statutory penalties.  Nevertheless, it is apparent that Plaintiffs and the Class would face a number of difficult challenges if the litigation were to continue.

### a. The Risk of Mandatory Individual Arbitration.

This action was especially risky because, for the entire class period, Discover's customer agreement contained a clause purporting to require individual arbitration and forbid class actions. The California Supreme Court considered a prior iteration of this same arbitration clause in *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 30 Cal. Rptr. 3d 76, 113 P. 3d 1100 (2005), and held it to be unenforceable under California law.  The United States Supreme Court, however, abrogated what became known as the *Discover Bank* Rule in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), ) and further limited the ability to overcome such clauses in *American Express Company v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013.

At the time the parties reached this Settlement, Discover's Motion to Compel Arbitration was fully briefed in the related case *Bradley v. Discover Financial Services*, Case No. 4:11-cv-5746-YGR (Dkt. Nos. 13, 14, 26, 27, 28, 33) and pending Judge Gonzalez Rogers' ruling. Discover filed an identical Motion to Compel Arbitration in the *Steinfeld* lawsuit.  Dkt. No. 21. The parties agreed to withdraw those motions solely to engage in settlement negotiations.

1   Plaintiffs recognized the risk that the Court would rule in Discover's favor, particularly given

2   recent court decisions broadly interpreting agreements to arbitrate and the lack of complete clarity

3   as to whether TCPA claims are arbitrable.  *See, e.g.*, Defendants' Motion to Compel Arbitration

4   and Stay Action (Dkt. No. 21) at 8 (arguing that "the Ninth Circuit and California federal courts

5   have routinely enforced arbitration agreements post-*AT&T Mobility*"; citing cases).  Since the

6   parties entered into this settlement, that risk has only increased as a series of decisions in United

7   Stated District Courts in California found that TCPA claims are subject to arbitration.  *McNamara*

8   *v. Royal Bank of Scot. Group, PLC*, No. 11-cv-2137, 2012 U.S. Dist. LEXIS 158580 (S.D. Cal.

9   Nov. 5, 2012) (compelling arbitration of TCPA claim); *Cayanan v. Citi Holdings, Inc.*, 928 F.

10   Supp. 2d 1182, 1208 (S.D. Cal. 2013) (same); *Coppock v. Citigroup, Inc.*, No. C11-1984-JCC,

11   2013 U.S. Dist. LEXIS 40632 (W.D. Wash. Mar. 22, 2013) (same); *Brown v. DIRECTV, LLC*, No.

12   CV 12-08382 DMG (Ex), No. CV 12-08382 DMG, 2013 U.S. Dist. LEXIS 90894 (C.D. Cal.

13   June 26, 2013) (same); *but see Martin v. Wells Fargo Bank, N.A.*, 3:12-cv-06030-SI (N.D. Cal.

14   Dec. 2, 2013) (Dkt. No. 73) (denying motion to compel arbitration of TCPA claim).

15       Had the Court ruled in favor of Discover on the arbitration motion, Plaintiffs and all Class

16   Members only could have proceeded with individual claims in arbitration.  Each individual Class

17   Member—to the extent they knew of their claims and could obtain attorney representation or

18   navigate the arbitration procedures themselves—would have been required to pay arbitration-

19   related fees and forego all class claims, including claims for classwide practice changes relief.

20   The Settlement has eliminated that risk completely.  To the extent any Class Member believes

21   pursuing their claims in this manner is preferable, they can opt out and do so, especially in light

22   of the fact that 95% of them were provided with individual direct notice.

