Jan L. Westfall (241106)
jlwestfall.esq@gmail.com
29896 Blue Water Way
Menifee, CA 92584
Phone: 650-281-3003

Attorneys for Objector Deliris Palmer

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ANDREW STEINFELD and WALTER BRADLEY, on behalf of themselves and all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, and DISCOVER BANK,<br><br>   Defendants. | Case No. 3:12-cv-01118-JSW<br><br>**OBJECTION TO SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING**<br><br>Date: February 14, 2014<br>Time: 9:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Jeffrey S. White |
|---|---|

## I. INTRODUCTION

Class Member Deliris Palmer objects to the proposed settlement and application for attorney fees. Objector is a Class Member who received the notice of the proposed settlement at deliruspalmer@aol.com with Claim ID: 13997323001.

## II. THE PROPOSED SETTLEMENT DOES NOT ADEQUATELY COMPENSATE CLASS MEMBERS FOR THE ALLEGED WRONG

### A. The compensation to class members is inadequate

The TCPA provides a private right of action for individuals who are victims of the "robodialing" or automated telephone system calls at issue here. Under 47 U.S.C. §227(b)(3), plaintiffs are entitled to treble damages, or up to $1,500 for each knowing or willful violation of the Act, and up to $500 for each

negligent violation.  With an individual subject to many non-consensual calls, text messages or fax transmissions, potential damages are significant.   Plaintiff claimed he had received repeated harassing phone calls from Discover at all hours of the day, suggesting the company could be liable to him for tens of thousands of dollars.

The plain language of the TCPA prohibits using autodialers to wireless numbers absent an emergency or the prior express consent of the party.   The Complaint notes that "such calls are prohibited because. . . automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient."  The Complaint further pointed to an FCC Declaratory Ruling which confirmed that prerecorded message calls by a creditor (or for a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.

According to the Complaint, back in 2007 the Federal Communications Commission ("FCC") had already issued a citation to Discover Financial Services for violations of the TCPA.  The FCC advised the Company it could impose fines of up to $11,000 for each violation or day of continuing violation.   Even having already been sanctioned by the FCC, Discover knowingly, willfully and/or negligently continued to contact members of the putative class without their consent.

Despite the large penalties provided for by the TCPA, the settlement here provides for a mere $20 to $40 to be paid to class members, little more than a nuisance award.  Given the substantial damages provided for by the statute, at first glance, the settlement seems grossly inadequate.

The Settlement also provides that class members may execute a Revocation Request, and that Discover must not "make use of, an automatic telephone dialing system and/or an artificial or prerecorded voice" to call those who execute the revocation request.  Although such calls are already prohibited without prior express consent, Class Counsel has sold class members' statutory rights for $20-40 each shifting waiving their by the court's approval of this settlement.  Under the TCPA, and the FCC's 2008 ruling, the burden was already on Discover to obtain prior written consent.

Other class action cases alleging violations of the TCPA have entitled class members to recoveries more in keeping with the damages provided for under the TCPA.  In *Samantha Ellison v.*

*Steve Madden Ltd.*, case number 2:11-cv-05935, in the U.S. District Court for the Central District of California, according to the judge's minute order, every class member submitting a valid claim would be eligible to receive $150, unless the total claims exceeded $10 million, in which case each class member would receive a smaller amount.  Likewise in *Kramer v. Autobytel Inc et al*, Case Number 4:10-cv-02722, Northern District of California, Judge Wilken gave preliminary approval to a settlement under which class members would receive payments of up to $100 each.  The settlement of $20 to $40 here is woefully inadequate, given the harassing nature of the calls alleged by Plaintiff which also involved efforts to collect on a debt.

### 1. As One Of The Largest Consumer Financial Services Companies In America, The Settlement Fund Is Woefully Inadequate

The settlement fund of $8,700,000 is woefully inadequate given the Defendant's assets and profitability.  According to Yahoo Finance, as of January 13, 2014, Discover Financial Services had a market capitalization of $26.33 billion, and enterprise value of $39.52 billion, *available at* http://finance.yahoo.com/q/ks?s=DFS.  According to the company's 2012 Annual Report, Discover Financial Services had net income of $2.3 billion in 2012, and a return on equity of 26%.  The company also boasted that in 2012 it had "record low credit card delinquency" and $105 billion in discover card sales volume.  Discover Financial Services Annual Report, *available at* http://investorrelations.discoverfinancial.com/phoenix.zhtml?c=204177&p=irol-reportsannual.  Given the tens of thousands, if not hundreds of thousands of potential claimants, the settlement fund contemplated here is a not even a slap on the wrist this mega company.  The court should reject this woefully inadequate settlement and send a signal that large financial institutions cannot ignore consumer protection laws such as the TCPA with impunity.

