Theodore H. Frank (SBN 196332)
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
Voice: (703) 203-3848

*Attorneys for Objector Michael James Barton*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW STEINFELD, individually on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>DISCOVER FINANCIAL SERVICES, *et al.*,<br><br>        Defendants,<br>_____<br><br>Michael James Barton,<br><br>        Objector. | Case No. 3:12-CV-01118-JSW<br><br>**RENEWED OBJECTION TO PROPOSED SETTLEMENT AND FEE REQUEST**<br><br>Date:      February 14, 2014<br>Time:     9:00 a.m.<br>Courtroom:  11<br>Judge:    Hon. Jeffrey S. White |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................................................................1

INTRODUCTION ....................................................................................................................2

I.      A CHARGE-OFF OF DEBT THAT DISCOVER HAS WRITTEN OFF IS LARGELY
        ILLUSORY CLASS RELIEF. ........................................................................................4

II.     DISCOVER'S PROMISE IS ILLUSORY AND WOULD BE NULLIFIED BY THE
        PARTIES' PROPOSED ORDER. ....................................................................................6

III.    MUCH OF THE SETTLEMENT BENEFIT IS ATTRIBUTABLE TO THE
        OBJECTIONS RATHER THAN CLASS COUNSEL. ........................................................7

IV.     THERE ARE MULTIPLE REASONS TO REDUCE THE RULE 23(H) REQUEST. ...................8

        A.      The breach of fiduciary duty authorizes this Court to zero out the fee request. .......................9

        B.      The value of actual class relief is not $8.7 million. .......................................... 10

        C.      The Court should depart below the 25% benchmark. ........................................ 11

        D.      *Perdue v. Kenny A* precludes a multiplier here. ............................................. 13

V.      THE *AD HOMINEM* ATTACKS ON MR. BARTON AND HIS COUNSEL ARE
        ABUSIVE, IRRELEVANT, AND FALSE. ......................................................................... 13

CONCLUSION ....................................................................................................................... 16

**INTRODUCTION**

The Court has approved the parties' stipulation, permitting Mr. Barton to supplement his objection by February 7, 2014. Dkt. 80.

Class counsel negotiated a settlement that gave Discover the option to pay as much as millions of dollars of the settlement fund to itself by offsetting "charged-off" debt. Settlement §III.G.2. Then class counsel filed a memorandum that had the potential to mislead this Court by incorrectly stating that, despite this clause, "No amount of this fund will revert to Discover." Dkt. 65 at 17. As Section I below shows, this either reflects a deliberate attempt to mislead the Court or such a fundamental misunderstanding of the business realities of what it means when credit-card companies write off bad debt that class counsel and the class representatives cannot possibly be considered adequate protectors of the putative class.

At best, the parties played "Heads I win, tails don't count." If no one challenged the offset provision, class counsel was satisfied with a settlement that would allow Discover to get away with paying the class $2 to $4 million[1] so long as class counsel could safely make a $2.175 million fee request at over $2000/hour. If an objector (or the Court) noticed the buried provision, then and only then would Discover agree to pay the class the rest of settlement fund. (Furthermore, Discover's promise is not binding or enforceable: the current proposed court order implements the preexisting settlement and reinstates Discover's right to exercise the III.G.2 option. Dkt. No. 66-3; Settlement § IV.G.) Even if we assume that this is a good-faith oversight rather than an attempt to pull the wool over the eyes of the Court, and even if we assume the Court modifies the proposed order to correct the problem, the parties want to say now that this is no-harm-no-foul based on Discover's asserted promise that they won't exercise this clause, but class counsel should not be rewarded for

---

[1] The parties estimated that the average claim would be for $20 to $40. Dkt. 65 at 17. Given that the approximately 100,000 claims reflect an uninspiring, yet totally unsurprising 1% claims rate for about nine to ten million class members, and that there was about $5.2 million in the settlement fund after the proposed attorneys' fees and notice expenses, this means that Discover anticipated using the offset clause to erase the claims of at least another 40 to 175 thousand class members. (Class counsel's suggestion that 50,000 more class members will make claims without additional notice because of a four-week-old notice in class members' email is wildly implausible. If a claim was to be made, it would have happened by now. The Court should look with disfavor upon the structuring of the settlement for the fairness hearing to be before the claims deadline, a process that permits this sort of false assertion that tens of thousands of claims will miraculously appear after the fairness hearing—a false assertion that never comes to bear in this sort of consumer settlement.)

