LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (State Bar No. 170222)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Daniel M. Hutchinson (State Bar No. 239458)
Nicole D. Sugnet (State Bar No. 246255)
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

TERRELL, MARSHALL, DAUDT,
& WILLIE PLLC
Beth E. Terrell (State Bar No. 178181)
bterrell@tmdwlaw.com
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

*Attorneys for Plaintiffs and the Class*

MEYER WILSON CO., LPA
David P. Meyer (admitted *pro hac vice*)
Matthew R. Wilson (admitted *pro hac vice*)
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

CASEY, GERRY, SCHENK,
FRANCAVILLA, BLATT, & PENFIELD LLP
Mark Ankcorn (State Bar No. 166871)
mark@cglaw.com
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO / OAKLAND DIVISION

ANDREW STEINFELD and WALTER
BRADLEY on behalf of themselves and all
others similarly situated,

        Plaintiffs,

      v.

DISCOVER FINANCIAL SERVICES,
DFS SERVICES, LLC, and DISCOVER
BANK,

        Defendants.

Case No. 3:12-cv-01118-JSW

**PLAINTIFFS' RESPONSE TO OBJECTOR
MICHAEL J. BARTON'S RENEWED
OBJECTION TO PROPOSED
SETTLEMENT AND FEE REQUEST**

CLASS ACTION

1

## TABLE OF CONTENTS

2

<strong>Page</strong>

3   I.      INTRODUCTION ................................................................. 1

    II.     PROCEDURAL HISTORY ................................................ 2
4
            A.      The Contested Litigation ........................................ 2
5
            B.      The Charged-Off Class Member Provision .................. 3
6   III.    A CHARGE-OFF DOES NOT EXTINGUISH A DEBT. ......... 4

7   IV.     A REDUCTION IN CHARGED-OFF DEBT IS A DIRECT AND
            VALUABLE MONETARY BENEFIT. .................................. 5
8   V.      UNDER THE SETTLEMENT, ALL CLASS MEMBERS HAVE THE
            RIGHT TO CHOOSE A CASH PAYMENT OR CREDIT ON AN
9           OUTSTANDING EXTENSION OF CREDIT. ....................... 7

10  VI.     THE RENEWED OBJECTION PROVIDES NO BASIS FOR
            DEPARTING FROM THE 25% BENCHMARK FOR ATTORNEYS'
11          FEES. .................................................................. 8

            A.      Attorney Fee Awards are Calculated Based on the Gross, and Not
12                  the Net, Settlement Fund. ...................................... 8

13          B.      *Perdue v. Kenny A* does Not Apply to Common Fund Cases. ............. 9

            C.      Class Counsel did Not Breach their Fiduciary Duty to Class
14                  Members ............................................................. 11

15  VII.    CLASS COUNSEL ISSUED A LEGITIMATE SUBPOENA DIRECTED
            AT THE NATURE OF MR. BARTON'S OBJECTION, WHICH THEY
16          WITHDREW IMMEDIATELY AFTER MR. BARTON PROVIDED THE
            SOUGHT INFORMATION IN A SIGNED DECLARATION. ........ 13

17  VIII.   CONCLUSION ........................................................... 17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

## CASES

*Adams v. AllianceOne Receivables Mgmt., Inc.,*
No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ............................ 10

*Arthur v. Sallie Mae, Inc.,*
2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012) ............................................ 3, 7

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ................................................................................................................. 8

*Bradley v. Discover Financial Services,*
Case No. 4:11-cv-5746-YGR (N.D. Cal.) ............................................................................ 1, 2

*Brown v. DIRECTV, LLC*, No. CV 12-08382 DMG (Ex),
No. CV 12-08382 DMG, 2013 U.S. Dist. LEXIS 90894 (C.D. Cal. June 26,
2013) ....................................................................................................................................... 11

*Cayanan v. Citi Holdings, Inc.,*
928 F. Supp. 2d 1182 (S.D. Cal. 2013) ................................................................................. 11

*Central Railroad & Banking Co. v. Pettus,*
113 U.S. 116 (1885) ................................................................................................................. 8

*Coppock v. Citigroup, Inc.,*
No. C11-1984-JCC, 2013 U.S. Dist. LEXIS 40632 (W.D. Wash. Mar. 22,
2013) ....................................................................................................................................... 11

*Dennis v. Kellogg Co.,*
No. 09-cv-1786-L (WMc), 2013 U.S. Dist. LEXIS 163118 (S.D. Cal. Nov. 14,
2013) ......................................................................................................................................... 9

*In re Apollo Group Secs. Litig.,*
No. CV 04-2147-PHX-JAT, 2012 U.S. Dist. LEXIS 55622 (D. Ariz. Apr. 20,
2012) ....................................................................................................................................... 10

*In re Dry Max Pampers Litig.,*
724 F.3d 713 (6th Cir. 2013)............................................................................................ 10, 11

*In re Keagan Management Co. Securities Litig.,*
154 F.R.D. 237 (N.D. Cal. 1994), rev'd, 78 F.3d 431 (9th Cir. 1995) .................................. 15

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.,*
2013 U.S. Dist. LEXIS 46104 (N.D. Cal. Mar. 28, 2013).................................................... 16

*In re Omnitrition International, Inc. Securities Litig.,*
No. C 92-4133 SBA, 1995 WL 626529  (N.D. Cal. Feb. 21, 1995)...................................... 15

*In re Omnivision Techs.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................................ 10

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
19 F.3d 1291 (9th Cir. 1994).................................................................................................... 9

*In re Wells Fargo Sec. Litig.,*
157 F.R.D. 467 (N.D. Cal. 1994) ........................................................................................... 15

*In re: Classmates.com Consolidated Litig.,*
No. C09-45RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. June 15, 2012)..................... 14

**TABLE OF AUTHORITIES**
(continued)

Page

*In re: Deepwater Horizon – Appeals of the Medical Benefits Class Action Settlement*,
No. 13-30221, (5th Cir. Nov. 22, 2013) ............................................................... 13

*Lopez v. Youngblood*,
No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289 (E.D. Cal. Sep. 1, 2011) ...................................................................................................................... 9

*Martin v. Wells Fargo Bank, N.A.*,
3:12-cv-06030-SI (N.D. Cal. Dec. 2, 2013) ......................................................... 11

*McNamara v. Royal Bank of Scot. Group, PLC*,
No. 11-cv-2137, 2012 U.S. Dist. LEXIS 158580 (S.D. Cal. Nov. 5, 2012) .......... 11

