LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Jonathan D. Selbin (State Bar No. 170222)
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Daniel M. Hutchinson (State Bar No. 239458)
Nicole D. Sugnet (State Bar No. 246255)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

MEYER WILSON CO., LPA
Matthew R. Wilson (admitted *pro hac vice*)
1320 Dublin Road, Ste. 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:   (614) 224-6066

CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD LLP
Mark Ankcorn (State Bar No. 166871)
mark@cglaw.com
110 Laurel Street
San Diego, CA  92101
Telephone:  (619) 238-1811
Facsimile:   (614) 224-6066

TERRELL MARSHALL DAUDT & WILLIE PLLC
Beth E. Terrell (State Bar No. 178181)
bterrell@tmdwlaw.com
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:   (206) 350-3528

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW STEINFELD and WALTER BRADLEY on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, and DISCOVER BANK,<br><br>Defendants. | Case No. 3:12-cv-01118-JSW<br><br>**DECLARATION OF JONATHAN D. SELBIN IN SUPPORT OF PLAINTIFFS' RESPONSE TO RENEWED OBJECTION BY MICHAEL JAMES BARTON**<br><br>Judge:  Hon. Jeffrey S. White |

I, JONATHAN D. SELBIN, declare as follows:

1. I am a member of the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), counsel of record for Plaintiff Andrew Steinfeld. I am a member in good standing of

1160034.1

DECLARATION OF J. SELBIN ISO PLAINTIFFS' RESPONSE
TO RENEWED OBJECTION  BY MICHAEL JAMES BARTON
CASE NO. 4:11-CV-5746-JSW

the bars of the States of California and New York, and the bar of the District of Columbia. I respectfully submit this declaration in Support of Plaintiffs' Response to Renewed Objection by Michael James Barton. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

## I. General Background of Lieff Cabraser Attorneys

2. As detailed extensively in my declaration in support of Plaintiffs' Motion for Attorneys' Fees, I and the other Lieff Cabraser attorneys involved in this action have extensive experience litigating class actions, including class action lawsuits under the Telephone Consumer Protection Act ("TCPA").

3. TCPA Cases in which Lieff Cabraser has served as Class Counsel in such actions and in which I have played an active role include the following:

    a. *Rose v. Bank of Am. Corp.*, 5:11-cv-02390-EJD (N.D. Cal.) (nationwide settlement achieving the largest monetary settlement in the history of the TCPA: $32,083,905.00; preliminary approval granted in 2013);

    b. *Arthur, et al. v. Sallie Mae, Inc.*, No. C10-0198 JLR (W.D. Wash.) (nationwide settlement achieving the then-largest monetary settlement in the history of the TCPA: $24.15; final approval granted in 2012);

    c. *Wannemacher v. Carrington Mortgage Services LLC*, Case No. 8:12-cv-02016-FMO-AN (C.D. Cal.) (nationwide settlement; preliminary approval pending);

    d. *In Re: Capital One Telephone Consumer Protection Act Litigation*, MDL No. 2416 (N.D. Ill.) (pending; serving as court-appointed co-lead counsel);

    e. *Smith v. State Farm Mutual Auto. Ins. Co.*, Case No. 13-cv-02018 (N.D. Ill.) (pending; serving as Rule 23g court-appointed sole lead counsel);

    f. *Ossola v. American Express Co.*, Case No. 1:13-cv-04836 (N.D. Ill.) (pending);

    g. *Bayat v. Bank of the West*, Case 3:13-cv-02376-EMC (N.D. Cal.) (pending);

1160034.1 - 2 -

DECLARATION OF J. SELBIN ISO PLAINTIFFS' RESPONSE
TO RENEWED OBJECTION BY MICHAEL JAMES BARTON
CASE NO. 4:11-CV-5746-JSW

1         h.     *Brown v. Directv LLC, et al.*, Case No. 2:13-cv-01170-DMG-E (C.D. Cal.) (pending);

3         i.     *Mills v. HSBC Bank Nevada, N.A.*, Case No. 3:12-cv-04010-SI (N.D. Cal.) (pending);

5         j.     *Balschmiter v. TD Auto Finance*, LLC, Case No. 2:13-cv-01186 (E.D. Wisc.) (pending); and

7         k.     *Martin v. Wells Fargo Bank, N.A.*, Case No. 3:12-cv-06030-SI (N.D. Cal.) (pending) and *Heinrichs v. Wells Fargo Bank, N.A.*, Case No. 3:13-cv-05434-WHA (N.D. Cal.) (pending).