23   **b.        Challenges to the Claims on Their Merits.**

24       The parties have competing interpretations of what constitutes "prior express consent"

25   under the TCPA based on the FCC's January 4, 2008 declaratory ruling, *In the Matter of Rules*

26   *and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559,

27   23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (hereinafter

28   "Declaratory Ruling").  The Declaratory Ruling is the FCC's official interpretation of the

1    governing provisions of the TCPA.  The FCC's Declaratory Ruling addresses the meaning of

2    "prior express consent" and states:  "prior express consent is deemed to be granted only if the

3    wireless number was provided by the consumer to the creditor, and that such number was

4    provided during the transaction that resulted in the debt owed."  Plaintiffs maintain that Paragraph

5    10 requires that the cell phone number be "provided during the transaction that resulted in the

6    debt owed," *i.e.* during loan "origination."  Discover, however, interprets the term "transaction"

7    broadly to mean any time during the multi-year life of the loan.  Based on this interpretation,

8    Discover maintains that some or all of the Class Members gave it prior express consent to contact

9    them at their cell phone numbers.  If the Court found that the FCC's Declaratory Ruling and/or

10   the TCPA permits "prior express consent" to be given: (1) after loan origination on documents

11   such as correspondence, updated information forms, forbearance requests, and the like, and/or

12   (2) verbally, the amount of recoverable damages could be reduced significantly or eliminated

13   altogether.  In addition, even if Plaintiffs prevailed on their interpretation of the FCC's

14   Declaratory Ruling, Discover would likely appeal the decision, which would result in substantial

15   delay.  The Settlement provides substantial relief to Class Members without further delay.

16                    **2.      The Risk of Maintaining Class Action Status throughout Trial.**

17        While Plaintiffs continue to believe that class certification would be achievable, Discover

18   consistently argued that class certification would be inappropriate in these actions due to the

19   question of whether Class Members consented to the calls at issue.  If the Court were to accept

20   Discover's interpretation of "prior express consent" under the statute, identifying which class

21   members consented and in what manner could be difficult.  And, courts are divided as to whether

22   such consent issues predominate over common questions in TCPA cases, depending on the

23   circumstances of the case.  *Compare Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036,

24   1042 (9th Cir. 2012) (upholding class certification) *with Gene And Gene LLC v. BioPay LLC*, 541

25   F.3d 318, 328 (5th Cir. 2008) (reversing class certification).  If Discover were able to present

26   convincing facts to support its position, there is a risk that the Court would decline to certify the

27   class, leaving only the named Plaintiffs to pursue their individual claims.

28

### 3. The Amount Offered in Settlement.

The Settlement provides substantial monetary and non-monetary relief for all Class Members, as it provides Class Members with a mechanism for ending the calls at issue and provides a hefty $8.7 million non-reversionary Settlement Fund.

#### a. The Prospective Relief.

Class Counsel's interviews with Plaintiffs and Class Members revealed that ending the autodialed and/or prerecorded calls to their cell phones was their key goal.[43] The Settlement allows Plaintiffs and Class Members to do just that: All Class Members who submit a simple one-page Revocation Request will end all unwanted calls from Discover to their cell phones. Agreement § III.D.1. Class Members have until 30 days after Final Approval to submit these simple requests. Dkt. No. 59 [Revised Order Granting Preliminary Approval], ¶ 19.

#### b. The Monetary Relief.

The Settlement requires Discover to pay $8.7 million into a non-reversionary common Settlement Fund, out of which Class Member claimants will receive their *pro rata* share of payments in either the form of (1) a cash payment or (2) a credit on their Discover account, at Class Members' election. Agreement §§ III.D.2.a. In the event that a Class Member has one or more extensions of credit with Discover that have been revoked or charged off, Discover may elect to apply a reduction to that outstanding debt instead of a cash or credit payment. Agreement § III.G.2. No amount of this fund will revert back to Discover. While the precise amount of individual payments cannot yet be determined, Class Counsel estimates that claimants will receive an average recovery of between $20 to $40. Agreement § III.G.5. The Settlement achieved by Class Counsel therefore provides significant monetary relief to the Class Members, particularly here, where the damages are purely statutory damages, rather than "actual" damages.