### 2. The Notice Is Inadequate As It Does Not Advise Class Members Of Their Rights Under The TCPA

To participate in the settlement, class members must release and waive their claims against Discover and its related entities under the TCPA.  As Class Counsel are purporting to act as attorneys' for the class, the Notice should provide some information an attorney would normally be required to

3

provide to a client before asking them to enter into a settlement agreement and waive their rights.  At the least class members should be informed of the substantial damages they are potentially foregoing by participating in the settlement, including the damages provided for under the TCPA and the protections provided by the TCPA.  Potential damages provided for under the TCPA are not mentioned in the Notice, rendering it inadequate.  Without adequate notice, class members are being hoodwinked into believing the settlement is fair and deprived of the opportunity to knowingly waive their rights.

3. ***Class Notice is Inadequate in that the mailed notice does not specify how class members may object to the settlement.***

The official written notice to the class is only a one page summary notice, and there is no long form notice on the settlement website.  The short form notice states:

> TO OBTAIN FULL INSTRUCTIONS FOR EXCLUDING YOURSELF, FILING AN OBJECTION, SUBMITTING A REVOCATION REQUEST FORM, OR SUBMITTING A CLAIM FORM, **GO TO WWW.STEINFELDTCPASETTLEMENT.COM** , OR WRITE OR CALL THE CLAIMS ADMINISTRATOR AT STEINFELD TCPA CLAIMS ADMINISTRATOR, P.O. BOX 43209, PROVIDENCE, RI 02940-3209 OR (800) 248-1796 (TOLL-FREE). (*emphasis added*)

Going to the settlement website, however, does not readily inform potential objectors how to object to the settlement.   The notice is condensed and inadequate.  It lacks the disclosures made in 99.9% of notices in consumer cases.  The notice says the objection must be mailed by January 13, but it gives no mailing addresses.  Details on how to object are not on the settlement website and can only be found by reading the hundreds of pages of attached documents.  The Preliminary Approval Order does not provide information on how to object to the settlement.  It describes procedures for opting out of the settlement (Revised Order, ¶¶14-17), and provides information on how a class member may appear at the Final Approval Hearing to argue their objections (Revised Order, ¶20), but it does not provide information on how a class member may object without the additional burden of appearing at the Final Approval Hearing.   Nineteen pages into the Settlement Agreement a class member can finally find information on how to object to the settlement and it contradicts the Notice by saying the objection must be filed by January 13. Section III states:

M. Objections To The Settlement.

4

1. Right To Object. Any Settlement Class Member who has not previously opted out in accordance with the terms of this Agreement may appear at the Final Approval Hearing to object to the proposed settlement and/or to the application of Class Counsel for an award of attorneys' fees and costs and/or the incentive awards, but only if the Settlement Member has first filed a written objection with the Clerk of Court, in accordance with the requirements set forth in Section III.M.2 below, by the Opt-Out and Objection Deadline. Any Settlement Class Member who does not provide a written objection in the manner described in this Section III.M shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, the plan of allocation, or the award of any attorney fees and/or service awards. Further, any Settlement Class Member who intends to appear at the Final Approval Hearing, must file and serve on all parties a Notice of Intention to Appear with the Court.

2. Objection Requirements. To be heard at the hearing, the Settlement Class Member must make any objection in writing and file it with the Court by the Opt-Out and Objection Deadline. The objection must also be mailed to each of the following, postmarked not later than the last day to file the objection: (i) Class Counsel – Daniel Hutchinson, Lieff Cabraser Heimann & Bernstein, LLP, 275 Battery Street, 29th Floor, San Francisco, CA 94111-3339; and (ii) Discover's Counsel - Julia B. Strickland, Stroock & Stroock & Lavan LLP, 2029 Century Park East, 16th Floor, Los Angeles, California 90067. An objection must: (a) attach documents establishing, or provide information sufficient to allow the Settling Parties to confirm, that the objector is a member of the Settlement Class; (b) include a statement of such Settlement Class Member's specific objections; and (c) state the grounds for such objections, as well as identify any documents which such objector desires the Court to consider.  Settlement Agreement and Release, pp. 19-20 (Dkt. No. 49, pages 127-128)

The insufficient notice, combined with onerous compliance requirements, which includes a filing in federal court, makes it impractical for most class members to meaningfully participate in the settlement process.  This settlement should be renoticed to the class.