1  relief that only occurred when an objector caught them red-handed.

2       This is especially true in this case where class counsel did its damnedest to intimidate the objector

3  from maintaining his objection. Class counsel served a blatantly illegal subpoena demanding millions of

4  pages of documents from Mr. Barton and his attorney (attached as Exhibit 1)—hoping that Mr. Barton or

5  his *pro bono* counsel would fold under the threat of harassment or that they could manufacture a discovery

6  dispute that would result in Mr. Barton's objection being stricken. It was only after Mr. Barton made it clear

7  he would not be intimidated into withdrawing his objection and was willing to appear for a superfluous

8  deposition that Discover "declined to exercise its option" not to pay most of the settlement relief to itself.

9  (Class counsel withdrew the subpoena request, demonstrating that it was never interested in the discovery at

10 all, only in its intimidation value.)

11      A settlement that was going to pay class members $20 to $40 each is now likely to pay them in the

12 $52 range. It is more than a little clear that the only reason Discover declined to exercise this option—and

13 turned between $1.2 million and $3.2 million of illusory relief into real cash for the class—is because of Mr.

14 Barton's objection. As class counsel's own brief shows, defendants in other class-action settlements do not

15 unilaterally volunteer to decline to exercise an option that save themselves millions of dollars: it takes

16 external pressure from an objector or a court before that happens. Mr. Barton is thus entitled to attorneys'

17 fees and an objector incentive payment.[2] If the parties implausibly claim that Mr. Barton objection did not

18 cause the change in the quality of the settlement, Mr. Barton is entitled to discovery on this factual dispute.

19      Class counsel's fee request should be reduced for multiple independent reasons: (1) its breach of

20 fiduciary duty to the class in negotiating a largely illusory settlement and then failing to notify the Court of

21 the true economic consequences of that settlement gives this Court the discretion to zero out the fee request

22 entirely under Ninth Circuit law; (2) the true value of the settlement for calculating percentage of recovery

23 should be limited to the $2 million to $4 million that would have gone to the class in the absence of

24 Discover's decision not to exercise the III.G.2 option; (3) at a minimum the Court should depart below the

---

25      [2] Mr. Barton's non-profit *pro bono* counsel will donate any fees awarded to it to the class. Because

26 those fees should come from the part of the common fund that class counsel is seeking, the Court can moot

27 the objector fee issue and speed resolution by reducing the Rule 23(h) request to reflect that much of the

28 settlement fund was originally illusory until Mr. Barton's objection caused Discover to decline to exercise the
   option.

25% benchmark to reflect (a) the relatively low level of success; (b) the relatively low level of risk and the windfall that a lodestar cross-check demonstrates; and (c) the contribution of Mr. Barton to class recovery. Finally, Mr. Barton preserves the right to argue that *Perdue v. Kenny A* applies to this class action settlement fee request, and that no multiplier is permitted here.

Class counsel shows their desperation in resorting to abusive, irrelevant, and false *ad hominem* attacks on Mr. Barton and his non-profit *pro bono* counsel, even hoping to bootstrap the false allegations of a different opposing counsel in a different case in the absence of a court finding of any wrongdoing. The tactic is especially hypocritical given the numerous courts that have affirmatively sanctioned lead class counsel. The Court should condemn these abusive litigation tactics by lead class counsel here; if, however, the Court is to weigh the *ad hominem* attacks in considering Mr. Barton's meritorious objections, the same reasoning requires it to decertify the class because of Lieff Cabraser's participation.

Mr. Barton adopts in full by incorporation his January 13 objection. The parties, while buffeting Mr. Barton with insults, do not dispute that he is a class member and that he has submitted a valid claim. Dkt. 76-1 Exh. B.

**I.    A charge-off of debt that Discover has written off is largely illusory class relief.**

Section III.G.2 gives Discover the following option:

> If a Settlement Class Member has, as of the Effective Date, one or more extensions of credit with Discover that has been revoked or charged off, Discover at its option may apply a Reduction Award from the balance of those extensions of credit in lieu of the Settlement Class Member receiving a Cash Award or Credit Award, as set forth in Section III.H.3.

Class counsel argues that these reductions were "a monetary benefit to those class members." This is unequivocally false as a matter of law—and given that class counsel was admittedly aware that this was false (Dkt. 76-1 Exh. B at 3), the claim can hardly be made in good faith.