*Perdue v. Kenny A*,
130 S. Ct. 1662 (2010) ....................................................................................... 9, 10

*St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*,
574 F.3d 1054 (9th Cir. 2009) .................................................................................. 8

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ................................................................................. 8, 9

*Steinfeld v. Discover Financial Services, et al.*,
Case No. 3:12-cv-01118-JSW (N.D. Cal.) .......................................................... 1, 2

*Trustees v. Greenough*,
105 U.S. 527 (1882) .................................................................................................. 8

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ............................................................................... 10

**STATUTES**

15 U.S.C. § 1692a(6)(F)(ii) ......................................................................................... 7

**OTHER AUTHORITIES**

2012 Annual Report for Discover Financial Services, Inc. ........................................... 5

FFEIC, *Uniform Retail Credit Classification and Account Management Policy*, 65 Fed. Reg. 36903 (June 12, 2000) ............................................................................ 5

General Accountability Office, *Credit Cards:  Fair Debt Collection Practices Act Could Better Reflect the Evolving Debt Collection Marketplace and Use of Technology* 18, 20-21 (GAO-09-748, 2009) ....................................................... 5, 6

Judith Fox, *Do We Have a Debt Collection Crisis?  Some Cautionary Tales of Debt Collection in Indiana*, 24 LOYOLA CONSUMER L. REV. 355, 359 (2012) ....................... 5

I.      **INTRODUCTION**

Objector Michael James Barton's Renewed Objection to the class action settlement relies upon a fundamental misunderstanding of a single term in one provision of the Settlement Agreement.  The term "charged off" is an accounting designation that does not affect a consumer's obligation to pay her debt.  A charged-off account is not, as Mr. Barton simply assumes—without any support of any kind—"bad debt" that a consumer can walk away from. With this submission, Class Counsel submit an expert declaration from Patricia A. McCoy, a Professor of Law at the University of Connecticut School of Law, former Director at the Consumer Financial Protection Bureau, and former advisor to the Federal Reserve Board, who specializes in financial services (including banking) regulation.  Professor McCoy's expert analysis confirms the analysis done by Class Counsel prior to Settlement and concludes that reducing an outstanding debt via a Reduction Award is a direct and valuable benefit for those Class Members.

That conclusion is further supported by the fact that, to date, at least 10,985 Class Members whose Discover accounts are charged off—including Plaintiffs Andrew Steinfeld and Walter Bradley—have already made claims under the Settlement.  And, as explained in Discover's submission, that number is calculated based on only about half of the 100,000 plus claims received to date, which means it is necessarily a floor.  These thousands of Class Members confirm that the Settlement has real value to charged-off Class Members.  Whatever Mr. Barton (whose account is *not* charged off) may think, Class Members with charged-off accounts plainly disagree, in droves.

Mr. Barton's charge-off argument is also premised on a moot issue.  As evidenced by Discover's submission to the Court, and as a result of Class Counsel's efforts (not Mr. Barton's), Discover has elected not to apply Reduction Awards to charged-off Class Members.  As a result, under the Settlement negotiated by Class Counsel *all* Class Members – including all charged-off Class Members – now have the option to choose a cash payment or a credit to their Discover credit card account.  That election is binding: Discover submitted a sworn statement to the Court and has no ability to alter that option.  Dkt. No. 77-1.  In any event, the parties are submitting a

1    revised proposed order incorporating that term, to eliminate any uncertainty.

2          Mr. Barton's reiteration of many of the same arguments regarding Class Counsel's

3    attorneys' fees are no more valid through repetition than when he made them to the Court in his

4    original submission. None of these arguments provides a basis for departing from the Ninth

5    Circuit's 25% benchmark for attorneys' fees in percentage-of-the-fund common fund cases like

6    this one.

7          Finally, given his counsel's prior history and the fact that Mr. Barton's Discover account

8    is not charged off (and he therefore has no personal stake in whether charged-off Class Members

9    receive cash or credit under the Settlement), Class Counsel acted properly in issuing a legitimate

10   subpoena to Mr. Barton to determine whether Mr. Frank was acting on his behalf.  Class Counsel

11   immediately withdrew that subpoena once his counsel accepted service of the subpoena and Mr.

12   Barton provided a declaration addressing those issues.

13         In sum, nothing in Mr. Barton's submission weighs against approving the Settlement or

14   approving Class Counsel's attorneys' fee request, or supports awarding Mr. Barton an incentive

15   award or attorneys' fees.

16   **II.     PROCEDURAL HISTORY**

17         **A.     The Contested Litigation**

18         As explained in Plaintiffs' prior submissions to the Court, the parties reached a Settlement

19   Agreement only after a mediator's proposal to resolve all claims in this action *Steinfeld v.*

20   *Discover Financial Services, et al.*, Case No. 3:12-cv-01118-JSW (N.D. Cal.), and the claims in

21   the action previously titled *Bradley v. Discover Financial Services*, Case No. 4:11-cv-5746-YGR

22   (N.D. Cal.).

23         Class Counsel will not recount that full history yet again, but note that many of Mr.

24   Barton's assertions about the litigation are incorrect.  Mr. Barton incorrectly asserts that "Class

25   counsel did not have to file one substantive brief pre-settlement."  Renewed Objection at 12.

26   However, before engaging in any settlement negotiations, the parties had fully briefed Discover's

27   Motion to Compel Arbitration in the *Bradley* Action.  Dkt. Nos. 26, 27, 28, 33.  Given that

28   undisputed fact, and the risk attendant to such a motion in light of how arbitration law has

1   developed, Mr. Barton's assertion that Plaintiffs did not engage in motion practice or face risk

2   prior to settling is demonstrably false.

3          **B.      The Charged-Off Class Member Provision**

4          During the settlement negotiations, Class Counsel advocated strenuously on behalf of all

5   Class Members, including charged-off Class Members, all of whom shared the same legal claim,

6   same type of injury (automated calls to their cell phones without prior express consent), and same

7   potential statutory damages.[1]  Indeed, both Class Representatives hold charged-off accounts.[2]

8   Class Counsel were also cognizant of the fact that, as a practical reality, any statutory damages

9   charged-off Class Members might recover in any lawsuit or arbitration could be off-set by their

10  outstanding debt.[3]  For this reason, courts have approved TCPA settlements that provide no

11  monetary relief at all for charged-off class members.  *See Arthur v. Sallie Mae, Inc.*, 2012 U.S.