    4.    Other cases in which Lieff Cabraser has served as Class Counsel in complex and/or class actions and in which I have played an active role include, but are not limited to, the following:

        a.     *Ross v. Trex Co., Inc.*, No. 09-cv-00670 JF (N.D. Cal.) (nationwide settlement class involving defective composite decking; final approval of settlement covering part of case granted in 2010; final approval of settlement covering remaining case granted in 2013);

        b.     *In Re: Imprelis Herbicide Marketing, Sales Practices And Products Liability Litigation*, No. 2:11-md-02284-GP (E.D. Pa.) (nationwide settlement involving defective herbicide; final approval granted in 2013);

        c.     *McLennan, et al. v. LG Electronics USA, Inc.*, No. 2:10-cv-03604-WJM-MF (D.N.J.) (nationwide settlement involving defective refrigerators; final approval granted in 2012);

        d.     *In re Mercedes-Benz Tele Aid Contract Litigation*, MDL No. 1914 (D.N.J.) (nationwide litigation class certified and Rule 23(f) and Rule 1292(b) appeals defeated in case involving Mercedes' alleged deception relating to its Tele Aid service; nationwide settlement class; final approval granted in 2011);

        e.     *Glenz, et al. v. Sharp Electronics Corp.*, No. 2:08-cv-03652-FSH-MAS (D.N.J.) (nationwide settlement class involving defective projector bulbs; final approval granted 2011);

        f.    *Carideo, et al. v. Dell, Inc.*, No. C06-1772 JLR (W.D. Wash.) and *Omstead, et al. v. Dell, Inc.*, No. C06-6293 PJH (N.D. Cal.) (nationwide settlement class involving computer defect; final approval granted in 2010);

        g.    *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC (N.D. Cal.) (nationwide settlement class involving false advertising claims related to remote controls; final approval granted in 2010);

        h.    *Create-a-Card v. Intuit*, No. CV-07-6452 WHA (N.D. Cal.) (nationwide settlement class involving faulty computer code; final approval granted in 2009);

        i.    *Pelletz v. Weyerhaeuser Company and Advanced Environmental Technologies, Inc.*, No. C08-0334 JCC (W.D. Wash.) (nationwide settlement class involving defective composite decking; final approval granted in 2009);

        j.    *Grays Harbor Adventist Christian School v. Carrier Corporation*, No. CV05-5437 (W.D. Wash.) (Washington litigation class involving defective furnaces certified; nationwide settlement class; final approval granted in 2008);

        k.    *Weekend Warrior Trailer Cases*, Judicial Coordination Proceeding No. 4455 (Orange County, CA) (nationwide settlement class involving defective recreational trailers; final approval granted in 2008);

        l.    *Richina v. Maytag Corp.*, Case No. CV025202 (San Joaquin County, California) (California settlement class involving defective oven panels; final approval granted in 2007);

        m.    *Lundell v. Dell, Inc.*, No. C05-3970 JW/RS (N.D. Cal.) (nationwide settlement class involving defective computers; final approval granted in 2006);

        n.    *Kan v. Toshiba America Information Systems, Inc.*, No. BC327273 (Los Angeles County, California) (nationwide settlement class involving defective computers; final approval granted in 2006);

        o.    *Behr Wood Sealant Cases*, JCCP Nos. 4132 & 4138 (San Joaquin County, California) (nationwide settlement class involving defective wood sealant; final approval granted in 2003);

p. *Richison v. American Cemwood Corp.*, Civil Action No. 005532 (San Joaquin County, California) (nationwide litigation class involving defective shingles certified and upheld on writ review; nationwide settlement classes final approval granted in 2000 and 2003);

q. *Williams v. Weyerhaeuser Co.*, Civil Action No. 995787 (San Francisco County, California) (California litigation class involving defective siding certified in 1999; nationwide settlement class final approval granted in 2000);

r. *Delay v. Hurd Millwork Co.*, No. 972-073710 (Spokane County, Washington) (multi-state settlement class involving defective windows; final approval granted in 1998);

s. *Naef v. Masonite*, No. CV-94-4033 (Mobile County, Alabama) (nationwide litigation class certified in 1995, nationwide settlement class involving defective siding final approval granted in 1998);

t. *Bettner v. Georgia-Pacific*, No. CV-95-3330-RGK (Mobile County, Alabama) (nationwide settlement class involving defective siding; final approval granted in 1998);

u. *ABS Pipe Cases II*, JCCP No. 3126 (Contra Costa County, California) (nationwide settlement classes involving defective pipes; final approval granted in 1998 through 2001);

v. *In re: Louisiana-Pacific Co. Inner-Seal Siding Litigation*, No. CV-95-879 JO-LEAD (U.S.D.C. Oregon) (nationwide settlement class involving defective siding; final approval granted in 1996); and

w. *Cox v. Shell*, Civil No. 18,844 (Obion County, Tennessee) (nationwide settlement class involving defective polybutylene pipes; final approval granted in 1995).