### 4. The Extent of Discovery Completed and the Stage of the Proceedings.

The Settlement was informed by Class Counsel's thorough investigation and analysis of the factual and legal issues involved. As detailed above, Class Counsel spent significant time thoroughly investigating the factual and legal claims involved in these Actions, as well as

---

[43] Selbin Decl., ¶ 34.

1    interviewing and collecting relevant information from Class Members, prior to filing the

2    Complaints.[44]

3          In addition, prior to engaging in settlement negotiations, the parties had fully briefed

4    Discover's Motion to Compel Arbitration in the *Bradley* Action.  The parties agreed to several

5    stipulations to postpone the hearing on Discover's arbitration motion so that they could engage in

6    mediation and meaningful settlement negotiations.[45]  Once the parties agreed to conduct these

7    settlement negotiations, they informally exchanged pertinent information and documents

8    including client credit records and applications, form credit applications in use during the class

9    period, and case law and relevant rulemaking by the FCC.[46]  The parties also exchanged and

10   reviewed formal discovery, including interrogatories on Discover's call record data and

11   confirmatory depositions of 30(b)(6) witnesses to ensure that the information exchanged during

12   negotiations regarding call record data and the scope and size of the class was complete and

13   accurate.[47]  Through this exchange, the parties thoroughly explored their respective positions on

14   the merits of the action, the viability of class certification, and damages.[48]

15         Settlement negotiations were prolonged and hard-fought, spanning approximately one

16   year.  The parties participated in three full-day mediations on May 31, 2012, July 10, 2012, and

17   on September 27, 2012.[49]  Following the last mediation, the parties spent numerous hours

18   negotiating the final settlement terms and negotiating, drafting, and revising the Memorandum of

19   Understanding and the Settlement Agreement.[50]

20         Accordingly, while these Actions settled prior to class certification, the final terms of

21   settlement were agreed to only after Class Counsel thoroughly vetted the claims and potential

22

23   _____

     [44] Hutchinson Decl. ¶ 14.  *See also* Selbin Decl., ¶ 34; Wilson Decl., ¶ 19; Ankcorn Decl., ¶ 17;
24   Terrell Decl., ¶ 20.
     [45] Hutchinson Decl., ¶ 15.
25   [46] *Id.*, ¶ 16
     [47] Selbin Decl., ¶ 37; Wilson Decl., ¶ 22.
26   [48] Hutchinson Decl., ¶ 16.
     [49] *Id.*, ¶ 17.  *See also* Selbin Decl., ¶ 36; Wilson Decl., ¶ 21; Ankcorn Decl., ¶ 19; Terrell Decl.,
27   ¶ 20.
     [50] Hutchinson Decl., ¶ 18.  *See also* Selbin Decl., ¶ 38; Wilson Decl., ¶ 23; Ankcorn Decl., ¶ 20;
28   Terrell Decl., ¶ 20.

                                                              PLFS' MOTION AND MEMORANDUM ISO MOTION
                                                              FOR FINAL APPROVAL
                                                              3:12-CV-01118-JSW

damages through the exchange of both informal and formal discovery, and participated in lengthy arm's length negotiations.

### 5.   The Experience and Views of Counsel.

Class Counsel are particularly experienced in litigating TCPA claims, and had a keen understanding of the legal and factual issues involved in this case.[51]  Class Counsel fully endorse the settlement as fair, adequate, and reasonable.  The fact that qualified and well-informed counsel endorse the settlement as being fair, reasonable, and adequate weighs heavily in favor of the Court approving the settlement.  *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.").