**B. <u>Settlement Prior To Class Certification Should Be Subject To A Higher Level Of Scrutiny</u>**

*1. The settlement is premature*

The settlement was entered into prior to the court having made a determination as to class certification, and the Defendants were never even required to answer the Complaint.  Plaintiff and Defendants entered into several stipulations to extend the deadline for Defendants to respond to the Complaint (Dkt. Nos. 35 -39), but Defendants never answered the Complaint, and instead the parties entered into a "Stipulation With Proposed Order To Set A Briefing Schedule And Hearing Date For

Preliminary Settlement Approval." Dkt. No. 40). On May 17, 2013 Plaintiff filed an Amended Complaint, and a Notice of Unopposed Motion For Preliminary Approval Of Class Action Settlement. (Dkt. Nos. 47 -48)

While it is true class actions are frequently – if not usually – only certified as part of the settlement process, quick settlement is often not in the best interests of the class.[1] Both judges and class action attorneys have an interest in early settlement. *See, e.g.,* James A. Henderson, Jr., *Settlement Class Actions and the Limits of Adjudication*, 80 CORNELL L. REV. 1014, 1021 (1995) ("Settlement class actions are attractive to judges, defendants, and plaintiffs' counsel because they serve the interests of all three constituencies. One may fairly suspect these interests may be served only if the interests of future plaintiffs are devalued."). Because of this misalignment of interests, Courts should scrutinize such settlement class actions especially closely. Given the woefully inadequate settlement fund here – which provides for only minimal recovery to class members –the attorneys have chosen the easy path.

Typically courts will satisfy themselves that the settlement is fair if they find no evidence of collusion in the settlement. *See, e.g., Gallucci v. Boiron, Inc.* (S.D. Cal. Oct. 31, 2012) and *Milligan v. Toyota Motor Sales, U.S.A.* (N.D. Cal. Jan. 6, 2012) ("There is absolutely no evidence of collusion between the parties in arriving at the proposed settlement."). However, in *Dennis v. Kellogg*, 697 F.3d 858, 864 (9th Cir. 2012) the Ninth Circuit considered the risks of settlement class action in broader terms than collusion. Rejecting a settlement that would have provided a questionable *cy pres* remedy, the court mentioned the importance of looking beyond explicit collusion: "[W]here, as here, class counsel negotiates a settlement agreement before the class is even certified, courts 'must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *Id., quoting In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011).

---

[1] *See* Theodore Eisenberg & Geoffrey Miller*, Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. EMPIRICAL LEGAL STUD. 248, 266 (2010) (in a sample of state and federal court class action settlements, finding that 208 of 368, or 57 percent, were settlement class actions); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 819 (2010) (finding that 68 percent of federal court class action settlements were settlement class actions).

While the court may not find collusion in the settlement here, this does not mean the settlement is fair.  The settlement here should be scrutinized carefully because of the systematic asymmetry part of all pre-certification negotiations, where maybe class counsel may not even be able to take the case to trial as a class action if they cannot successfully negotiate a settlement.   Because of the asymmetry built into every settlement class negotiation, settlement class actions raise due process concerns about adequacy of representation.  The court should remember these in evaluating the settlement here.

### 2. *The global peace achieved for Discover and related unnamed defendants (including the Student Loan Corporation and Discover Home Loans late additions to the litigation) suggests unfairness to the class*

The fact that additional parties were added to the settlement achieving a global peace for Discover, further supports the conclusion that the interests of the class have not been adequately represented.  Amendments to the pleading to include additional defendants provided evidence to the court in *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007) that the proposed settlement should be rejected.  In rejecting settlement, the court focused on the disadvantaged position of plaintiffs' counsel, whose only viable path to hold onto their case struck a deal for global peace on terms acceptable to the defendant.  The court was concerned that "Sharper Image selected counsel confronted with a most precarious position, insisted upon amendments to the pleading to broaden the scope of this litigation to obtain a global peace, and then proceeded to offer and convince Class Counsel to accept highly undesirable terms to settle the case." *Id.,* at 1321.  Like here, the settlement came when plaintiffs were vulnerable to a stay or dismissal because their action was undifferentiated from related lawsuits.  As in Sharper Image, defendants here struck a deal with plaintiffs' counsel for global peace, suggesting the defendant has taken advantage of counsel for whom a settlement class action was the only viable strategy for staying in the game.