A company like Discover writes or charges off debt as bad in one of four circumstances:

> (1)  the debt is discharged in bankruptcy in whole or part, and Discover is forced to charge off the bad debt (in which case the class member owes Discover nothing for the discharged amount and a credit to Discover creates no benefit for the class member);

(2) Discover has negotiated with a customer suffering financial problems to reduce their credit card debt in exchange for a partial payment, and Discover charges off the remainder as a bad debt (in which case, the class member, by contractual agreement, no longer owes Discover the amount charged off);

(3) Discover has decided the debt will not be collected through normal means, closed the account, and sold the debt for pennies on the dollar to a debt collector and charged off the remainder as bad debt (in which case the class member's debt is now owned by a third party, and a credit to Discover for the bad debt creates no benefit for the class member); or

(4) Discover decided that the debt is uncollectable, but has chosen to engage in debt collection itself.

Scenario 4 is the only one where an offset to bad debt is a benefit to a class member. But the Fair Debt Collection Practices Act creates enormous potential liabilities to a party attempting to collect a bad debt who fail to meet perfectly its arcane and technical requirements—liabilities capped by the value of the defendant. Thus, as a matter of sound business practice, it is much cheaper for a multi-billion dollar corporation like Discover to outsource debt collection to smaller third parties by selling bad debt than attempting to collect it once it has been written off.  Thus, on information and belief, the class members in category 4 are a tiny fraction of those subject to III.G.2. The rest receive absolutely no benefit by Discover's shift of accounting entries.

Section III.G.2 does not restrict itself to Settlement Class Members who have made claims, giving Discover the right to apply the option to any of the nine million class members with "extensions of credit with Discover that has been revoked or charged off."

Mr. Barton has repeatedly requested Discover to produce data demonstrating how many class members this provision would cover, and how many of them actually owed money to Discover; Discover has failed to do so, even in briefing after the issue had been raised. Because the settling parties have the burden of proving the fairness of the settlement, this Court has the affirmative obligation to require Discover to provide the Court this evidence before drawing any inferences in the settling parties' favor. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 719 (6th Cir. 2013). We can make a rough estimate based on the parties' previous filings.

The parties previously represented to the Court that they expected claimants to receive $20 to $40.

Settlement Notice; Dkt. 65 at 17. The class would be dividing a pie of approximately $5.4 million: an $8.7 million fund where $3.3 million would be paid to class counsel and third parties. But there were "only" about ten million class members, and, as experienced class-action attorneys know, settlements of this sort typically have a claims rate of about 1%. (And, indeed, the 100,000 or so claimants is exactly in this range.) The parties were thus anticipating that Discover would remove approximately $2.4 million from the settlement fund using the Section III.G.2 option. Different mathematical assumptions move this number from between $1.4 million and $3.4 million, but under any circumstances, a substantial portion, and perhaps the majority, of the $5.4 million in actual benefit that will be paid to class members was to be illusory.

## II.    Discover's promise is illusory and would be nullified by the parties' proposed order.

The parties claim no-harm, no-foul from Discover's unilateral assertion that they will choose not to exercise the option. But if the Court approves the settlement as written with the current proposed order, Discover has a colorable—and likely correct—argument that they are not bound by the Strickland letter. (Dkt. 77-1 Exh. A.)

Paragraph 14 of the proposed order (Dkt. 65-3) effectuates the Settlement as written. Section IV.E and IV.F. of the Settlement reads:

> E. <u>Entire Agreement</u>. This Agreement contains the entire agreement between the parties and supersedes all prior understandings, agreements, or writings regarding the subject matter of this Agreement. This Agreement may be amended or modified only by a written instrument signed by all parties or their successors in interest or their duly authorized representatives.

> F. <u>Modification and Amendment</u>. This Agreement may be amended or modified only by a written instrument signed by the Parties and their respective counsel and approved by the Court.

Ms. Strickland's letter is not "signed by the Parties"; there is nothing in the settlement that makes the letter self-executing; there is nothing in the proposed order requiring Discover to abide by the letter. If the Court rubber-stamps the proposed order, nothing stops Discover from going to the settlement administrator, pointing to the above provisions to call the Strickland letter non-binding, saying they changed their minds and want their millions of dollars, and exercising the III.G.2 option without anyone ever finding out. One certainly cannot trust class counsel to object: they will have already been paid their attorneys' fees,

and have already argued to this Court that there is no economic difference between cash in a class member's pocket and Discover crediting a charged-off debt that has discharged in bankruptcy.