12  Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012) (Robart, J.).  Class Counsel nonetheless

13  successfully advocated for, and achieved, Discover's agreement to provide *all* Class Members

14  with a right to monetary relief under the Settlement.[4]

15         Discover was adamant, however, that it retain the *option* to provide charged-off Class

16  Members with monetary relief in the form of a credit to their outstanding debt, not a cash award,

17  since charged-off Class Members held debt so delinquent that it had been charged off.[5]  Class

18  Counsel reluctantly agreed only when Discover conditioned any Class settlement on this term.[6]

19  Based upon the value of the Settlement relief to *all* Class Members, and the fact that charged-off

20  Class Members would likely be entitled to *no* cash damages in any event due to offset, Class

21  Counsel and the Class Representatives concluded that this Settlement was in the best interests of

22  the Class as a whole.[7]  That decision, while difficult, benefited all Class Members.[8]  The

23  Settlement Agreement therefore provides:

24

---

25  [1] Declaration of Jonathan D. Selbin in Support of Plaintiffs' Response to Renewed Objection ("Selbin Decl."), ¶. 10.
[2] *Id.*, ¶ 9.

26  [3] *Id.*, ¶ 10.
[4] *Id.*, ¶ 11.

27  [5] *Id.*
[6] *Id.*

28  [7] *Id.*, ¶ 12.
[8] *Id.*.

1

2

3

> Revoked Or Charged-Off Extensions of Credit. If a Settlement Class Member has,
> as of the Effective Date, one or more extensions of credit with Discover that has
> been revoked or charged off, Discover at its option **may** apply a Reduction Award
> from the balance of those extensions of credit in lieu of the Settlement Class
> Member receiving a Cash  Award or Credit Award, as set forth in Section III.H.3

4  (hereinafter, the "Charge-Off Provision") (emphasis added).  Class Counsel always intended to

5  revisit the issue of Reduction Awards following preliminary approval and once information

6  regarding claims rates became available.[9]  That is because Class Counsel have recognized – in

7  large part because their own clients are charged-off Class Members – that such Class Members

8  might prefer to receive a Cash Award despite the value of the Reduction Awards.  It is, and

9  always has been, Class Counsel's view that Reduction Awards are of equal value to Class

10  Members as Cash Awards.[10]  Mr. Barton's objection was not the reason for Discover's election,

11  which resulted instead from Class counsel's advocacy, as detailed in the Selbin Declaration.[11]

12    Class Counsel fully informed the Court of this provision.  Plaintiffs' preliminary approval

13  motion stated that, for any Class Members whose extensions of credit with Discover have been

14  charged off, "Discover at its option may apply a reduction from the principle balance of those

15  extensions of credit."  Dkt. No.48 at 7 (citing Settlement Agreement § III.H.3).  Class Counsel

16  also fully informed all Class Members of this provision.  The Claim Form provided to all Class

17  Members stated:  "Please note that if you have one or more extensions of credit with Discover

18  that has been revoked or charged off, Discover at its option may apply a one-time reduction to the

19  balance of such extensions of credit in lieu of you receiving a Cash Award."  Dkt. No. 49 at 158

20  (Exhibit B – Claim Form).

21  **III.**  **A CHARGE-OFF DOES NOT EXTINGUISH A DEBT.**

22    Mr. Barton incorrectly assumes a debtor has "no legal obligation to pay" charged-off

23  debts.  Renewed Objection at 9.  Mr. Barton bases this assertion purely on his own conjecture

24

[9] *Id.*, ¶ 13.

25

[10] *Id.*. Class Counsel's advocacy for the Class did not end when the Settlement was inked.  Class Counsel have continued to advocate for the best implementation of the Settlement throughout the

26  settlement approval process and, if the Court approves this Settlement, will do so even after final settlement approval.

27  [11] *Id.*, ¶ 14.  Should the Court deem it appropriate, Class Counsel will submit all of the email correspondence that resulted in Discover's election not to apply Reduction Awards, none of

28  which refer (directly or indirectly) to the Barton/Frank objection (or any other objection). *Id.* ¶14.

- 4 -

1  without citing any authority whatsoever.  He is flat-out wrong.

2  　　　　Professor Patricia A. McCoy is a professor of law and former high-ranking federal

3  government regulator who has specialized in financial services (including banking) regulation for

4  30 years.[12]  As set forth more completely in Professor McCoy's accompanying Declaration, a

5  "charge off" is an accounting designation that credit card issuers must make for all accounts that

6  have been delinquent for more than 180 days.  McCoy Decl., ¶15 (citing FFEIC, *Uniform Retail*

7  *Credit Classification and Account Management Policy*, 65 Fed. Reg. 36903 (June 12, 2000); *see*

8  *also* 2012 Annual Report for Discover Financial Services, Inc., p. 101).  The Federal Financial

9  Institutions Examination Council's ("FFEIC") rules do not extinguish a consumer's obligation to

10  pay charged-off debts.  *Id.*, ¶17 (citing FFEIC, *Uniform Retail Credit Classification and Account*

11  *Management Policy*, 65 Fed. Reg. 36903 (June 12, 2000)).  Rather, a creditor that charges off a

12  consumer debt has every right to pursue debt collection itself, hire a debt collection agency, or

13  hire a law firm to collect the charged-off debt as "'collection efforts rarely end at charge-off.'"

14  *Id.*, ¶¶17-18 (citing General Accountability Office, *Credit Cards:  Fair Debt Collection Practices*

15  *Act Could Better Reflect the Evolving Debt Collection Marketplace and Use of Technology* 18,

16  20-21 (GAO-09-748, 2009) ("GAO Report"); Judith Fox, *Do We Have a Debt Collection Crisis?*

17  *Some Cautionary Tales of Debt Collection in Indiana*, 24 LOYOLA CONSUMER L. REV. 355, 359

18  (2012)).  Thus, the term "charged off" does not mean that Discover has extinguished a charged-

19  off Class Member's obligation to repay any debt.