5. A number of courts in the above cases have praised Lieff Cabraser's (and my) efforts on behalf of Plaintiffs:

a. In *In Re Mercedes-Benz Tele Aid Contract Litigation*, Judge Dickinson R. Debevoise stated: "I want to thank counsel for the . . . very effective and good work. . . . It was

carried out with vigor, integrity and aggressiveness with never going beyond the maxims of the Court."

  b. In *Glenz v. Sharp Electronics Corp.*, Judge Faith S. Hochberg stated: I want to commend counsel for all the hard work you all put into this case, for retaining an excellent mediator, for getting it managed efficiently and settled expeditiously, rather than letting the case drag on endlessly without settling it. It really is the way they should be done. I wish they were all done this way. . . . I'm delighted.

  c. In *Create-a-Card v. Intuit*, Judge William Alsup commended LCHB for the "excellent job in the case as class counsel," and stated that "the class has been well represented having you and your firm in the case."

6. Over the last few years, I have been personally appointed to lead a number of large high profile and multi-district litigation cases. These include the following:

  a. *In re Mercedes-Benz Tele Aid Contract Litigation*, MDL No. 1914 (D.N.J.) (appointed by Judge Debevoise as one of three co-lead counsel);

  b. *In re Whirlpool Corporation Front-Loading Washer Products Liability Litigation*, MDL No. 2001 (N.D. Ohio) (appointed by Judge Gwin as sole lead counsel);

  c. *In Re: Imprelis Herbicide Marketing, Sales Practices & Products Liability Litigation*, MDL No. 2284 (E.D. Pa.) (appointed by Judge Pratter as one of four co-lead counsel in a contested Rule 23(g) order);

  d. *In Re: Capital One Telephone Consumer Protection Act Litigation*, MDL No. 2416 (N.D. Ill.) (appointed by Judge Holderman as one of two co-lead counsel);

  e. *Smith v. State Farm Mutual Auto. Ins. Co.*, Case No. 13-cv-02018 (N.D. Ill.) (appointed by Judge St. Eve as sole lead counsel in a contested Rule 23(g) order).

7. Together, the cases described above have resulted in court-approved class action settlements, with a combined total recovery for class members exceeding $2 billion in cash, plus other relief. The TCPA class settlements, including those described in paragraph 3 above, total over $70 million. LCHB's experience in these cases, and my experience in particular, has

1  provided LCHB and me with expertise in the legal, factual, management, notice, and
2  administration issues that characterize these types of class actions.
3        8.    None of the Lieff Cabraser attorneys involved in this action, including myself,
4  Daniel M. Hutchinson, and Nicole D. Sugnet, has ever been sanctioned or otherwise disciplined
5  by a court or by a state bar.  Moreover, none of us was involved in the *In re Omnitrition*
6  *International, Inc. Securities Litig.*, No. C 92-4133 SBA (N.D. Cal.) or *In re Keagan*
7  *Management Co. Securities Litig.*, 154 F.R.D. 237 (N.D. Cal.) cases Mr. Barton cites, which were
8  litigated before any of us was employed with Lieff Cabraser.

9  **II.    The Charged-Off Class Member Provision**

10        9.    As confirmed by Discover's records, both of the named plaintiffs in this case had
11  charged-off accounts with Discover.
12        10.    During the settlement negotiations, Class Counsel advocated strenuously on behalf
13  of all Class members, including charged-off Class Members, all the while cognizant of the fact
14  that any recovery of damages through litigation or arbitration might be off-set by these Class
15  Members' outstanding debts.
16        11.    As a result of Class Counsel's advocacy, after nearly a year of hard-fought
17  negotiations, Discover agreed to provide *all* Class Members with a right to monetary relief under
18  the Settlement.  Discover nonetheless was adamant it retain the *option* to provide charged-off
19  Class Members with monetary relief in the form of a credit to their outstanding debt, not a cash
20  award, since charged-off Class Members still owed debt to Discover and were so delinquent that
21  those accounts had been charged-off.  Class counsel agreed only when it was clear that Discover
22  would condition any Class settlement on this term.
23        12.    While Class Counsel would have preferred no such option to be in the Settlement,
24  Class Counsel nonetheless understood the nature of charged-off debts sufficiently to understand
25  that, had Discover exercised its option to apply Reduction Awards, such awards would
26  nonetheless provide a direct and real monetary benefit to these Class Members.  Class counsel
27  and the Class Representatives therefore concluded that this Settlement was in the best interests of
28  the Class as a whole as it benefitted all Class Members.