### 6.   The Presence of a Governmental Participant.

No governmental agency is directly involved in this lawsuit; however, Discover has notified the officials designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 of the proposed settlements.  To date, no governmental entity has raised objections or concerns about the Settlement.[52]

### 7.   The Reaction of Class Members.

Because the claims deadlines have not yet passed, this factor cannot be fully evaluated as of the date of this filing.  Nevertheless, the initial reaction of Class Members has been very positive.  Class Members still have more than one month—until February 25, 2014—to submit a claim, and yet already 61,489 claims have been submitted.[53]  Furthermore, Class Members have even longer to submit their revocation requests—until thirty days after final approval—and yet

---

[51] *See* Selbin Decl., ¶¶ 2-16; Wilson Decl., ¶¶ 1-7; Ankcorn Decl., ¶¶ 2-7; Terrell Decl., ¶¶ 2-11.
[52] Strickland Decl., ¶ 2.
[53] Carameros Decl., ¶ 14.

PLFS' MOTION AND MEMORANDUM ISO MOTION
FOR FINAL APPROVAL
3:12-CV-01118-JSW

1   798 revocation requests have already been submitted.[54]  The deadline for opting out of or

2   objecting to the Settlement is this Monday, January 13, 2013, yet only 133 Class Members of

3   approximately 9.7 million Class Members have requested to be excluded from the Settlement, and

4   *zero* Class Members have submitted valid objections to the Settlement.[55]

5                    **8.      The Settlement is the Product of Arm's Length Negotiations.**

6           In addition to considering the above factors, the Ninth Circuit has indicated that the court

7   should carefully review the settlement for any signs of collusion or conflicts of interest.  *See In re*

8   *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  As detailed above, the

9   Settlement is the result of lengthy, adversarial arm's-length negotiations between attorneys

10  experienced in the litigation, certification, trial, and settlement of nationwide class action cases, as

11  well as three full-day mediations presided over by a well-respected mediator, the Honorable Carl

12  J. West.[56]  Accordingly, no signs of collusion or conflicts of interest are present here, because

13  there was no such collusion or conflicts of interest.

14  **VI.    CONCLUSION**

15          For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an

16  Order granting final approval of the Settlement.

---

[54] *Id.*, ¶ 15.

[55] *Id.*, ¶¶ 12-13.

[56] Hutchinson Decl., ¶ 17; Selbin Decl., ¶¶ 2-15, 36-38; Wilson Decl., ¶¶ 1-6, 21-23; Ankcorn Decl., ¶¶ 2-7,19-20; Terrell Decl. ¶¶ 1-11, 20.

1     Dated: January 10, 2013           Respectfully submitted,

2                                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

3

4                                By:  */s/ Jonathan D. Selbin*
                                    Jonathan D. Selbin

5

6                                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                               Jonathan D. Selbin (State Bar No. 170222)
7                                250 Hudson Street, 8th Floor
                               New York, NY  10013
8                                Telephone:  (212) 355-9500
                               Facsimile:  (212) 355-9592

9                                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                               Daniel M. Hutchinson (State Bar No. 239458)
10                               Nicole D. Reynolds (State Bar No. 246255)
                               275 Battery Street, 29th Floor
11                               San Francisco, CA  94111-3339
                               Telephone:  415.956.1000
12                               Facsimile:  415.956.1008

13                               MEYER WILSON CO., LPA
                               Matthew R. Wilson (State Bar No. 290473)
14                               mwilson@meyerwilson.com
                               1320 Dublin Road, Ste. 100
15                               Columbus, OH  43215
                               Telephone:  (614) 224-6000
16                               Facsimile:  (614) 224-6066

17                               CASEY GERRY SCHENK FRANCAVILLA BLATT &
                              PENFIELD LLP
18                               Mark Ankcorn (State Bar No. 166871)
19                               mark@cglaw.com
                              110 Laurel Street
20                               San Diego, CA  92101
21                               Telephone:  619 238 1811

22                               TERRELL MARSHALL DAUDT & WILLIE PLLC
                              Beth E. Terrell (State Bar No. 178181)
23                               bterrell@tmdwlaw.com
                              936 North 34th Street, Suite 400
24                               Seattle, Washington  98103-8869
                              Telephone: (206) 816-6603
25                               Facsimile: (206) 350-3528

26                               *Attorneys for Plaintiffs and the Proposed Class*

27

28