### C. The Attorney Fee of 25% of the Settlement is Excessive

While a contingent fee of 25% may not seem unreasonable given the size of the settlement, and is within the range of acceptable fee awards in the Ninth Circuit, it seems unreasonable given the early stage of the litigation.  The attorneys here never had to respond to a motion to dismiss or go through the

7

normal rigors of class certification hearings. Discovery seems to have been limited, and Discover had already been sanctioned by the FCC for the very practices at issue, so proving the case would not have been difficult. Even in contingent fee cases there are often provisions whereby counsel's fee is reduced when a case settles early in the litigation. Here, where counsel did little more than file a Complaint alleging wrongs suffered by one individual, and then moved on to settlement negotiations, a fee award of $2,175,000 is excessive. Particularly in light of the small common fund established for class members, this fee seems undeserved.

A review of the hours expended on the litigation also suggests the fee is unreasonable. Class Counsel claim they and their staffs devoted approximately 1,156.8 hours to the litigation, yielding a lodestar of approximately $620,660.25. (The percentage of time expended by staff or lower attorneys is not specified in the Motion.) Class Counsel assert the lodestar check is unnecessary, arguing "The cross-check is optional, and Class Counsel submit that its use is unnecessary here," *citing Glass v. UBS Fin. Servs.,* No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan. 26, 2007) (finding that "where the early settlement resulted in a significant benefit to the class," there is no need "to conduct a lodestar cross-check"). Attorneys' Fee Motion, page 6, lines 21-24. Class Counsel suggest they are entitled to the disproportionate fee because of the excellent result achieved for the class by early settlement. This early settlement is not in the interests of the class.

Where counsel have not conferred a substantial benefit on the class, use of a lodestar multiplier may not be appropriate. Courts have reduced fees where it was not obvious that a substantial benefit was conferred on the class. In the Order Granting Motion For Final Settlement Approval in *In Re Apple Iphone 4 Products Liability Litigation*, Case No. 5:10-Md-2188 RMW, (N.D. Cal., Aug. 10, 2012), the court found that the relief provided by the settlement did not provide a significant benefit for the class. The court therefore rejected the fee request based on a lodestar multiplier of 2.1 and instead awarded only the lodestar amount, which the court found to have been "generously computed."

Class Counsel claim they are entitled to the proposed fee award because of the risk they faced they would be compelled into arbitration. Class Counsel neglected to mention it would likely be the attorneys disadvantaged by being compelled to arbitration, rather than class members. Class members

here suffered substantial injury, and arbitration may not have compromised their claims as much as it would have compromised the fees Class Counsel could obtain.  Again, Class Counsel have paid more attention to their own interests and should not be rewarded for their self-dealing.

D. **Inadequate Notice and Prejudice to the Class is Not New in Lief Cabraser/Strook settlements.**

In *Arthur v. Sallie Mae, Inc.,* Case 1:05-cv-01908 (US Dist. Ct, Eastern District of Washington) four months after rejecting the first settlement proposal Judge James L. Robart observed the following about nearly the exact same TCPA settlement by the same lawyers:

> "You may note a small note of irritation in this. I'm very close, counsel, to just sending you all back to start over again.  I really find nothing in here that justifies the way this matter has been handled. I mean, how we can have missed 36 percent of the class in our notice is a personal embarrassment to me, and it should be a personal embarrassment to counsel. And now we're trying to patch things up by a patch here and a patch there.  I am operating against an increasingly rigorous inspection of these kinds of actions by the circuit, and I am not sure that our work together, and by our work, I mean both the court's and the lawyers', is sufficient to pass muster to what needs to be done."