Perhaps this is simply an oversight by the parties in the panic to fix the settlement after its flaws were pointed out by objectors rather than an attempt to deceive the Court. But either way, the settlement should not be approved without a formal modification to either the settlement or the proposed order enjoining Discover from exercising the option and requiring the settlement administrator to report to the Court about actual distributions to the class to ensure transparency. If this happens, then the settlement is likely fair (putting the lie to class counsel's claim that Mr. Barton and his counsel reflexively oppose all class action settlements), but the $2.175 million Rule 23(h) request is decidedly excessive.

## III.   Much of the settlement benefit is attributable to the objections rather than class counsel.

Class counsel negotiated a settlement with an illusory benefit that permitted Discover to keep millions of dollars of the settlement fund for itself.

Mr. Barton objected, pointing out the loophole. Class counsel did its darnedest to intimidate Mr. Barton into dropping his objection, even using a process serve to harass co-workers at his office, though Mr. Barton's counsel stated that he would agree to reciprocal discovery and that no service was necessary. The subpoena (attached as exhibit 1) demanded hundreds of thousands of pages of documents from Mr. Barton's counsel (nearly all of which were obviously privileged or publicly available) to be produced within a week. The requests were pure harassment: there was no discoverable information to be had from Mr. Barton relevant to the fairness of the settlement, and certainly not from demanding Mr. Frank's client files dating from 2009.[3] Class counsel demanded that Mr. Barton withdraw his objection. Mr. Barton admirably refused to be intimidated. It was only ***after*** class counsel realized that they could neither intimidate Mr. Barton nor

---

[3] Moreover, the Court's preliminary approval order had stayed discovery, so the mere serving of the subpoena was a violation of a court order. Class counsel's abusive discovery tactics are akin to those condemned by the district court in *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) (issuing sanctions). At least one court in this district has criticized and sanctioned class-action plaintiffs who issued similarly abusive subpoenas—a case Lieff Cabraser should be familiar with since they are listed by LEXIS as counsel for the plaintiffs. *E.g., In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2013 U.S. Dist. LEXIS 46104 (N.D. Cal. Mar. 28, 2013); *id.*, 2012 U.S. Dist. LEXIS 110824 (N.D. Cal. Aug. 7, 2012).

invent a discovery dispute to cause his objection to be stricken that Discover issued its alleged refusal to exercise the III.G.2 option.

The increased benefit to the class is thus due to the objections, not to class counsel, who fought tooth and nail to prevent the issue from coming before the Court at all. Class counsel cites *Arthur v. Sallie Mae, Inc.*, Case No. 10-cv-00198-JLR, 2012 U.S. Dist. LEXIS 132061 (W.D. Wash. Sept. 17, 2012) (cited by Dkt. 76 at 13), but that just proves this point: the parties, using the precedent of a case where a court got it wrong, hoped to pull a fast one on the Court and the class and had no intention of waiving the III.G.2 option.

If class counsel did not want objectors to take credit for the change in the settlement relief (a change, which as Section II above notes, is not yet in effect), they should not have given Discover the option to pay itself millions of dollars of settlement money.[4] *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009), requires attorneys' fees for the objectors who created a benefit for the class. *See also Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012). Mr. Barton, who withstood harassment and spent dozens of hours reviewing correspondence and briefing and preparing for a deposition that never happened, is entitled to an objector incentive payment proportionate to that of the class representatives.

If class counsel and Discover persist in pretending that the objection was not a contributing cause to the settlement improvement, Mr. Barton formally requests the option to take discovery on the factual dispute before making his Local Rule 54 motion. *See White v. Auerbach*, 500 F.2d 822, 828-29 (2d Cir. 1974).

Mr. Barton's counsel, however, plans to donate any fees to the class. The Court can thus largely moot this issue by a substantial reduction in the Rule 23(h) request.

## IV.    There are multiple reasons to reduce the Rule 23(h) request.

Class counsel's $2.175 million request is based on 25% of an $8.7 million settlement fund. Both the

---

[4] In correspondence, class counsel claims that they were planning to ask Discover all along not to exercise the III.G.2 option. Their pre-objection briefing in support of settlement approval, which does not mention this proposal, and instead falsely asserts that the option does not affect the relief to the class, shows this to be exceedingly unlikely. In any event, are we really to believe that the settlement was signed in May 2013 and class counsel didn't get around to discussing waiving the option until after Mr. Barton objected without any consideration of how this Court would view a good-faith objection brought by an objector represented by a public-interest law firm?

denominator and the percentage are wrong; a lodestar cross-check demonstrates a windfall for a case where most of the hours were spent in churning settlement negotiations to gussy up a fee request. Moreover, the breach of fiduciary duty is by itself reason to zero out the fee request.