20  **IV.    A REDUCTION IN CHARGED-OFF DEBT IS A DIRECT AND VALUABLE
　　　　MONETARY BENEFIT.**

21

22  　　　　Because a charge-off does not extinguish the obligation to pay an outstanding debt, a

23  reduction of that outstanding debt is a real monetary benefit to charged-off Class Members.  *See*

24  _____

[12] *See* Expert Declaration of Patricia A. McCoy ("McCoy Decl.") (filed herewith).  Professor
McCoy is the Connecticut Mutual Professor of Law and Director of the Insurance Law Center at

25  the University of Connecticut School of Law.  In 2011, Professor McCoy served as the first
Assistant Director for Mortgage Markets at the Consumer Financial Protection Bureau in

26  Washington, D.C.  Professor McCoy previously served as a member of the Consumer Advisory
Council of the Board of Governors of the Federal Reserve System.  Professor McCoy's

27  experience is based in part on extensive research on financial services industry practices and
economics in consumer finance that resulted in authorship of the dozens of articles, book

28  chapters, and working papers.  A summary of her relevant qualifications can be found at
Paragraphs 26 through 32 of her Declaration.

1  *also* McCoy Decl., ¶¶18.  But, that is not the only benefit of debt reduction.  Reducing an

2  outstanding balance can improve a charged-off Class Member's credit creditworthiness internally

3  at Discover, and with credit-reporting agencies and creditors.  *Id.*, ¶¶21-22 (citing GAO Report at

4  20).  Consumer debtors may also enter into temporary hardship agreements with their creditors

5  that "re-age" their debts by temporarily reducing or suspending their responsibility to pay.  *Id.*,

6  ¶19.  Charged-off debtors who reduce their outstanding balance improve their ability to obtain a

7  temporary hardship agreement, thereby returning their loans to current status and improving both

8  their creditworthiness and credit score even further.  *Id.*, ¶20.

9          Charged-off Class Members plainly agree with Professor McCoy's expert analysis.  As

10  confirmed in Discover's separate submission, both Plaintiffs have charged-off Discover accounts.

11  Declaration of Daniel Roland ("Roland Decl."), ¶6.  They agreed to the Settlement and submitted

12  claims because it provides significant relief to them and other Class Members like them.  As of

13  February 7, 2013, the Claims Administrator had received over 100,000 Class Member claims.

14  *Id.*, ¶9.  Based on Discover's sample of 49,799 claimants with credit card accounts, 10,985 Class

15  Members with charged-off credit card accounts have voted with their actions by submitting claim

16  forms.  *Id.*  Not a single charged-off Class Member has objected to the Charge-Off Provision.

17  Only one of the eight objectors even has charged-off account.  *Id.*, ¶8.

18          Mr. Barton has no charged-off Discover accounts.  Roland Decl., ¶7.  Mr. Barton

19  concedes that "offset to bad debt is a benefit to a class member" if Discover "has decided to

20  engage in debt collection itself."  Renewed Objection at 5.  In its submission, Discover confirms

21  that it has not sold any of its debt to third parties for debt collection since well before the start of

22  the class period.  Roland Decl., ¶5.  Thus, Mr. Barton's concession disposes of his objection:

23  Discover, as the creditor, has every right to engage in debt collection of the charged-off Class

24  Members.  McCoy Decl., ¶¶15-18.  Indeed, there can be little doubt that Discover has fully

25  exercised that right to pursue debt collection, as the overwhelming majority of the automated

26  telephone calls at issue in this litigation are debt collection calls.

27          Mr. Barton, however, speculates—incorrectly—that Discover was incentivized by the Fair

28  Debt Collection Practices Act's purportedly "enormous potential liabilities" and "arcane and

1   technical requirements" to sell charged-off debt to third parties, that all but "a tiny fraction" of

2   charged-off debt was sold to third parties, and that Discover therefore presumably cannot apply a

3   credit to any such accounts.  Renewed Objection at 5.  Mr. Barton fully acknowledges that he has

4   no evidence for these assertions and instead bases them solely on "information and belief."  *Id.*

5   Mr. Barton is again flat-out wrong.  First, the FDCPA does not apply to creditors collecting or

6   attempting to collect debt they originated.  15 U.S.C. § 1692a(6)(F)(ii).  Second—and more

7   importantly—Discover has submitted a declaration declaring under penalty of perjury that it has

8   not sold any charged-off accounts to third parties since 2001.  Roland Decl., ¶5.  Thus, there is no

9   evidentiary basis for Mr. Barton's incorrect assertion that a credit to a charged-off account does

10  not benefit charged-off Class Members.

11  **V.    UNDER THE SETTLEMENT, ALL CLASS MEMBERS HAVE THE RIGHT TO
        CHOOSE A CASH PAYMENT OR CREDIT ON AN OUTSTANDING
12      EXTENSION OF CREDIT.**

13          Discover has informed the Court and Class Counsel in a sworn declaration under penalty

14  of perjury that it declined to exercise its option under the Charge-Off Provision to apply a

15  reduction award to charged-off Class Members.  Dkt. No. 77-1.  This decision is not a new

16  Settlement term or a change in (or modification to) the Settlement Agreement.  Rather, in the face

17  of prior TCPA settlements that provide no monetary relief for charged-off class members, *see*

18  *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012), Class

19  Counsel specifically negotiated for a provision that permitted Class Counsel to seek cash

20  payments for all Class Members.  Class Counsel always intended to revisit the issue of Reduction

21  Awards following preliminary approval and once information regarding claims rates became

22  available—and did just that.[13]  While cash and credit are of equal monetary value, Class Counsel

23  sought to—and actually did—provide Class Members with more choices.  The resulting ability

24  for all Class Members to choose a cash payment or credit was made possible only because Class

25  Counsel negotiated the Charge-Off Provision and strenuously advocated that Discover not

26  exercise this option.  Mr. Barton's objection was not the reason for that election, and he submits

27

28  _____
    [13] Selbin Decl., ¶¶ 13-14.  Class Counsel have affirmed that this decision had nothing to do with
    Mr. Barton's objection.  *Id.* ¶ 14.

1    no evidence otherwise.[14]

2          The Settlement Agreement provides that it is "subject to the Court retaining continuing

3    jurisdiction over the Parties and the Fund for the purpose of enforcement of the terms of this

4    Agreement."  In this Circuit, "[b]inding settlement agreements over which the district court

5    retains jurisdiction to enforce are judicially enforceable."  *St. John's Organic Farm v. Gem*

6    *County Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009).  Class Counsel are not

7    aware of any contrary authority that would permit Discover to renege on its sworn statement to

8    Class Counsel and the Court that it will not exercise its option and Mr. Barton certainly cites no

9    such authority. In any event, the parties will submit a revised proposed order to the Court, thereby

10   eliminating any uncertainty.