13. Class counsel always intended to revisit the issue of Reduction Awards following preliminary approval and once information regarding claims rates became available. That is because Class counsel recognize—in large part because their own clients are charged-off class members—hat such Class members might prefer to receive a Cash Award despite the value of the Reduction Awards. It is, and always has been, our view that Reduction Awards are of equal value to Class members as Cash Awards.

14. Mr. Barton's objection was not the reason Class counsel requested Discover not to exercise its Reduction Award option. The timing was pure happenstance, and Mr. Barton's attempt to draw some significance from it is without support. Class counsel renewed their request to Discover's counsel in a short conversation in person while they happened to be attending a long-scheduled mediation in a different TCPA case at JAMS San Francisco on January 14, 2014. Subsequently, there were several exchanges by e-mail, which resulted in Discover's election not to apply Reduction Awards. I have reviewed all of those communications, and none refer (directly or indirectly) to the Barton/Frank objection (or any other objection). Class Counsel are willing to provides copies of all such communications to the Court for its in camera review should the Court deem it appropriate.

### III.   The Subpoena Directed at Mr. Barton

15. On January 21, 2014, Ms. Sugnet sent a courtesy copy of the subpoena to Mr. Frank via email. Attached as **Exhibit A** is a true and correct copy of Ms. Sugnet's email, along with the attached subpoena. In her email, Ms. Sugnet asked Mr. Frank if he would accept service of the subpoena on behalf of Mr. Barton.

16. The subpoena and accompanying document requests was largely identical to subpoenas served on objectors and approved by courts in other cases. Attached as **Exhibit B** is a true and correct copy of a subpoena served on an objector in *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1717 (N.D. Cal.), and attached as **Exhibit C** is a true and correct copy of the *CRT* court's order granting the plaintiffs' motion to compel the objector's compliance with the subpoena. Attached as **Exhibit D** is a true and correct copy of a subpoena served on an objector in *In re: Static Random Access Memory (SRAM) Antitrust Litig.*, MDL No. 1819 (N.D.

Cal.), and attached as **Exhibit E** is a true and correct copy of the *SRAM* court's order granting the plaintiffs' motion to compel the objectors' compliance with the subpoena.

17. Mr. Frank responded to Ms. Sugnet's email the same day, on January 21, 2014, but did not unequivocally state that he would accept service of the subpoena, instead stating that he might agree to the subpoena if Class Counsel agreed to Mr. Frank conducting a 30(b)(6) deposition of an attorney from one of Class Counsel's firms, as well as the depositions of the Class Representatives. Attached hereto as **Exhibit F** is a true and correct of Mr. Frank's email January 21, 2014 email, sent at 11:11a.m.

18. Upon receipt of Mr. Frank's email, and with the final approval hearing rapidly approaching, Class Counsel sent the subpoena to a process servicer for service. The same day, the process server attempted to serve the subpoena at Mr. Barton's place of work, the address provided in Mr. Barton's objection. This first attempted service failed because, as our process servicer informed us, Mr. Barton's secretary represented that he wasn't at work at the time of the first attempted service.

19. Mr. Frank emailed Ms. Sugnet immediately after this attempt, at 12:52 p.m. on January 21, 2014, and accused accusing Class Counsel of "harassing" Mr. Barton at his workplace. Still, Mr. Frank did not state in this email that he would accept service on Mr. Barton's behalf. Instead, Mr. Frank again reiterated his intention "to cooperate in reasonavle [sic] reciprocal discovery." A true and correct copy of this email is attached hereto as **Exhibit G**.

20. The process server attempted to serve the subpoena a second time, but this second attempted service failed. The process server informed us that Mr. Barton's receptionist falsely informed the process server that Mr. Barton did not work at that place of work.

21. Only after these two attempts at service did Mr. Frank agree to accept service of the subpoena. Attached hereto as **Exhibit H** is a true and correct copy of Mr. Frank's email accepting service of the subpoena, dated January 24, 2014. Class Counsel immediately ceased attempting personal service of the subpoena after receiving this email.