*Id.* Doc 147 at p 3.  Twenty one months after the first settlement was rejected Mr. Selbin defended the litigation's history of mistakes at the actual final approval hearing:

> "THE COURT: If I were to ask you to give yourself a grade on your handling of this litigation what grade would you give?
> MR. SElBIN: That's a fair question Your Honor. And I've actually thought quite a bit about that and gone back and looked over the history of this case. And as I look back over the history of this case we made one mistake very early on which was that we put the wrong date on the notice the date by which we were going to post our fee application on the settlement website. And that Your Honor found under Mercury Interactive required a re-noticing for which we took responsibility. And so that mistake was an initial hiccup that was resolved very quickly. And so I think that looking over the whole case. I would give us probably an A minus. I think our mistake was that initial mistake. And other than that, there have been hiccups in the litigation, but they haven't been of our making. So Sallie Mae found additional class members on two different occasions [about three millions of them] and that required us to go back and negotiate a new settlement on two different occasions.
> THE COURT: Well, let me stop you, because I can't accept the A minus. Mr. Palmer was responsible for me having to go read that December court transcript. And I found you standing at that very podium -- I think you were wearing a different tie saying, "Judge, this is all just fine. We're working through a couple loose details here, but sign the settlement. Give approval." And what I hear counsel, is, "We've invested enough in this case. Get us paid." And if I had done so at that time, we would have missed a substantial portion of this class. And, frankly, I don't think the lawyering has been very good in this

9

case. So, I mean, help me understand why you give yourself an A minus, when we have had what you describe as hiccups, but what I would describe as falling off the cliff.
MR. SELBIN: Your Honor, if I may, I -
THE COURT: I mean, you can't blame Sallie Mae for knowing who is in your class. That's not going to fly around here.
MR. SELBIN: The problem with that, Your Honor, is that they are the ones who had the information. It was solely in their possession. And they presented us the information in interrogatory responses. We did the work you would expect lawyers to do to get that information. So, in other words, we served interrogatories that asked Sallie Mae to tell us how many people were in the class and how many people fell into different categories, and they answered those interrogatories. And so based on that information, we thought we had all the information. And I'm not sure what a reasonable lawyer would do in those circumstances, beyond accepting the sworn discovery responses of the defendant. Now, as it turned out, they came to us and discovered that they had missed some things. We came forward immediately to the court and said, Your Honor, we need time to figure out what's going on here. We took the deposition of Mr. Walter on two occasions in order to ascertain what happened. We served additional interrogatories. They answered additional interrogatories. So I really do believe, Your Honor, what I am fully cognizant of and take responsibility for is our error on the Mercury Interactive piece of this. We actually, as you will recall, did post our -- we did post our fee application on the website. We just put the wrong date in the notice as to when we were going to do it. Unquestionably, that was a mistake. Was it a big mistake? I don't think that was a big mistake. It required us to then put everything over. And I don't recall, Your Honor, saying everything is fine, just fine, we want you to go ahead and approve the settlement. You indicated pretty quickly at that hearing that you were inclined to put things over, given all of the loose ends that were out there. But I believe, Your Honor, that we have done our job as class counsel. We've worked hard in this case. We waived any fees out of that additional money that was generated, because we didn't feel like the Palmer folks could take responsibility equally, frankly we felt like that was something that came about not because of us but because of Sallie Mae. So I stand by -- I hear Your Honor, but I stand by my A minus. And I say that we made one mistake. The finding of the additional class members was not something any reasonable lawyer working diligently could have uncovered. It wasn't information that we had access to. It was information that we sought discovery on, and they provided us responses."

*Id.* Doc. 268, p 27 to 30. This court should look closely at all the details including the notice and duplicative billings.

### III. JOINDER IN OTHER OBJECTIONS

The objector joins in and adopts all other objections including Doc 67 the objection by Michael Barton.

IV. **CONCLUSION**

Objector requests the court sustain the objections and reject the settlement and require that the case proceed to trial or that the parties submit a fair and reasonable settlement for approval.

Dated:   January 13, 2014                         By: /s/ Janet L. Westfall_____
                                                     Janet L. Westfall
                                                     Attorney for Objector

**CERTIFICATE OF SERVICE**

I certify that on January 13, 2014, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of California by using the USDC CM/ECF system and that service on all registered CM/ECF users will be accomplished by the CM/ECF system.

_____/s/ Janet L. Westfall_____