### A.     The breach of fiduciary duty authorizes this Court to zero out the fee request.

Settlement § III.G.2 authorizes Discover to pay itself millions of dollars from the settlement fund in fictional "offsets" from class members who have bad debts to Discover, but no legal obligation to pay those bad debts to Discover, without any notice to the affected class members or any reporting to the class. Class counsel twice falsely stated to this Court that this clause was a monetary class benefit. Dkt. 65 at 17; Dkt. 76 at 13:16. Class counsel's claim that Discover has waived the claim has not been papered properly to protect the class's interests. Section II, above. Class counsel has proceeded this way even though they had notice in Mr. Frank's letter that both of these issues were problematic. Dkt. 76-1 Exh. B. One must conclude that class counsel decided to agree to a provision that created the illusion of relief in the hopes of maximizing their fee request, and then decided to defend their fee rather act on behalf of the class by attempting to force Mr. Barton to withdraw his objection. Such a breach of fiduciary duty gives this Court discretion to go so far as to zero out the fee request. *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) (affirming zeroing out of fee as sanction for breach of fiduciary duty).

Class counsel's proposed rule of "Heads I win, tails don't count" from the alleged waiver of the option is no incentive for future class counsel to fairly represent the class. If a full fee request—or indeed, anything as high as lodestar (much less a multiple of lodestar)—is awarded here, future settling parties will have the perverse incentive to create an option to make settlement relief illusory. Maybe no objector and no court will notice the provision and the parties can safely create illusory relief; if they're caught, waive the option, and claim no-harm-no-foul, and collect the full fee request. Defendants will happily up the agreed-upon attorney fee in the hopes of this free ride to avoid paying full settlement fare. Only by heavily punishing class counsel who agree to such options can a court protect absent class members in future cases. *See, e.g., In re LivingSocial Mktg. and Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40049, at *51, *65-*66 (D.D.C. Mar. 22, 2013) (reducing fee award to 18% of actual class value where class counsel "attempt[ed] to disguise the size of their fee request" by "dubious" inflated valuation of

injunctive relief.). It would serve the public policy purpose of incentivizing future class counsel to not wait for objections before negotiating a settlement that benefits the class.

Simply, "[o]utside-chance opportunity for a megabucks prize must cost to play." *Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46, 49 (1st Cir. 1985). Public policy demands a *Disner*-type sanction here:

> "[I]f the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful." [*Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).]

**B.     The value of actual class relief is not $8.7 million.**

Class counsel is now claiming that the class will divvy up $5.2 million. $8.7 million minus a $2.175 million attorney fee is $6.525 million; the settlement administration costs were supposed to be an astonishing $1.1 million; where did the other $225 thousand go?

Assuming settlement administration costs have ballooned to $1.325 million, class counsel should not be collecting a $440 thousand commission on the settlement administrator payments. As *In re Baby Products Antitrust Litig.* shows, class members are not indifferent between a dollar in their pockets and a dollar going to a third-party settlement administrator (who may or may not have ties to class counsel). 708 F.3d 163, 178 (3d Cir. 2013). Class counsel states that Mr. Barton "incorrectly characterizes settlement administration costs as *cy pres* awards." His objection does no such thing: it clearly states that settlement administration costs are *worse* for the class than *cy pres* awards. Class members surely prefer money going to charity than to settlement administrators. But if *cy pres* is worth less than direct monetary relief for purposes of calculating attorneys' fees, what are we to conclude settlement administration is worth to the class? A class member is not indifferent between a $10 million fund that pays $8 million to the settlement administrator and one that pays $0.5 million to the administrator—yet according to class counsel, both are to be treated identically. Settlement administration costs should not be considered a class benefit, class counsel should not get a commission on them, and those costs should be deducted from the denominator in the percentage-of-the-**benefit** calculation.

As noted above, as much as $3.2 million in the settlement relief was illusory; the parties have refused

the invitation of putting forward an alternative number, though it is their burden to do so. One must draw the adverse inference that the majority of the remaining $5.2 million would have been illusory.