11   **VI.    THE RENEWED OBJECTION PROVIDES NO BASIS FOR DEPARTING FROM
          THE 25% BENCHMARK FOR ATTORNEYS' FEES.**

12

13         Mr. Barton rehashes many of the same arguments regarding attorneys' fees that he made

     in his original objection.  None of these arguments provides a basis for departing from the Ninth
14
     Circuit's 25% benchmark for attorneys' fees in percentage-of-the-fund common fund cases.[15]
15

16         **A.    Attorney Fee Awards are Calculated Based on the Gross, and Not the Net,
                  Settlement Fund.**

17         Mr. Barton repeats his argument that the 25% attorney fee percentage should be based on

18   the net recovery actually received by Class Members, as opposed to the entire gross Settlement

19   Fund.  Both the Supreme Court and the Ninth Circuit have repeatedly and unequivocally rejected

20   this argument.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("Since the decisions in

21   *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113

22   U.S. 116 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a

23   common fund for the benefit of persons other than himself or his client is entitled to a reasonable

24   attorney's fee from the fund as a whole."); *Staton v. Boeing Co.,* 327 F.3d 938, 975 (9th Cir.

25   2003) (holding that, where the defendant pays the costs of notice to the class on top of the

26   settlement fund, "it is reasonable . . . to include that cost in a putative common fund benefiting the

27   ---
     [14] Selbin Decl., ¶ 14.
     [15] Class Counsel do not repeat all of their responses to Mr. Mr. Barton's arguments asserted in
28   Plaintiffs' Response to Objections (Dkt. No. 76), but rather incorporate those arguments by
     reference here.

1  plaintiffs for all purposes, including the calculation of attorneys' fees.").

2          Mr. Barton's unsupported and incorrect view that settlement administrator costs are

3  "worse" than *cy pres* awards does not warrant a departure from such law.  The Ninth Circuit has

4  expressly held that settlement administrator costs are properly viewed as a benefit to Class

5  Members for purposes of calculating fees.  *Staton*, 327 F.3d at 975 ("[T]he post-settlement cost of

6  providing notice to the class can reasonably be considered a benefit to the class.").  And Judge

7  Lorenz rejected Mr. Frank's identical objection just last year.  *Dennis v. Kellogg Co.*, No. 09-cv-

8  1786-L (WMc), 2013 U.S. Dist. LEXIS 163118, at \*14-15 (S.D. Cal. Nov. 14, 2013); *see also*

9  *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289, at \*32 (E.D. Cal.

10 Sep. 1, 2011) (the "benefit" achieved for the class includes "costs (including class administrative

11 costs) and fees").

12         Nor does Mr. Barton's suggestion that the Settlement Fund would largely have been

13 "illusory" *had* Discover exercised its right to apply Reduction Awards warrant a departure from

14 the 25% benchmark.  Mr. Barton's view that the Reduction Awards would have provided no

15 benefit to Class Members (had they been employed) is just wrong for the reasons discussed in

16 Section IV.  Mr. Barton points to no authority holding that the percentage should be based off of

17 an objector's (mistaken) view of the value of the non-reversionary monetary Settlement Fund,

18 rather than the actual value.  The fact is that the *entire* net Settlement Fund—after deducting for

19 administrator costs and any attorneys' fees and service awards—will be distributed *pro rata* to

20 claimants, as cash or credit, at the Class Member's sole option.

21         **B.       *Perdue v. Kenny A does Not Apply to Common Fund Cases.***

22         Mr. Barton additionally repeats his view, although much less forcefully so, that *Perdue v.*

23 *Kenny A,* 130 S. Ct. 1662, 1669 (2010) precludes applying a multiplier in the lodestar cross-

24 check.  If Mr. Barton's view were correct, the 25% benchmark would almost never apply.  But, as

25 Mr. Barton now concedes, the Ninth Circuit has not adopted *Perdue* when analyzing fees under

26 Federal Rule of Civil Procedure 23(h).  *See* Renewed Objection at 13; *see also In re Washington*

27 *Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994) ("[The] rationale for

28 barring risk multipliers in statutory fee cases does not operate to bar risk multipliers in common

1   fund cases."); *In re Apollo Group Secs. Litig.*, No. CV 04-2147-PHX-JAT, 2012 U.S. Dist.

2   LEXIS 55622, at *24 (D. Ariz. Apr. 20, 2012) ("The reasoning in *Perdue* has not been extended

3   to common fund cases, and Ninth Circuit precedent distinguishes between common fund cases

4   and statutory fee cases.").  Indeed, cross-check multipliers are routine in awarding fees in

5   common fund class action cases such as this one in order to reflect the risk that class counsel

6   undertake in litigating such cases.  *See In re Washington*, 19 F.3d at 1300-01 (noting that "courts

7   have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases");

8   *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (approving fee award

9   of 25 percent of common fund, which resulted in a 3.65 multiplier on lodestar).

10          Class Counsel seek a fee that is *less* than the 25% benchmark, because they include their

11   costs in the fee requests.  The benchmark is 25% plus costs.  *See, e.g., In re Omnivision Techs.*,

12   559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007).  The multiplier that would result from a lodestar

13   cross-check here—3.5, based on time submitted through December, 2013—is in line with risk

14   multipliers awarded in similar cases that did *not* face a mandatory arbitration risk.  *See, e.g.,*

15   *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137

16   (S.D. Cal. Sept. 28, 2012) (Ex. B to Dkt. No. 64-1) (awarding 30% of the settlement fund, which

17   amounted to a 3.81 multiplier, in a TCPA case that settled prior to class certification); *see also*

18   *Vizcaino v. Microsoft Corp*, 290 F.3d 1043, 1051 and Appendix (9th Cir. 2002) (affirming 28%

19   fee award where multiplier equaled 3.65; and citing cases approving multipliers in common fund

20   cases averaging 3.32 and going as high as 19.6).  And, of course, that multiplier has already gone

21   down, and will continue to go down, as Class Counsel have handled final approval briefing and

22   related issues and have assisted (and will continue to assist) Class Members with their claims and

23   oversee that process.[16]

24          Mr. Barton argues that there was no risk here and even goes so far as to imply that a case

25   must survive a "motion to arbitrate, a motion to dismiss, a motion for class certification, or a

26   motion for summary judgment" to warrant a risk multiplier.  No case, not even the Sixth Circuit

27   case Mr. Barton cites, *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013), supports this

28

---

[16] Selbin Decl., ¶ 27.