22. In a letter dated January 21, 2014 (a true and correct copy of which is attached hereto as **Exhibit I**), and in a subsequent telephonic meet and confer with Mr. Frank on

1 January 29, 2014, Class Counsel expressed their willingness to narrow the scope of the subpoena
2 and also to limit the deposition of Mr. Barton to two hours on the record. Class Counsel also
3 provided Mr. Frank with information showing that Mr. Barton's assertion that he received late
4 notice of the Settlement was incorrect. And, Class Counsel informed Mr. Frank, on January 24,
5 2014, that Discover had elected not to exercise its option to apply Reduction Awards.

6      23. On January 28, 2014, Mr. Frank provided Class Counsel with a declaration signed
7 by Mr. Barton. This declaration described Mr. Barton's basis for his belief that he is a member of
8 the Class and also explained that he had "been looking for the opportunity to object to unfair class
9 settlements" and accordingly reached out to Mr. Frank for representation within 30 minutes of
10 viewing the class notice. Attached as **Exhibit J** is a true and correct copy of a letter from
11 Mr. Frank to Ms. Sugnet dated January 28, 2014, which attaches Mr. Barton's signed declaration.

12      24. Because Mr. Barton's declaration largely provided the information sought by the
13 subpoena, Class Counsel withdrew the subpoena the next day, on January 29, 2014. Attached as
14 **Exhibit K** is a true and correct copy of an email from Ms. Sugnet to Mr. Frank withdrawing the
15 subpoena. Contrary to Mr. Frank's accusations, Class Counsel never intended to harass
16 Mr. Barton with the subpoena, and withdrew it not because Mr. Barton was resisting some
17 perceived but non-existent intimidation tactic, but rather because Mr. Barton's declaration
18 provided Class Counsel with much of the information they sought.

19 **IV. Lieff Cabraser was Not Involved in the Actions Giving Rise to Sanctions in *NCAA*.**

20      25. In an attempt to disparage Lieff Cabraser, Mr. Barton cites *In re NCAA Student-*
21 *Athlete Name & Likeness Licensing Litig.*, No. C 09-1967, 2013 U.S. Dist. LEXIS 46104 (N.D.
22 Cal. Mar. 28, 2013) simply because it is a discovery sanctions order in a case in which Lieff
23 Cabraser is listed as one of many firms representing some, among many, plaintiffs in the NCAA
24 action. Lieff Cabraser was not appointed lead counsel in that action. Attached hereto as
25 **Exhibit L** is a true and correct copy of the *NCAA's* court appointing lead counsel in that action.

26      26. I have conferred with the Lieff Cabraser attorneys involved in the *NCAA* action,
27 and have confirmed that no Lieff Cabraser attorney—let alone the attorneys representing the class
28 here—had any involvement in drafting the NCAA subpoenas or the meet and confers regarding

those subpoenas that led to sanctions in the *NCAA* action. In addition, a declaration submitted by the plaintiffs' counsel from the firm Cafferty Faucher, LLP in opposition to the sanctions motion in the *NCAA* describes the attorneys involved in drafting and issuing the subpoenas, none of whom were attorneys at Lieff Cabraser. A true and correct copy of that declaration is attached hereto as **Exhibit M**.

### V. Class Counsel Continue to Oversee Settlement Administration

27. Since submitting summaries of Class Counsel's lodestar in connection with their Motion for Attorneys' Fees, Class Counsel have briefed their final approval motion, briefed responses to objections, continue to assist Class Members with inquiries regarding the Settlement, and continue to oversee Settlement administration. As such, their lodestar continues to grow, reducing the risk multiplier that would be applied in a lodestar cross-check.

### VI. Class Counsel's Estimation of Class Member Payments

28. For purposes of notice, Class Counsel always attempt to overestimate the claims rate so that Class Members are not disappointed if the claims rate is unexpectedly high and their pro rata payments thus unexpectedly low. That the actual amount claimants receive here may be on the high end, or even exceed, Class Counsel's estimate of monetary payments between $20 and $40 is a reflection of the conservative nature of Class Counsel's estimate and nothing else. Nothing about that estimate had anything to do with anyone's valuation of the potential Reduction Awards.

I declare under penalty of perjury of the laws of New York and the United States that the foregoing is true and correct, and that this declaration was executed in New York, NY on February 12, 2014.

*/s/ Jonathan D. Selbin*
Jonathan D. Selbin