The percentage-of-recovery approach is supposed to be percentage of *recovery*, not the percentage of a *fund*. The proper evaluation of the settlement is what the class *actually receives*. *See* Notes of Advisory Committee on 2003 Amendments to Rule 23 ("it may be appropriate to defer some portion of the fee award until *actual payouts* to class members are known" (emphasis added)); *id.* ("fundamental focus is the result *actually achieved* for class members" (emphasis added); *id.* (*citing* 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6) (fee award should not exceed a "reasonable percentage of the amount of any damages and prejudgment interest *actually paid* to the class" (emphasis added))). *See also ALI Principles* § 3.13; Federal Judicial Center, *Manual for Complex Litigation (Fourth)* § 21.71(2004) ("the fee awards should be based only on the benefits *actually delivered*."). "[N]umerous courts have concluded that the amount of the benefit conferred logically is the appropriate benchmark against which a reasonable common fund fee charge should be assessed." *In re Prudential Ins. Co. America Sales Practices Litig.,* 148 F.3d 283, 338 (3d Cir. 1998). The "key consideration in determining a fee award is reasonableness in light of the benefit *actually conferred*." *In re HP Inkjet Printer Litig.,* No. 5:05–cv-3580 JF, 2011 WL 1158635, at *10 (N.D. Cal. Mar. 29, 2011) (emphasis in original) (internal citation and quotation omitted). While many courts have unreflectively assumed that a settlement fund is a settlement fund regardless of who gets the money, none of those considered the reasoning of *Baby Products,* the 2003 Amendments to Rule 23, the *Manual for Complex Litigation*, or the *ALI Principles*.

In any percentage-of-the-benefit calculation, the benefit is well under half of the $8.7 million the parties claim. This may still be a fair settlement given the risks of litigating a TCPA case to finality—but $2.175 million outstrips the actual class benefit and is not a fair Rule 23(h) request, even under the 25% benchmark.

But there is strong reason to depart below the 25% benchmark.

## C.   The Court should depart below the 25% benchmark.

The Court should depart below the 25% benchmark.

*First,* negotiation of a settlement fund with millions of dollars of potentially illusory relief, incorrectly telling the Court that no part of the settlement fund would revert to Discover, and then abusively attempting

to intimidate the objector who caught them (and then abusively insulting the objector and his counsel in briefing) are all good reasons to depart below the 25% benchmark. *Classmates.com Consol. Litig.*, 2012 U.S. Dist. LEXIS 83480 at *20 ("[C]lass counsel cannot satisfy its duty to the class by ignoring the weaknesses in the settlements it negotiated."); *id.* at *23 (reducing fee below 25% benchmark to "reflect[] that counsel should not benefit from its efforts to win approval of an inadequate settlement."). Such a reduction is in line with the instruction of *Baby Products* to reduce compensation where "counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class." 708 F.3d at 178-79 (citing, *inter alia*, *Dennis v. Kellogg*, 697 F.3d 858, 867-68 (9th Cir. 2012); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)); *see also Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) (collecting cases from around the country holding that "settlement negotiations may be considered by the district court as a factor in determining a fee award.").

   *Second*, the lodestar cross-check shows an untenable multiplier. Yes, TCPA litigation that is *litigated* is risky. Class counsel that survived a motion to arbitrate, a motion to dismiss, a motion for class certification, or a motion for summary judgment has undertaken real risk of non-payment. But here, the only hours that incurred risk were the ones spent generating the complaint. Class counsel did not have to file one substantive brief pre-settlement and spent most of their lodestar in settlement negotiations—and we have exactly zero data how much better this settlement is from the initial offer made on Day 1 of mediation. Did class counsel achieve anything in the hundreds of hours of settlement negotiations or were they churned to justify the later fee request? Again, class counsel has not met its *Dry Max Pampers* burden to show real risk. How risky is TCPA litigation to class counsel? That is an empirical question, and class counsel has refused to produce the data what percentage of hours it is not compensated for when it brings TCPA litigation. Again, class counsel has not met its *Dry Max Pampers* burden to show real risk. We must draw the adverse inference. The multiplier is especially problematic when the class is being asked to settle for two cents to three cents on the dollar (less in the case of class members with multiple phone calls) but the attorneys are asking for a multiplier in the four range. Perhaps class counsel brought such a low-merit case that two cents on the dollar is a fair settlement price—Mr. Barton does not contend otherwise—but we want to incentivize plaintiffs' attorneys to bring *meritorious* cases, not pay them $2000/hour blended rates for cases that they themselves contend are meritless. Either the settlement is too low or the fee request is too high.