1  view.[17]  Plaintiffs fully briefed Discover's arbitration motion, and faced the very real risk that

2  theirs and Class Members' claims would be forced into mandatory, individual arbitration had the

3  Court decided in favor of Discover on that motion.  *See McNamara v. Royal Bank of Scot. Group,*

4  *PLC*, No. 11-cv-2137, 2012 U.S. Dist. LEXIS 158580 (S.D. Cal. Nov. 5, 2012) (compelling

5  arbitration of TCPA claim); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1208 (S.D.

6  Cal. 2013) (same); *Coppock v. Citigroup, Inc.*, No. C11-1984-JCC, 2013 U.S. Dist. LEXIS 40632

7  (W.D. Wash. Mar. 22, 2013) (same); *Brown v. DIRECTV, LLC*, No. CV 12-08382 DMG (Ex),

8  No. CV 12-08382 DMG, 2013 U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) (same); *but see*

9  *Martin v. Wells Fargo Bank, N.A.*, 3:12-cv-06030-SI (N.D. Cal. Dec. 2, 2013) (Dkt. No. 73)

10  (denying motion to compel arbitration of TCPA claim).  And, Plaintiffs at all times faced the risk

11  that the protracted and highly adversarial settlement negotiations would not, ultimately, result in a

12  settlement, and that a class would later not be certified or that their claims would fail on the

13  merits.  Accordingly, Mr. Barton's arguments regarding the appropriate multiplier should be

14  rejected.

15  **C.**    **Class Counsel did Not Breach their Fiduciary Duty to Class Members.**

16  The only "new" argument Mr. Barton makes is that Class Counsel somehow breached

17  their fiduciary duty by representing that the optional Reduction Awards—which are not being

18  applied—would have provided a monetary benefit to Class Members.  But, as explained in

19  Section IV above, the Reduction Awards would have provided a direct and valuable monetary

20  (and other) benefit to Class Members—Mr. Barton is simply wrong on this issue.  Class Members

21  who have charged-off debts are still legally bound to pay those debts, except in the rare cases of

22  bankruptcy.  And, even in those rare cases, a Reduction Award can provide a benefit by boosting

23  charged-off Class Members' creditworthiness.  McCoy Decl., ¶21.  Thus, Reduction Awards

24  would have provided meaningful relief by reducing those Class Members' outstanding balances;

25  improving their credit creditworthiness internally at Discover, with credit-reporting agencies, and

26  with creditors; and permitting them to "re-age" their debts.  *Id.*, ¶¶19-22.

---

27  [17] Mr. Barton additionally cites *Dry Max Pampers* in support of his incorrect assertion that Class
    Counsel would need to put forth information of confidential settlement negotiations, among other
28  things, to prove "risk" and to justify a multiplier, but that case does not support his view and, in
    any event, is not binding in this Circuit, which has adopted no such rule.

1    Mr. Barton speculates inaccurately based on the estimated claim value of $20 to $40 that

2  the parties were "anticipating that Discover would remove approximately $2.4 million from the

3  settlement fund using the Section III.G.2. option."  Renewed Objection at 6.  Class Counsel has

4  consistently stated that "Class Counsel estimate that settlement payments or credits will be

5  between $20 and $40, but could be more or less based on factors including the number of claims

6  submitted."  Dkt. 49 at 160 (Exhibit C - E-mail, Mail and Website Notice).  Class Counsel made

7  this conservative estimate, in consultation with the Settlement Administrator and without any

8  involvement from Discover, based on their experience in other TCPA class action settlements.[18]

9  For purposes of notice, Class Counsel always attempt to overestimate the claims rate so that Class

10  Members are not disappointed if the claims rate is unexpectedly high and their *pro rata* payments

11  thus unexpectedly low.  That the actual amount claimants receive here may be on the high end, or

12  even exceed, Class Counsel's estimate is a reflection of the conservative nature of Class

13  Counsel's estimate and nothing else.  Nothing about that estimate had anything to do with

14  anyone's valuation of the potential Reduction Awards.[19]  In sum, Class Counsel's fee request is

15  reasonable, and Mr. Barton has provided no legitimate basis for awarding a fee below the Ninth

16  Circuit's 25% benchmark here.

17    Nor has Mr. Barton established any entitlement to an incentive award or attorneys' fees

18  for his counsel.  Mr. Barton added nothing to the Settlement.  As discussed above, the Settlement

19  always allowed Discover to either exercise—or decline to exercise—an option to apply Reduction

20  Awards in lieu of cash or credit payments.  That Discover chose to decline to exercise this option

21  does not amount to a change or modification of the Settlement.  Moreover, Mr. Barton has not—

22  and cannot—establish that he caused Discover to decline to exercise its option.  Class Counsel

23  repeatedly encouraged Discover to apply cash or credit payments to *all* Class Members long

24  before Mr. Barton made his objection.[20]  Most importantly, even had Discover exercised its

25  option to apply Reduction Awards to charged-off debts, these awards would benefit Class

26

27  [18] In Class Counsel's experience, the settlement claims rate typically is slightly lower in TCPA class actions that over consumer class actions because the TCPA provides statutory damages, not actual damages based upon loss.

28  [19] Selbin Decl., ¶ 28.
   [20] Selbin Decl., ¶¶ 10-13.

Members and would not have been illusory, as Mr. Barton wrongly contends.  As such, the Court

should decline Mr. Barton's new request for attorneys' fees.

## VII.   CLASS COUNSEL ISSUED A LEGITIMATE SUBPOENA DIRECTED AT THE NATURE OF MR. BARTON'S OBJECTION, WHICH THEY WITHDREW IMMEDIATELY AFTER MR. BARTON PROVIDED THE SOUGHT INFORMATION IN A SIGNED DECLARATION.

Now that Mr. Barton's original basis for objecting to the Settlement—the purported late

notice—has been proven wrong and he has apparently dropped that objection, Mr. Barton

attempts to frame Class Counsel's service of a deposition subpoena as an "intimidation tactic" in

support of his new request for his own attorneys' fees.  The subpoena itself, and Class Counsel's

meet and confer efforts with Mr. Frank regarding the subpoena, prove this allegation to be

baseless.