### D.    *Perdue v. Kenny A* precludes a multiplier here.

The Supreme Court held in *Perdue v. Kenny A* that "there is a strong presumption that the lodestar is sufficient" without an enhancement multiplier except in exceptional circumstances. 130 S. Ct. 1662, 1669 (2010). The Ninth Circuit has not adopted this holding in the Rule 23(h) context; lower courts are split whether it applies; Mr. Barton cited some of those cases in his initial objection. Mr. Barton contends that class counsel has not demonstrated the exceptional circumstances meriting a multiplier (especially given the likely churn in settlement negotiations to inflate hours expended) under *Kenny A*, that the fee request should be reduced accordingly, and reserves the right to make a good-faith argument that *Kenny A* applies to the word "reasonable" in Rule 23(h) just as it does to the word "reasonable" in 42 U.S.C. § 1988.

## V.    The *ad hominem* attacks on Mr. Barton and his counsel are abusive, irrelevant, and false.

A sign of class counsel's desperation when faced with even Mr. Barton's bare-bones objection is the abusive vitriol and false allegations thrown at him and his counsel, Mr. Theodore H. Frank.

Class counsel complains about Mr. Barton's counsel's "agenda," but the majority of appellate courts have largely agreed with that "agenda"—including all three Ninth Circuit panels that have decided class action settlement appeals that Mr. Frank argued. *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012). Abuses in the class-action settlement arena have been recognized for years, 28 U.S.C. § 1711 note, and Mr. Frank, a member of the American Law Institute, created a public-interest law firm to address them, winning national acclaim in the process. *E.g.*, Adam Liptak, "When Lawyers Cut Their Clients Out of the Deal," *New York Times* (Aug. 13, 2013) (calling Mr. Frank "[t]he leading critic of abusive class-action settlements"); Brian Zabcik, *Conscientious Objector*, LITIGATION 11 (Spring 2013), *available at* http://is.gd/alm_frank2013 (redirect); Ashby Jones, *A Litigator Fights Class-Action Suits*, Wall St. J. (Oct. 31, 2011). Thus, when Mr. Barton asked a friend what he could do about abusive class-action settlements, he was referred to Mr. Frank. Who should he have retained, a divorce lawyer?

This is Mr. Barton's first objection. He opposes abusive class action settlements, but he does not

indiscriminately object to class action settlements, as his own declaration submitted by class counsel shows. Yet class counsel calls him a "serial objector," though they know that to be a false accusation. And even if he had been a "serial objector," so what? "This has no greater bearing on the merits of the objections raised than a plaintiffs counsel's experience in filing class action suits speaks to the merits of claims he brings." *True v. Am. Honda*, 749 F. Supp. 2d 1052, 1079 (C.D. Cal. 2010). Class counsel further criticizes a former government employee for being politically active and receiving emails about politics. Really?

That Mr. Frank opposes class action abuse does not mean that he opposes "all class actions" any more than a critic of *E. coli* poisoning opposes all food. Mr. Frank has given multiple interviews praising the class action mechanism, yet class counsel in multiple cases repeatedly falsely asserts that he opposes all calss actions.

Class counsel's other smears are false or misleading.

Mr. Frank did not "troll" for any clients. Class counsel's own printout of the blog post shows a short and accurate discussion of the case, a link to the settlement website, and a docket number. There is no request for class members to even contact Mr. Frank or the Center, much less a solicitation of them. After the blog post, Mr. Frank stopped thinking about the case until Mr. Barton contacted him on January 11; he only took the case because he didn't have plans on January 12, and could read the post-November filings for the first time and still meet the January 13 objection deadline.

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio Mar. 31, 2010), awarded the Center attorneys' fees for a successful objection that improved class benefit by $2 million. It criticized the Center's argument against a kicker clause (while noting that that argument was made in good faith)—but that argument was adopted by the Ninth Circuit in *Bluetooth*. If Mr. Frank's arguments were "short on law" in 2010, they certainly aren't today now that they are binding on this Court. But this case does not involve kicker clauses, so it is unclear why class counsel is citing a superseded case about kicker clauses, or why they failed to cite the binding contrary authority.

*City of Livonia Emples. Ret. Sys. v. Wyeth* (S.D.N.Y. 2013) criticized the Center for arguments its client's objection never made—but because the *Wyeth* court reduced attorneys' fees as the Center's client requested and did not actually sanction the Center or its client, the Center's client did not have standing to correct those criticisms on appeal under Second Circuit law, which permits only appeals of judgments, not of

1  language in opinions. It's unfortunate that a district court felt the need to criticize non-profit attorneys that

2  successfully won millions of dollars for shareholders, but the case was a Center victory.