On January 21, 2014, Class Counsel sent a courtesy copy of the subpoena to Mr. Frank,

and asked Mr. Frank if he would accept service of the subpoena on behalf of Mr. Barton.[21]  The

subpoena requested documents and testimony to be produced in a little over two weeks—by

February 5, 2014—not within one week as Mr. Barton falsely represents.[22]

Class Counsel had legitimate reasons to be suspicious of whether Mr. Barton authorized

the objection.  First, although Mr. Barton himself is not a charged-off Class Member, his

objection focused on a provision affecting Class Members who, unlike Mr. Barton, hold charged-

off Discover accounts.  Second, given that Mr. Frank was on one recent occasion accused by his

former objector-clients (and not simply Mr. Frank's "adverse counsel," as Mr. Barton's Renewed

Objection misleadingly represents) of taking actions without their authority or knowledge, the

subpoena reasonably sought information on the nature of Mr. Frank's representation of Mr.

Barton.[23]  The subpoena also sought information about Mr. Barton's membership in the Class and

---

[21] Selbin Decl., Ex. 15, Ex. A.

[22] *Id.*, Ex. A.

[23] Declaration of Elizabeth J. Cabraser in Support of Plaintiffs' Response to Renewed Objection ("Cabraser Decl."), ¶ 7, Exs. E & G.  Class Counsel do not ask the Court to make any findings regarding what happened in the *In re: Deepwater Horizon – Appeals of the Medical Benefits Class Action Settlement*, No. 13-30221, (5th Cir. Nov. 22, 2013), and whether Mr. Frank had authority to act on behalf of the objector-appellants there.  Instead, Class Counsel maintain that, in light of the allegations in the *Deepwater* case, it was appropriate for Class Counsel to seek the deposition of Mr. Mr. Barton to ascertain whether he authorized Mr. Frank to act on his behalf here.

1  Mr. Barton's accusation that he received late notice.  Other courts have ordered objectors to

2  comply with substantially identical subpoenas with identical document requests.[24]

3      Mr. Frank responded to Class Counsel's email the same day, but did not unequivocally

4  state that he would accept service on his client's behalf.[25]  Upon receipt of Mr. Frank's email, and

5  with the final approval hearing rapidly approaching, Class Counsel sent the subpoena to a process

6  servicer for service.[26]  The same day, the process server attempted to serve the subpoena at Mr.

7  Barton's place of work, the address provided in Mr. Barton's objection.  This first attempted

8  service failed because Mr. Barton's secretary represented that he wasn't at work at the time of the

9  first attempted service.[27]  Mr. Frank contacted Class Counsel immediately after this attempt,

10  accusing Class Counsel of "harassing" Mr. Barton at his workplace, but still did not

11  unequivocally state that he would accept service on Mr. Barton's behalf.[28]  The second attempted

12  service failed because Mr. Barton's receptionist falsely informed the process server that Mr.

13  Barton did not work at that place of work.[29]  Only after these two attempts of service did Mr.

14  Frank agree to accept service of the subpoena, and Class Counsel accordingly ceased attempting

15  personal service.[30]

16      Class Counsel communicated to Mr. Frank their willingness to substantially narrow the

17  scope of the subpoena and limit the length of the deposition.[31]  Class Counsel and Mr. Frank also

18
19 _____

[24] *See* Selbin Decl., ¶ 16, Ex. B [CRT subpoena] & Ex. C [CRT Order] ("The requests for documents focus solely on the objector's standing, the bases for his current objections, his role in objecting to this and other class settlements, and his relationships with the counsel that are believed to be behind the scenes manipulating him.  As such, the requested information and documents are relevant, needed and reasonably tailored."); Ex. D [SRAM subpoena] & Ex. E [SRAM Order] (compelling deposition and production of documents).  Such subpoenas—aimed at the basis for an objector's objection, his status as a class member, his relationship to known "serial" objectors, and his motivations in objecting to the settlement—are wholly unlike the subpoena at issue in *In re: Classmates.com Consolidated Litig.*, No. C09-45RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. June 15, 2012), a case in which Class Counsel had no involvement.  In *Classmates,* the subpoenas at issue were directed at Mr. Frank's Center for Class Action Fairness ("CCAF") and at one of CCAF's donors, and requested documents verifying CCAF's not-for-profit status, its tax returns, its funding sources, its relationship with donors, and other such documents that were wholly irrelevant to the settlement before the court.  *Id.* at *30-32.
[25] Selbin Decl., ¶ 17, Ex. F.
[26] *Id.*, ¶ 18.
[27] *Id.*
[28] *Id.*, ¶ 19, Ex. G.
[29] *Id.*, ¶ 20.
[30] *Id.*, ¶ 21, Ex. H.
[31] *Id.*, ¶ 22, Ex. I.

1   met and conferred regarding Mr. Barton's objections, including Mr. Barton's incorrect claim that

2   he received late notice of the Settlement.  On January 28, 2014, Mr. Frank provided Class

3   Counsel with Mr. Barton's signed declaration, which described the basis for his belief that he is a

4   member of the Class and explained that he had "been looking for the opportunity to object to

5   unfair class settlements," which is why he reached out to Mr. Frank for representation

6   immediately upon viewing the class notice.[32]  Because Mr. Barton's declaration largely provided

7   the information sought by the subpoena, Class Counsel withdrew the subpoena the next day, on

8   January 29, 2014.[33]  Contrary to Mr. Frank's accusations, Class Counsel never intended to harass

9   Mr. Barton with the subpoena, and withdrew it not because Mr. Barton was resisting some

10  perceived but non-existent intimidation tactic, but rather because Mr. Barton's declaration

11  provided Class Counsel with much of the information they sought.[34]

12      Mr. Barton attempts to disparage Lieff Cabraser, citing cases from two decades ago,

13  before any of the attorneys involved in this Settlement began working at Lieff Cabraser.  But, Mr.

14  Barton's case citations in this regard are incomplete and misleading.[35]  One of these cases cited,

15  *In re Keagan Management Co. Securities Litig*., 154 F.R.D. 237 (N.D. Cal. 1994), was reversed

16  by the Ninth Circuit, 78 F.3d 431, 433 (9th Cir. 1995) (attached as Ex. C to Cabraser Decl.) ("we

17  reverse the district court's order imposing sanctions against . . . Lieff, Cabraser & Heimann").

18  And, the sanctions order in the *Omnitrition* case was later modified to largely apply only to a

19  former attorney of Lieff Cabraser, and not the firm itself—an attorney who was promptly fired

20  from the firm for the unauthorized actions he had taken in that case.[36]  *In re Omnitrition*

21  *International, Inc. Securities Litig*., No. C 92-4133 SBA, 1995 WL 626529, at *4 (N.D. Cal. Feb.