3      No court adopted the allegations made by adverse counsel in *Deepwater Horizon*, and for good reason:

4  they were 100% false, the attorney who made them had documentary evidence in his possession that his

5  accusations were false, and that brief will be the subject of a disciplinary complaint. (Among other things

6  class counsel here has not mentioned, Mr. Frank did not "appeal" anything. He was not counsel in the

7  district court, and was retained well into the appellate process only to handle reply briefing and oral argument

8  in the Fifth Circuit, and did so with the written authorization of the appellants for their attorney to retain

9  additional counsel.) Class counsel should be ashamed of itself for attempting to bootstrap false accusations in

10  a different case while shading the phrasing in its brief to have plausible deniability for making statements that

11  they themselves know to be false. In any event, that attorneys adverse to one of Mr. Frank's clients have

12  made false accusations against Mr. Frank in a different case is hardly relevant to this case where there is no

13  dispute that Mr. Barton has authorized this objection.

14      The *ad hominem* attacks are particularly hypocritical coming from lead class counsel, whose firm has

15  been sanctioned or criticized in multiple cases by multiple courts.[5] As *True* notes, the track record of

16  attorneys in previous cases is irrelevant to the merits of particular arguments in a case at bar. But if the Court

17  is inclined to adopt class counsel's argument that *ad hominem* is relevant to the merits, then Mr. Barton

18  submits that his track record of public service and Mr. Frank's record of success and acclaim far outweigh

19  Lieff Cabraser's record of multiple sanctions.

20      Other objectors have decided not to pursue meritorious objections because of fear of being dragged

21  through the mud or harassed as class counsel has harassed Mr. Barton here. This Court should speak out

22  against such vitriol, which is designed to intimidate class members from daring to challenge settlement abuse

23  such as has happened here. Class counsel that cannot hope to win on the merits should not be permitted to

24  use intimidation tactics as a substitute for reasoned argument.

25      [5] To take just cases from one year from just this district, *see In re Wells Fargo Sec. Litig.*, 157 F.R.D. 467,

26  472 (N.D. Cal. 1994) (Vaughn, J.) (citing *In re Omnitrition Int'l Secs. Litig.*, 1994 U.S. Dist. LEXIS 21600, at
   *29-30 (N.D. Cal. Aug. 19, 1994); *In re Keegan Management Co., Securities Litigation*, 154 F.R.D. 237 (N.D. Cal

27  1994)). As this issue is irrelevant, Mr. Barton need not bury the Court with a page-long string-cite expanding

28  the temporal and geographic scope—though he could.

**CONCLUSION**

The parties' modification of the settlement is subject to a loophole that could deprive the class of millions of dollars; the Court should determine whether Discover consents to an injunction enforcing the waiver of the III.G.2 option, and then require reporting to ensure that the waiver has not been exercised.

If this happens, the settlement is likely fair—but the fee request is decidedly not. Class counsel's breach of fiduciary duty and abuse of objectors is reason enough for this Court to exercise the discretion to zero out their fee request. But at a minimum, the fees should be reduced below the stated lodestar to reflect the relative lack of success, the repeated false statements to the Court characterizing the settlement, the likely churning of hours in settlement negotiations, and the utter lack of risk faced by class counsel who never had to file a single substantive pre-settlement brief. The settlement class counsel negotiated was not worth $8.7 million to the class, and under no circumstances should they be getting a 25% portion of that.

Mr. Barton is entitled to attorneys' fees and an objector incentive payment for his role in improving the settlement. As his attorney intends to donate any fee award to the class, this Court can largely moot any collateral litigation over the objectors' fees by granting Mr. Barton's objection to the fee request.

Dated: February 7, 2014          Respectfully submitted,


                                 _/s/ Theodore H. Frank_
                                 Theodore H. Frank (SBN 196332)
                                 **CENTER FOR CLASS ACTION FAIRNESS**
                                 1718 M Street NW
                                 No. 236
                                 Washington, DC 20036
                                 Email: tfrank@gmail.com
                                 Voice: (703) 203-3848


                                 *Attorney for Objector Barton*

<u>PROOF OF SERVICE</u>

     I hereby certify that on this day I electronically filed the foregoing Objection using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

DATED this 7th Day of February, 2014

<em><u>/s/ Theodore H. Frank</u></em>

Theodore H. Frank