22  21, 1995) (attached as Ex. D to Cabraser Decl.) ("the nonmonetary aspects of the Court's Order

23  Imposing Sanctions is VACATED as it pertains to Lieff, Cabraser").[37]  None of the Lieff

---

24  [32] *Id*., ¶ 23, Ex. J.

25  [33] *Id*., ¶ 24, Ex. K.
    [34] *Id*., ¶ 24.
    [35] *See* Cabraser Decl,, ¶¶ 5-6.

26  [36] *Id*., ¶ 6.
    [37] Mr. Barton also cites the inapposite *In re Wells Fargo Sec. Litig*., 157 F.R.D. 467, 472 (N.D.

27  Cal. 1994).  There, the court merely cited the subsequently-reversed *Omnitron* and *Keegan* cases
    when considering LCHB bid to be appointed as replacement class counsel (and, the court

28  determined that LCHB's bid was "superior" to the other two proposals).  Mr. Barton also cites *In re NCAA Student-Athlete Name & Likeness Licensing Litig*., 2013 U.S. Dist. LEXIS 46104 (N.D.

1    Cabraser attorneys involved in this action have ever been sanctioned by any court; instead, they

2    have time and again been appointed lead counsel in class action cases.[38]

3         Mr. Barton's attacks on Class Counsel are simply irrelevant to the question of whether the

4    Settlement is fair, adequate, and reasonable.  They are also irrelevant to the issue of whether Mr.

5    Barton is entitled to attorneys' fees.  Contrary to Mr. Barton's assertion that Class Counsel

6    "fought tooth and nail" to prevent the issue of Reduction Award payments from being presented

7    to the Court and "buried" the Charge-Off Provision, Class Counsel have at all times been

8    forthright with the Court and all Class Members about Discover's option to apply Reduction

9    Award payments to charged-off or revoked accounts since filing their preliminary approval

10   papers in May, 2013.  *See, e.g.,* Dkt. No. 48 at 7 ("If a Class Member has one or more extensions

11   of credit with Discover that have been revoked or charged off, Discover at its option may apply a

12   reduction from the principle balance of these extension of credit (a "Reduction Award") in lieu of

13   that Class Member receiving a Cash Award or Credit Award."); Dkt. No. 49 at 158 (Exhibit B –

14   Claim Form) ("Please note that if you have one or more extensions of credit with Discover that

15   has been revoked or charged off, Discover at its option may apply a one-time reduction to the

16   balance of such extensions of credit in lieu of you receiving a Cash Award.").  Furthermore, Class

17   Counsel stipulated to allowing Mr. Barton to supplement his objection on this issue.  *See* Dkt. No.

18   79.  Class Counsel always knew that Mr. Barton's view that Reduction Awards would have

19   provided "no benefit" was simply incorrect, for the reasons explained in Section IV above.  Thus,

20   Class Counsel had no motivation for supposedly "intimidating" Mr. Barton.

21        Accordingly, the Court should disregard Mr. Barton's arguments regarding the subpoena.

22

23   _____

24   Cal. Mar. 28, 2013) simply because it is a discovery sanctions order in a case in which Lieff
     Cabraser is listed as one of many firms representing some, among many, plaintiffs in the *NCAA*

25   action.  Lieff Cabraser was not appointed lead counsel in that action.  *See id.,* Dkt. No. 146, filed
     Jan. 15, 2010, Ex. L to Selbin Decl. (order appointing other firms as lead counsel for the

26   plaintiffs).  Moreover, no Lieff Cabraser attorney—let alone the attorneys representing the class
     here—had any involvement in drafting the *NCAA* subpoenas or the meet and confers regarding

27   those subpoenas that led to sanctions in the *NCAA* action.  Selbin Decl., ¶ 26, Ex. M (declaration
     submitted by plaintiffs' counsel in *NCAA* action from the firm Cafferty Faucher, LLP, describing

28   the attorneys involved in drafting and issuing the subpoenas, none of whom were attorneys at
     Lieff Cabraser).
     [38] Selbin Decl., ¶¶ 6, 8.

1    **VIII**.  <u>**CONCLUSION**</u>

2          For the foregoing reasons, Plaintiffs respectfully submit that the objections are all without

3 merit and should be overruled, and that the Settlement should be approved as fair, adequate,

4 reasonable, and in the best interests of the Class.

5 Dated:   February 12, 2014        By:   */s/ Jonathan D. Selbin*_____
                                           Jonathan D. Selbin

6

7                                  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                 Jonathan D. Selbin

8                                  Email:  jselbin@lchb.com
                                 250 Hudson Street, 8th Floor

9                                  New York, NY  10013
                                 Telephone:  (212) 355-9500

10                                  Facsimile:  (212) 355-9592

11                                  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                 Daniel M. Hutchinson

12                                  Email:  dhutchinson@lchb.com
                                 Nicole D. Sugnet

13                                  Email:  nsugnet@lchb.com
                                 275 Battery Street, 29th Floor

14                                  San Francisco, California  94111-3339
                                 Telephone:  (415) 956-1000

15                                  Facsimile:  (415) 956-1008

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TERRELL MARSHALL DAUDT
& WILLIE PLLC

2

Beth E. Terrell
bterrell@tmdwlaw.com

3

936 North 34th Street, Suite 400

4

Seattle, Washington 98103-8869
Telephone: (206) 816-6603

5

Facsimile: (206) 350-3528

6

CASEY, GERRY, SCHENK, FRANCAVILLA, BLATT,
& PENFIELD LLP

7

Mark Ankcorn

8

mark@cglaw.com
110 Laurel Street

9

San Diego, CA 92101
Telephone: (619) 238-1811

10

Facsimile: (619) 544-9232

11

MEYER WILSON CO., LPA
David P. Meyer

12

(admitted *pro hac vice*)
Email: dmeyer@meyerwilson.com

13

Matthew R. Wilson
(admitted *pro hac vice*)

14

Email: mwilson@meyerwilson.com
1320 Dublin Road, Ste. 100

15

Columbus, Ohio 43215
Telephone: (614) 224-6000

16

Facsimile: (614) 224-6066

17

*Attorneys for Plaintiffs and the Class*

18

19

20

21

22

23

24

25

26

27

28

1160020.2

- 18 -